TOGUT, SEGAL & SEGAL LLP

ATTORNEYS AT LAW

ONE PENN PLAZA

NEW YORK, NEW YORK 10119

(212) 594–5000

———

FACSIMILE
(212) 967–4258

———

E-MAIL
kortiz@teamtogut.com

September 13, 2022

**<u>VIA EMAIL & HAND DELIVERY</u>**

The Honorable Martin Glenn
United States Bankruptcy Chief Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, 5th Floor
New York, NY 10004

        Re:    *In re Celsius Network LLC, et al.*, No. 22-10964 (MG) (Bankr. S.D.N.Y.)
                *Ad Hoc Group of Custodial Account Holders v. Celsius Network LLC, et al.*
                <u>Adv. Pro. No. 22-01142 (MG) (Bankr. S.D.N.Y.)</u>

Dear Chief Judge Glenn:

     We are counsel to the Ad Hoc Group of Custodial Account Holders (the "<u>Plaintiff</u>") in connection with the above-referenced jointly administered chapter 11 cases (the "<u>Chapter 11 Cases</u>") and the above-referenced adversary proceeding (the "<u>Adversary Proceeding</u>"). In accordance with Rule 7056-1 of the Local Rules of the Bankruptcy Court for the Southern District of New York, Plaintiff hereby submits this Letter requesting (a) permission to file a motion for partial summary judgment in the Adversary Proceeding and (b) that the Court schedule a pre-motion conference.

     Because the requested finding in the Adversary Proceeding described below presents no genuine dispute as to any material fact—indeed, the Debtors concede as much, by seeking their own determination of this exact same issue through the Debtors' Limited Withdrawal Motion (as defined below)—it may be resolved as a matter of law and, therefore, summary judgment.[1] Plaintiff does not seek to file summary judgment at this time with respect to whether the Debtors are required to return the Custody Assets, which issue will be presented to the Court separately.

---

[1] The Adversary Proceeding is the procedurally proper mechanism by which the Court may determine ownership of the Custody Assets. Bankruptcy Rule 7001 provides that "a proceeding to recover money or property," a proceeding to determine the validity, priority, or extent of a lien or other interest in property," and "a proceeding relating to any of the foregoing . . ." are adversary proceedings. *See* Fed. R. Bankr. P. 7001(1), (2), (9); *see also In re DBSI, Inc.*, 432 B.R. 126 (Bankr. D. Del. 2010) (holding that bank's motion to determine its interest in certain trust fund accounts held by the debtor was procedurally improper and denied on that basis); *e.g.*, Aug. 4, 2022 Tr. of Hr'g, *In re Voyager Digital Holdings, Inc.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y.) at 55:18-20 (referring to a similar motion to permit withdrawals of non-estate property as seeking "in effect . . . a declaratory judgment").

TOGUT, SEGAL & SEGAL LLP

The Honorable Martin Glenn
September 13, 2022
Page 2

I. **Background and Summary of Complaint**

  The factual background relevant to this Letter is set forth in the *Complaint for Declaratory Judgment and Related Relief*, filed on August 31, 2022 (the "Complaint") and the Limited Withdrawal Motion.[2]  As set forth in the Complaint and the Limited Withdrawal Motion, the Debtors maintain the "Custody Service," which, by the plain language of the Terms of Use applicable thereto, provides that title to Custody Assets therein "shall at all times remain with you [the user] and not transfer to Celsius."  The Terms of Use provide that the user "appoint[s] Celsius or a Third Party Custodian selected by Celsius *as your agent* to store and secure Eligible Digital Assets in a Custody Wallet, and *perform other duties customarily performed by a custodian*."  Unlike certain of the Debtors' other programs, the user "bear[s] all risk of loss" as "title owner of assets," and does not earn rewards or interest on Custody Assets in the Custody Service.

  Since June 12, 2022, the Debtors have "paused" all withdrawals of all cryptocurrency from their platform, including Custody Assets.  This pause has created tremendous hardship on all customers, as reflected in the hundreds of letters filed on the docket, including Custody users.  Despite extensive good faith discussions among the Ad Hoc Group, the Debtors, and the Creditors' Committee, the Debtors had not committed to unpausing withdrawals of all Custody Assets as of the filing of the Complaint.  As such, on August 31, 2022, the Ad Hoc Group filed the Complaint seeking "*a declaratory judgment that digital assets transferred into the Custody service are property of the Custody users and not property of the estate pursuant to section 541 of the Bankruptcy Code*."  *See* Compl. ¶ 62 (emphasis added).

  Subsequent to the filing of the Complaint, on September 1, 2022, the Debtors filed a motion to permit certain—but not all—withdrawals of Custody Assets.[3]  In the Limited Withdrawal Motion, the Debtors have agreed with the finding sought by the Complaint—namely, that Custody Assets are not property of the estate:

- "Following their analysis, the Debtors have identified significant cryptocurrency assets that they do not believe are property of their estates, and as to which the Debtors do not believe that they have any colorable causes of action under applicable law."  Limited Withdrawal Motion ¶ 3.

- "[T]he Debtors believe, following analysis by their advisors and with input from certain of their key stakeholders, *that the cryptocurrency assets in the Custody Program and Withhold Accounts likely do not constitute property of their*

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Complaint.

[3]  *See Debtors' Motion Seeking Entry of an Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief*, filed on September 1, 2022 [Docket No. 670] (the "Limited Withdrawal Motion").

TOGUT, SEGAL & SEGAL LLP

The Honorable Martin Glenn
September 13, 2022
Page 3

> estates." *Id.* ¶ 4 (emphasis added).

- "The Debtors submit that the Pure Custody Assets and Pure Withhold Assets do not constitute property of their bankruptcy estates . . . ." *Id.* ¶ 21.

- "**The Withdrawable Assets Do Not Constitute Property of the Estate**." *Id.* at 11 (emphasis in original).

- "**The Withdrawal Assets Are Property of the Customers.**" *Id.* at 13 (emphasis in original).

- "[T]he parties' intent with respect to the Custody Assets was to *not* pass any degree of ownership to Celsius, meaning such assets (once in the Custody Program) cannot be property of the estate, subject to the one exception when a customer also has an outstanding loan under the Borrow Program." *Id.* ¶ 28 (emphasis in original).

- "Consistent with this understanding, in connection with Custody Assets, the terms outline a relationship where, inter alia, Celsius was proscribed from using the Custody Assets for its own benefit, Celsius was acting merely as an agent of customers, Celsius was merely holding the Custody Assets on the customers' behalf, and an economic relationship between the customers and Celsius as to Custody Assets simply was not created." *Id.* ¶ 29.

In addition, paragraphs 23 through 31 of the Limited Withdrawal Motion set forth a clear and concise explanation of the Debtors' position, which the Ad Hoc Group agrees with, that Custody Assets are not property of the estate under sections 541(a) and 541(d) of the Bankruptcy Code because the Debtors had no legal or equitable interest in such assets. The sole basis asserted by the Debtors for discriminating between Custody Assets that the Debtors will permit users to withdraw and those they will not are potential-but-not-yet adjudicated (or even asserted)—preference actions, for which the Debtors believe it would be more convenient to withhold from customers' possession while they continue to work through the Chapter 11 Cases and potential preference issues.[4]

## II.    Issues to be Presented and Grounds for Relief

Plaintiff seeks to file a motion for partial summary judgment on the Complaint solely on the property of the estate issue. In addition to reasons set forth in the Limited Withdrawal Motion, we briefly summarize additional bases below.

---

[4] The Ad Hoc Group recognizes the disagreement with the Debtors on this point; however, this legal determination as to whether there is a basis to withhold from customers property that the Debtors do not own does not implicate the finding sought by the Complaint and the Plaintiff's request for partial summary judgment on the property of the estate issue.

**TOGUT, SEGAL & SEGAL LLP**

The Honorable Martin Glenn
September 13, 2022
Page 4

      Section 541 of the Bankruptcy Code provides that the commencement of a bankruptcy case creates an "estate" comprised of all of several categories of enumerated property interests "wherever located and by whomever held." 11 U.S.C. § 541(a). The Bankruptcy Code does not, by itself, create new legal or equitable interests in property; instead, "[p]roperty interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 54-55 (1979).

      Importantly, section 541(d) of the Bankruptcy Code provides that "[p]roperty in which the debtor holds, as of the commencement of the case, ***only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property***, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d) (emphasis added). Courts have interpreted this provision to "expressly" provide that "property in which the debtor ***holds only bare legal title is not property of the estate***." *In re Lenox Healthcare, Inc.*, 343 B.R. 96, 100 (Bankr. D. Del. 2006); *In re S.W. bach & Co.*, 435 B.R. 866, 878 (Bankr. S.D.N.Y. 2010) (holding that property held in trust, escrow, or as part of bailment is not property of the estate); *see also* Limited Withdrawal Motion ¶ 24.

      That is precisely the situation here—as set forth in the Terms of Use, Custody users retained title to their property. "Where Debtor merely holds bare legal title to property as agent or bailee for another, Debtor's bare legal title is of no value to the estate, and Debtor ***should convey the property to its rightful owner***." *In re MCZ, Inc.*, 82 B.R. 40, 42 (Bankr. S.D. Tex. 1987) (citations omitted).

      Many analogous situations support this finding.

- <u>Custodial Arrangements</u>: When assets are held by a trustee or custodian for the benefit of third parties of the trustee or custodian, the assets are owned by the third parties and do not form part of the debtor's bankruptcy estate. *See e.g.*, *In re Joliet-Will County Community Action Agency*, 847 F.2d 430, 432 (7th Cir. 1988). The Terms of Use expressly provide that the Debtors act as "custodian" and "perform other duties customarily performed by a custodian.

- <u>Bailments</u>: A bailment is "[t]he delivery of personal property by one person (the *bailor*) to another (the *bailee*) who holds the property for a certain purpose under an express or implied in fact contract. Unlike a sale or gift of personal property, a bailment involves a change in possession but not in title." *In re Enron Corp.*, 2003 WL 23965469 (Bankr. S.D.N.Y. Jan. 22, 2003) (citations omitted). While bailments typically require the return of the exact same property transferred, courts have found bailments where the parties' contract permitted that the bailor use the transferred property but return property of a like amount. *See e.g., Marchant v. Summers*, 79 F.2d 877 (4th Cir. 1935) (finding bailment where bank accepted bonds for safe-keeping pursuant to an agreement that allowed the bank to use the bonds as collateral for its own purposes and return

TOGUT, SEGAL & SEGAL LLP

The Honorable Martin Glenn
September 13, 2022
Page 5

- "not necessarily the identical bonds, but bonds of the same issue, same denomination and value"). Here, consistent with a bailment, the Debtors had possession of Custody Assets, but not title. And while the *Marchant* court found a bailment arrangement where the bank was permitted to use the bailment property, here the Terms of Use prohibited, and the Debtors agreed, not to use the Custody Assets.

- Courts have also found bailments in the fungible commodities context, where the transferred commodities are comingled with the bailor's other property (such as natural gas held in a tanker), and the bailee would receive the same type of property when requested. *See e.g., Enron*, 2003 WL 23965469 (collecting cases); *see also Public Service Elec. & Gas Co. v. Fed. Power Comm'n*, 371 F.2d 1 (3d Cir. 1967) ("We conclude that the mere physical commingling of Texaco's gas in Transcon's lines with gas Transcon has purchased for subsequent resale does not compel rejection of historic notions of bailments and require us to transform the transportation agreement into a succession of sales . . . . ***An essential feature of this transaction is that Texaco is the owner of the gas at both the beginning and end of its journey.***") (emphasis added). Here, the Terms of Use is a contract under which the Debtors agreed to hold the Custody Assets for Custody users and return the same (though not the exact same) cryptocurrency.

- Special Deposits: A special deposit "resembles but is not exactly like a bailment; under New York law, a special deposit, unlike a bailment, does not require return of the identical 'thing.'" *Merrill Lynch Mortg. Cap. Inc. v. FDIC*, 293 F. Supp. 2d 98, 103 (D.C. 2003). Whether a deposit is general or specific depends on the mutual understanding and intent of the parties when the deposit is made; a depositor can establish the existence of a special deposit by proving the existence of an agreement, express or implied, that an account was a special deposit—*i.e.*, that the parties intended to set aside the funds for a specific purpose. *In re Lehman Bros. Holdings, Inc.*, 439 B.R. 811, 824-25 (Bankr. S.D.N.Y. 2010) (citations omitted). Here, transfer of Custody Assets is similar to a special deposit that a debtor set aside for a specific purpose—*i.e.*, to store and securely hold for Custody users, subject to the requirement to return the same type of cryptocurrency.

- Agency: Property that is "in the debtor's hands as agent . . . is not treated as property of the debtor's bankruptcy estate." *In re Ames Dept's Stores, Inc.*, 274 B.R. 600, 608 (Bankr. S.D.N.Y. 2002) (citing section 541(d) of the Bankruptcy Code and explaining that an agent that holds bare legal title is required to turnover property to the debtor). Here, the Terms of Use expressly provide that the Debtors are acting as Custody users' "agent" to "store and secure Eligible Digital Assets in a Custody Wallet."

TOGUT, SEGAL & SEGAL LLP

The Honorable Martin Glenn
September 13, 2022
Page 6

### III.     The Issue is Ripe for Summary Judgment

Where, as here, the evidence is substantially uncontroverted, and there is no dispute as to material fact, summary judgment is appropriate.  *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).  Here, the issue of Custody Assets can be decided on the basis of undisputed documents—the Terms of Use—which set forth the legal rights of Custody users and the Debtors vis-à-vis the Custody Assets.  As explained by the Debtors in the Limited Withdrawal Motion:

> Here, the parties entered into a contractual arrangement governed by clear terms of use and under which the parties have a consistent course of dealing, so those terms govern the parties' relative rights.  Under New York law, which governs the Latest Terms of Use, contracts are interpreted and enforced in accordance with their plain meaning and clear and unambiguous terms.  The ultimate objective in interpreting an agreement is to determine "the intention of the parties as derived from the language employed."  ***Here, the ownership and title to the Custody Assets should be determined by the parties' respective contractual rights, as articulated in the Latest Terms of use, which are clear and provide ample evidence that the parties' intent was that the title and ownership of the Custody Assets remain with the Customers***, and that title and ownership of assets in the Earn Program and the Borrow Program are held by the Debtors. . .
>
> Accordingly, the parties' intent with respect to the Custody Assets was to *not* pass any degree of ownership to Celsius, meaning such assets (once in the Custody Program) cannot be property of the estate, subject to the one exception when a customer also has an outstanding loan under the Borrow Program. . .
>
> Consistent with this understanding, in connection with Custody Assets, the terms outline a relationship where, inter alia, Celsius was proscribed from using the Custody Assets for its own benefit, Celsius was acting merely as an agent of customers, Celsius was merely holding the Custody Assets on the customers' behalf, and an economic relationship between the customers and Celsius as to Custody Assets simply was not created.

Limited Withdrawal Motion ¶¶ 27-28 (internal citations omitted) (emphasis added).

In any event, as it relates to course of dealings, to the extent relevant, the Debtors have similarly conceded "the Debtors' course of dealings under the Latest Terms of Use

TOGUT, SEGAL & SEGAL LLP

The Honorable Martin Glenn
September 13, 2022
Page 7

included the use and maintenance of a matched book system as to Custody Assets. The balance of Custody Assets are held in Custody-specific wallets and workspaces within the Debtors' internal architecture." *Id.* ¶ 29. While Plaintiff agrees with the Debtors' proffer that the course of performance further establishes that the customers retained ownership of Custody Assets, such extrinsic evidence is irrelevant because the Terms of Use constitute a written agreement that is complete, clear and ambiguous on its face, and thus must be enforced according to the plain meaning of its terms. *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) ("Where a contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence."). Extrinsic evidence of the parties' intent—*i.e.*, the course of performance—"may be considered only if the agreement is ambiguous, which is an issue of law for the court to decide." *Greenfield v. Philes Recs., Inc.*, 98 N.Y.2d 562, 569 (2002). Under New York Law, the Terms of Use, which clearly and unambiguously demonstrate the parties' intent that title to Custody Assets remain with the customers, is sufficient to establish the Custody Assets were never property of the Debtors, and that agreement must be enforced as written without regard to any extrinsic evidence. *See Northville*, 329 F.3d at 314.

Plaintiff met and conferred with counsel for the Debtors and the Creditors' Committee prior to submitting this Letter and provided the Debtors and the Creditors' Committee with draft stipulated facts. The Debtors' position is that summary judgment is not appropriate because they believe there are disputed facts. However, as of the date of this Letter, the Debtors have not identified what facts are in dispute or provided a substantive response on the draft provided by Plaintiff.

Therefore, Plaintiff respectfully requests a pre-motion conference at the Court's earliest convenience regarding permission to file a motion for partial summary judgment.

Thank you for your consideration.

                                                          Respectfully submitted,

                                                          TOGUT, SEGAL & SEGAL LLP
                                                          By:
                                                                */s/ Kyle J. Ortiz*

                                                          Kyle J. Ortiz

cc: Kirkland & Ellis LLP (counsel to the Debtors)
     White & Case LLP (counsel to the Creditors' Committee)
     Troutman Pepper (counsel to the Ad Hoc Group of Withhold Account Holders)
     Office of the United States Trustee for the Southern District of New York