Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 22-10964-mg

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    CELSIUS NETWORK LLC,

8

9            Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11                   United States Bankruptcy Court

12                   One Bowling Green

13                   New York, NY  10004

14

15                   December 13, 2023

16                   3:00 PM

17

18

19

20

21   B E F O R E :

22   HON MARTIN GLENN

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  F. FERGUSON

Page 2

1    HEARING re Scheduling Discovery Conference Held Using Zoom

2    for Government.   (related document(s) Doc# 4086, 4073, 4079,

3    4077).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
1    A P P E A R A N C E S :

2

3    KIRKLAND & ELLIS LLP

4         Attorneys for Debtor

5         601 Lexington Avenue

6         New York, NY 10022

7

8    BY:  ROSS KWASTENIET (TELEPHONICALLY)

9         CHRISTOPHER KOENIG (TELEPHONICALLY)

10

11   WHITE & CASE LLP

12        Attorneys for Official Committee of Unsecured Creditors

13        White & Case LLP

14        555 South Flower Street

15        Los Angeles, California 90071

16

17   BY:  AARON COLODNY (TELEPHONICALLY)

18

19   MCCARTER & ENGLISH LLP

20        Attorneys for Ad Hoc Group of Retail Borrowers

21        825 Eighth Avenue

22        New York, NY 10019

23

24   BY:  DAVID ADLER (TELEPHONICALLY)

25        LISA BONSALL (TELEPHONICALLY)
```

Page 4

```
 1    WILKIE FARR & GALLAGHER LLP

 2         Attorneys for Blockchain Recovery Investment Consortium

 3         787 Seventh Avenue

 4         New York, NY 10019

 5

 6    BY:  BRIAN LENNON (TELEPHONICALLY)

 7

 8    QUINN EMANUEL URQUHART & SULLIVAN, LLP

 9         Attorneys for Blockchain Recovery Investment Consortium

10         51 Madison Avenue

11         New York, NY 10010

12

13    BY:  MARIO GAZZOLA (TELEPHONICALLY)

14

15    MCDERMOTT WILL & EMERY

16         Attorneys for Galaxy Partners

17         One Vanderbilt Avenue

18         New York, NY 10017

19

20    BY:  JOEL HAIMS (TELEPHONICALLY)

21         DARREN AZMAN (TELEPHONICALLY)

22

23

24

25
```

1   UNITED STATES DEPARTMENT OF JUSTICE

2        Attorneys for The United States Trustee

3        Alexander Hamilton Custom House

4        One Bowling Green

5        New York, NY 10004

6

7   BY:  SHARA CORNELL (TELEPHONICALLY)

8        MARK BRUH (TELEPHONICALLY)

9

10  ALSO APPEARING TELEPHONICALLY:

11       JASON IOVINE, Pro se Creditor

12       REBECCA GALLAGER, Pro se Creditor

13       JOHAN BRONGE, Pro se Creditor

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  All right, good afternoon.  The Court

3      has scheduled this discovery conference at the request of

4      Mr. Finestone.  I'll let him begin and then I'll hear from

5      the Debtor and the Committee's counsel next.

6              MR. KWASTENIET:  Good afternoon, Your Honor.  It's

7      Ross Kwasteniet and from Kirkland.  If I may just start with

8      a brief update to the Court?

9              THE COURT:  Sure.  Go ahead, Mr. Kwasteniet.

10             MR. KWASTENIET:  Great.  So Your Honor, I have

11     good news, which is that the Debtors and the Committee and

12     the BRIC have been engaged in discussions and we've reached

13     a resolution with the BRIC that obviates the need for

14     today's discovery conference.

15             THE COURT:  That's the best update I've heard.  Go

16     ahead.  In a while.

17             MR. KWASTENIET:  I thought -- I told Mr. Koenig, I

18     said, no, there's good news, so I'm going to be the one --

19             THE COURT:  So that's why you want to be the one

20     to do it.

21             MR. KWASTENIET:  Yeah, you got it.  When Mr.

22     Koenig had to tell you that we got bad news from the SEC, I

23     let him deliver it, but I'm stealing his thunder.  So, Your

24     Honor, in a high level, the company, the UCC and the BRIC

25     have reached agreement on the terms for the BRIC to handle

Page 7

1    the pursuit of and monetization of certain illiquid assets

2    and litigation claims.  We've agreed to an immediate

3    cessation of discovery and we are going to be working to

4    document this agreement and expect to file a supplement to

5    our motion describing these terms by the end of the week.

6            Your Honor, I'll note, we have many creditors on

7    the line.  We continue to be very focused on emergence from

8    bankruptcy as soon as possible.  We are aware that Bitcoin

9    is now trading over, I think it was over 41,000 this

10   morning, which is, you know, roughly double where it was as

11   of the petition date.  And so we placed a huge premium on

12   concluding these cases and getting coins back to people as

13   soon as possible and we look forward to presenting our

14   proposed winddown procedures to Your Honor next week and at

15   least as far as BRIC is concerned, again, pleased to report

16   that we've reached a resolution and the terms will be

17   forthcoming as soon as we can get them down on paper.

18           THE COURT:  Okay.  Bear with me a second.  So what

19   about the Galaxy issues?

20           MR. KWASTENIET:  I suppose they can speak for

21   themselves.  They filed a pleading today saying that they

22   didn't have discovery issues, that they may object to the

23   motion, but their counsel is on the line, Your Honor, so

24   they can speak for themselves.  But obviously, from our

25   standpoint, if, you know, if somebody objects to our motion

Page 8

```
 1    we'll respond to it and we'll be prepared to carry our

 2    burden.

 3              THE COURT:  Just give me a second.

 4              MR. HAIMS:  Your Honor, this is Joel --

 5              THE COURT:  Hold on, hold on.  Everybody stop.  I,

 6    I guess I'll hear from Galaxy's counsel in a minute.  I

 7    asked the question because Mr. Colodny's letter suggested

 8    that Galaxy wanted to depose everybody in the world, but --

 9              MR. COLODNY:  That's correct, Your Honor, but

10    today, Galaxy filed a letter saying it was not, it did not

11    intend to seek any discovery.

12              THE COURT:  Okay.  I'm a step behind.  I didn't

13    see that.

14              MR. KWASTENIET:  It just hit the docket this

15    morning, Your Honor.

16              MR. HAIMS:  This is Joel Haims from McDermott,

17    Will & Emery on behalf of Galaxy.  That's correct, Your

18    Honor.  We filed a letter saying -- we still plan to file an

19    objection, but we don't need discovery (indiscernible).

20              THE COURT:  All right, thank you.  So, what do

21    people -- well, let me ask the Debtor and the Committee.

22    What do you expect will be -- will happen at the hearing on

23    the 21st?

24              MR. KWASTENIET:  Yes, Your Honor.  Again, Ross

25    Kwasteniet from Kirkland, for the record.  On the 21st, Your
```

Page 9

1   Honor, we expect to present our proposed winddown

2   procedures.  We built into the plan on the concept that if

3   there was an adverse regulatory decision that caused us to

4   have to deviate from the Fahrenheit transaction that we

5   would describe that in what we called winddown procedures

6   and we would file that with the Court and parties had --

7   would have at least ten days, you know, ten days' notice and

8   the winddown procedures could be approved by the Court and

9   then we could implement the plan.

10          So, from the Debtors' perspective, that's what we

11  would like to present to Your Honor.  And obviously, we will

12  address any objections that are filed.

13          THE COURT:  The objection deadline is tomorrow at

14  four o'clock; is that right?

15          MR. KWASTENIET:  I believe that's correct, Your

16  Honor, yes.  And then subject to, you know, once the

17  winddown procedures are approved, the Debtors have been in

18  the background making all necessary plans to be able to

19  emerge from Chapter 11, to make the cryptocurrency

20  distributions, et cetera, you know.  As soon as the winddown

21  procedures are approved, we would plan to go forward and

22  implement and go effective on the plan.

23          THE COURT:  So, am I correct, the motion that's on

24  for the 21st, it's styled notice of hearing on joint motion

25  of the Debtors and the Committee for entry of an order

Page 10

1    approving the implementation of the MiningCo transaction and

2    granting related relief?

3              MR. KWASTENIET:  That's correct, Your Honor.

4              THE COURT:  Okay.  Ms. Cornell, I see you on the

5    screen.  Is the U.S. Trustee going to be filing an

6    objection?

7              MS. CORNELL:  Yes, Your Honor.

8              THE COURT:  Could you just give me a two-sentence

9    preview?

10             MS. CORNELL:  I'm not sure if two sentences is

11   going to suffice.

12             THE COURT:  I won't hold you to the two sentences.

13             MS. CORNELL:  Our issues this point, and we have

14   previewed them for both the Committee and the Debtors, so

15   this is not a surprise to them, either.

16             THE COURT:  I'm not surprised either.  That's why

17   I asked you the question.

18             MS. CORNELL:  Many of our issues echo Your Honor's

19   comments at the November 30th hearing.

20             THE COURT:  My comments were only a question.

21   They weren't -- I wasn't suggesting that --

22             MS. CORNELL: Sure.

23             THE COURT:  -- it can or can't be approved.  I

24   raised a question.  Go ahead.

25             MS. CORNELL:  Sure.  It is our current viewing of

Page 11

1    the motion that it seeks to implement a transaction that was

2    not contemplated by the plan, and therefore a new disclosure

3    statement and solicitation would be required under the code.

4             THE COURT:  I will look forward to seeing it.

5             MS. CORNELL:  Thank you, Your Honor.

6             THE COURT:  Okay. I don't mean that exactly

7    seriously, but I --

8             MS. CORNELL:  I understand.

9             THE COURT:  Obviously, I will pay attention to it.

10   Does anybody else want to be heard?

11            CLERK:  Judge, there's two parties with their

12   hands raised, Mr. Adler and Ms. Bonsall.

13            MR. ADLER:  Good afternoon, Your Honor.  David

14   Adler on behalf of the Ad Hoc Group of Retail Borrowers.

15   I'm joined today by my partner Lisa Bonsall, who will be

16   handling aspects of this proceeding.  I'm a little bit

17   confused because we're preparing to object to the motion

18   tomorrow, and like the U.S. Trustee, our position is that

19   the plan that or the toggle that they wish to go to is not

20   that which was described in the disclosure statement or the

21   plan.

22            And I get the sense from the comments from Mr.

23   Kwasteniet that we're going to file this objection and then

24   the next day, there's going to be something new that comes

25   out on the docket with new winddown procedures.  So, I'd

Page 12

1   like to address the timing of the objections and the, you

2   know, the proposal that will be coming, forthcoming relating

3   to BRICs.  That's number one.

4           Number two, just to advise Your Honor, we did

5   serve discovery, very limited discovery, on the Debtors and

6   the Committee relating to communications with the SEC.  We

7   had a meet and confer yesterday with the Debtors.  We're

8   still waiting to hear from the committee, so the issue --

9   there may be additional issues that come up before Your

10  Honor.

11          THE COURT:  What's the relevance of their

12  communications with the SEC?

13          MR. ADLER:  I think that a record is being -- has

14  been established in those communications regarding MineCo so

15  that those submissions, I assume, have to do or have a lot

16  to say about the mining company as well as the other, you

17  know, issues that were raised.  We don't know for certain,

18  Your Honor, but we think (audio glitch) those

19  communications.

20          THE COURT:  Ms. Bonsall, I see your hand next.

21          MS. BONSALL:  I think that Mr. Adler covered it,

22  Your Honor.  I guess the only thing I would add with respect

23  to the relevance of the SEC communications is that it's all

24  over their motion.  If you --

25          THE COURT:  Are you doubting that the SEC said

1    that they wouldn't permit the staking operation to be part

2    of mining?

3            MS. BONSALL:  I don't know what --

4            THE COURT:  Are you doubting that?

5            MS. BONSALL:  -- they said, Your Honor.

6            THE COURT:  Are you really doubting that?

7            MS. BONSALL:  I don't doubt that.  I do wonder

8    what kind of communications there were with respect to

9    MineCo, since a good portion of the motion promotes the idea

10   that MineCo will also be a publicly listed company.

11           THE COURT:  Still is.  Still the proposal. That

12   hasn't changed.  I think the issue was, as I understand it,

13   MiningCo had audited financials and the staking operation

14   didn't.  And the issue of whether you could do a quick

15   procedure with the SEC is, were there audited financials.

16   That's been out there for a long time.  I mean, there's

17   nothing -- so are you doubting the SEC said no, your

18   proposal for this public company is a no-go because you

19   don't have audited financials for the staking operation?

20           I mean, that was -- I knew that was the position

21   at the time of the confirmation hearing.  They hadn't taken

22   a final position on it, but that issue, I think, was

23   previewed.

24           MS. BONSALL:  Well, I didn't see it in the

25   disclosure statement, Your Honor.  So --

Page 14

```
 1              THE COURT:  Did you attend the confirmation

 2   hearing?

 3              MS. BONSALL:  I read --

 4              THE COURT:  Did you attend the confirmation

 5   hearing?

 6              MS. BONSALL:  -- transcripts -- I did not.  I did

 7   get the transcripts, Your Honor, and in all fairness, Judge,

 8   it's their motion and they are the ones who put at issue the

 9   --

10              THE COURT:  Yeah, but --

11              MS. BONSALL:  -- the SEC communication.

12              THE COURT:  -- it may be their motion, but I'm not

13   sure I'm getting -- you're going to get discovery.  That's

14   what I'm saying.

15              MS. BONSALL:  Well, the Debtor agreed --

16              THE COURT:  -- the hearing.  The Debtor agreed

17   what?

18              MS. BONSALL:  The Debtor agreed to provide the SEC

19   communications with the objection that he did not believe

20   them to be relevant, but at the meet and confer yesterday,

21   the Debtor did agree to provide those communications, Your

22   Honor.

23              THE COURT:  All right.  So, it sounds like we

24   don't have a dispute to deal with.  Mister --

25              MS. BONSALL:  And that's why I didn't put a letter
```

Page 15

1    in, Your Honor.

2              THE COURT:  That's fine.

3              MS. BONSALL:  I did -- and I was hopeful that

4    there would be nothing to say.

5              THE COURT:  Thank you, Ms. Bonsall.  I'll go in

6    the order I see the hands raised.  Mr. Dixon, briefly.

7              MR. DIXON:  Hi, there.  Simon Dixon, pro se

8    creditor.  I just wanted to bring attention to the value

9    destruction that may occur from delaying this plan too far.

10   As one of the top creditors, we've done the maths and once

11   Bitcoin hits a price of 54,000 or above, the next in line

12   under subordination, which I believe to be U.S. government

13   agencies may end up with a significant portion of our

14   recovery.  And so by delaying this, I do believe that the

15   value destruction could be significantly worse.

16             THE COURT:  The only thing, Mr. Dixon, let me --

17   that's not today's issue, but I think the Debtor and the

18   Committee -- Debtors, plural, and Committee are keenly

19   focused on that and they're trying to get the distribution

20   to creditors as soon as they can.  I commented at the last

21   hearing, that's my goal, too, but the question is whether

22   applicable bankruptcy law and procedure because of the

23   changes they're proposing to make, would require a new

24   disclosure statement and solicitation.

25             That's really a legal issue.  I share with you a

Page 16

1   desire to get this wrapped up as soon as possible and

2   distributions to creditors as soon as possible.  I don't say

3   it embarrassingly.  I'm constrained by the law.  I'll follow

4   what the law is.  We'll see what happens at the hearing on

5   the 21st, but your point, I think, is essentially the

6   position that the Committee and the Debtors take.

7            They're trying to get a plan effective as soon as

8   possible in light of the position of the SEC that mining --

9   no public MiningCo could include the staking operation.

10  They've had to shift gears.  Okay, so I have your point

11  clearly. We'll take this up at the hearing on the 21st.

12           Mr. Colodny?  Thank you, Mr. Dixon.

13           MR. COLODNY:  Yes, Your Honor.  I always like when

14  you make my points before I make them, but we are focused on

15  getting out of bankruptcy as soon as possible.  I disagree

16  with Mr. Dixon's characterizations of the plan.  I also

17  disagree with, I believe it was Mr. Adler's

18  characterizations of a meet and confer yesterday, which was

19  attended by the Committee.  So, I didn't want Your Honor to

20  think that the Committee was not engaging here.

21           We are.  We are focused on getting out of

22  bankruptcy as soon as possible and we believe that the

23  motion that will be heard on the 21st fits squarely within

24  the four corners of the document.  Obviously, Your Honor,

25  that's the issue for you to decide on the 21st and we will

Page 17

1    look forward to doing that then.

2           THE COURT:  Okay.  Mr. Breuder?

3           MR. BREUDER:  Paul Breuder, pro se creditor.  I

4    don't want to put words in any of -- anybody else's mouths

5    about the need for discovery, but I believe it wasn't so

6    much a concern that the SEC was going to deny of the NewCo

7    transaction due to the staking operation, but I think it

8    concerns the timeline of when that communication with the

9    SEC occurred and there appears to have been discussion as

10   far back as June or July that the UCC and the Debtors had

11   communication where the SEC had already pre-denied the NewCo

12   transaction, but the Debtors and the UCC proceeded to

13   solicit a plan that included it knowing that it was dead on

14   arrival.

15           So, I think some of the committees like the Ad Hoc

16   are tiptoeing around why they want discovery, but I believe

17   that's the reason why.

18           THE COURT:  Well, I'm not -- Mr. Breuder, I'm not

19   at all persuaded that discovery is appropriate or needed for

20   the purposes of the hearing on the 21st.  We'll see what

21   happens when we get there.  Mr. McCarrick?

22           MR. BREUDER:  Understood.

23           MR. McCARRICK:  T.J. McCarrick, Kirkland & Ellis,

24   on behalf of the Debtors, Your Honor.  Just on this SEC

25   discovery issue, as Your Honor noted, there's no live

Page 18

1    dispute because the Debtors have agreed to produce, subject

2    to their relevance objection, our formal communications with

3    the SEC, but for the reasons Your Honor noted, there's no

4    dispute among anyone that the SEC did not approve the NewCo

5    transaction, and candidly, it's not at all clear to us what

6    -- why that would be relevant to an argument that the

7    proposed -- or the proposed MiningCo transaction is not

8    within the four corners of the disclosure statement or the

9    plan.

10           That's a legal determination that Your Honor can

11   make.  No discovery is appropriate or warranted and

12   candidly, I think, you know, this sort of show me more

13   approach to discovery as we go here is just going to cost

14   the estate more.  But we're happy to give the Committee --

15   or the Ad Hoc the communications.

16           THE COURT:  All right, thanks very much, Mr.

17   McCarrick.  Is there anybody else who hasn't spoken yet who

18   wishes to be heard, other -- Mr. Breuder and Mr. McCarrick,

19   you can put your hands down.  That would be appreciated.

20   Thank you.

21           MR. KWASTENIET:  Your Honor, it's Ross Kwasteniet

22   from Kirkland, if I may just make a few remarks in response,

23   first of all, to Mr. Dixon's comments.  I agree with Your

24   Honor.  We are completely focused on it. The feedback we got

25   from the SEC and I guess I'll address Mr. Breuder's comments

Page 19

```
1    as well.  There seems to be a bit of a budding conspiracy

2    theory that this was somehow known all along.  But I can

3    just say on its face, like that's absurd that -- to think

4    that we'd pursue a plan that was dead on arrival.

5              We -- as we've -- we indicated at the confirmation

6    trial; we filed a pre-clearance application with the SEC in

7    July.  We found out from the SEC; we got a phone call from

8    them literally hours after Your Honor entered the

9    confirmation order saying that they would not grant

10   preclearance with respect to anything other than the mining

11   assets.

12             We then pivoted very quickly and filed a motion,

13   you know, within, I think less than two weeks, proposing the

14   winddown procedures.  We're going to be supplementing the

15   winddown procedures to incorporate the agreement we've

16   reached with the BRIC, but again, from the Debtor and the

17   Committee's --

18             THE COURT:  And when -- you expect to do that

19   when?

20             MR. KWASTENIET:  By the end of the week, Your

21   Honor.  The agreement was reached, you know, on the

22   proverbial courthouse steps.  So, by the --

23             THE COURT:  Let me ask you this.  I'm just trying

24   to -- on my other screen, I've got what was the docket for

25   Thursday the 21st.  My understanding is the hearing on the
```

Page 20

1      substantial contribution claims has been pushed to January.

2              MR. KWASTENIET:  That's correct, Your Honor.

3              THE COURT:  So, is there anything on the Celsius

4      docket other than this motion to essentially approve this?

5              MR. KWASTENIET:  I don't believe there is, Your

6      Honor, and if there is, there's nothing more important than

7      this and we'll -- I would move whatever else there was.

8              THE COURT:  All right.  And then the question is,

9      I -- because it's still not clear to me after hearing the

10     colloquy as to whether this is going to be an evidentiary

11     hearing, because our rules are that the first hearing is not

12     evidentiary unless the Court has said it.  And, you know,

13     we're not having a two-week evidentiary hearing starting on

14     Monday and ending on -- starting on Thursday and ending on

15     Thursday.  What is -- what's the Debtors' position as to

16     whether evidence is required to be heard?

17             MR. KWASTENIET:  Your Honor, we -- in the first

18     instance, we do not believe that evidence is required.  We

19     think that the winddown procedures are squarely -- fit

20     squarely within the plan.  We believe that while the SEC's

21     feedback was unfortunate, it was something that we had

22     contemplated and we designed, you know, a fallback

23     transaction, if you will, that was a public, take a mining

24     only public company and administering the rest.

25             We had the concept of winddown procedures because

Page 21

1     of course, we couldn't know exactly in advance, you know,

2     how that would work and what would have to change, but --

3                 THE COURT:  Let me ask you this.  What -- winddown

4     was clearly one of the contemplated alternatives and what

5     has -- what, if anything, has changed from what was

6     described in disclosure statement, as the winddown

7     transaction?  You know, I -- U.S. Bitcoin was identified but

8     in a somewhat different role than what's proposed now.  So,

9     tell me just briefly, I think -- you know, this is not the

10    time for the full argument about this hearing, but what is

11    it that has changed from what was described in the

12    disclosure statement and the plan?

13                MR. KWASTENIET:  Absolutely, Your Honor.  So, what

14    was described in the disclosure statement and the plan was

15    BRIC was a backup bidder.  There was -- we had a backup

16    agreement with them.  That did not include a detailed mining

17    management agreement, right, so the first thing that changed

18    what we said in the plan and disclosure statement, was we

19    would, in the event we're going forward with a mining only

20    newco, we would identify as part of the winddown procedures,

21    the proposed mining manager and the terms.

22                And we said in that the mining manager might be

23    U.S. Bitcoin.  We couldn't have known exactly who the mining

24    manager was in advance, because there's the Fahrenheit

25    Group, and of course, U.S. Bitcoin was part of that group.

Page 22

1    And we couldn't really go to them and say, hey, if the rest

2    of the deal doesn't work, will you still be the mining

3    manager of the, you know, a mining only newco.

4            They had agreements as between themselves.  They

5    were a consortium.  What -- we said in the plan, it might be

6    U.S. Bitcoin, right, so the first thing we did, Your Honor,

7    once we got the feedback from the SEC is we engaged in

8    discussions with Fahrenheit.  We gave them the news, of

9    course.  We had been partnering with them and working

10   towards emergence.  And we said, well, unfortunately, we

11   can't go forward with the whole Fahrenheit deal, but we

12   would like permission to speak with U.S. Bitcoin about

13   continuing to serve as the mining manager.

14           And then there was some work to break their

15   agreement out and separate it from the broader Fahrenheit

16   deal, which we did, and then that was attached to what we

17   filed.  Your Honor, the story here, you know, the work that

18   goes into this and from the company's perspective, goes way

19   back to the auction this spring, right.  The main purpose of

20   the auction this spring was not to, you know, see who could

21   write, you know, the cheapest proposal for managing the

22   newco or the mining business or whatever.

23           It was to pick a partner, who we were going to

24   work with and who was going to, you know, manage the new

25   business for us, whatever that new business looked like, and

1    people were pitching different business ideas, et cetera.

2    We came out of that auction with U.S. Bitcoin as the

3    preferred manager for the mining business, right, which was

4    the core -- always the core of the NewCo business, and now

5    it's the only part of the NewCo business, right, that's

6    going to go forward.  But it -- we had to -- we couldn't

7    have known in advance for sure that U.S. Bitcoin would be

8    there and would continue to manage the mining business.

9              THE COURT:  With --

10             MR. KWASTENIET:  Your Honor --

11             THE COURT:  With some trepidation, let me ask a

12   question that will undoubtedly be asked by me or someone

13   else at the hearing.  Has the Debtor and the Committee

14   considered as an alternative a proposed sale of the mining

15   business to convert it to cash or other crypto or something

16   to distribute currently, rather than having a new publicly

17   traded mining business?

18             MR. KWASTENIET:  Yes, Your Honor, we have.  And

19   earlier in the case, we ran a marketing process and I

20   believe -- I forget exactly at what hearing.  I think that

21   there was testimony on this, Your Honor, but I -- if you'll

22   allow me to just represent what I think Centerview and Mr.

23   Kielty and Mr. Puntus would testify to, the Debtors ran a

24   marketing process in the first instance, to see what we

25   could monetize, right?  We had various illiquid assets, so

Page 24

1    we solicited bids.

2              THE COURT:  And I do remember that, and the

3    question -- my question now is, was there a mining only sale

4    that was considered?

5              MR. KWASTENIET:  We solicited bids on the mining

6    business, Your Honor, and the bids came in at that

7    effectively equipment liquidation values.

8              THE COURT:  All right.

9              MR. KWASTENIET:  And so, we determined that we

10   were going to be leaving incredible -- the going concern

11   value effectively, of the mining business, we'd be leaving

12   on the table if we were to sell it.  Which is, you know, not

13   to say we haven't -- that mining that marketing process

14   happened earlier in the case.  There are some on the phone -

15   - Galaxy, I'm looking in your direction -- who may be

16   wanting to suggest to Your Honor that we should, you know,

17   run a new marketing process.

18             Our perspective is we've made sequential decisions

19   and we're -- we want to want to go forward with the deal

20   that -- with U.S. Bitcoin who has been the preferred mining

21   manager since the conclusion of the auction and that we

22   never told people -- in fact, we told people the opposite.

23   We said that, you know, based on regulatory feedback, we

24   will figure out what adjustments need to be made.  We will

25   disclose them in a motion.  We will seek Court approval and

Page 25

1    we will go forward to confirm and distribute liquid crypto

2    and make distributions to creditors.

3              So, we have no intention, Your Honor, of reopening

4    the marketing process.  But we did earlier in the case,

5    before we went down the path of figuring out a newco and who

6    would manage it, we did a marketing effort and we got bids

7    that were just liquidation bids for the mining assets.

8              THE COURT:  Let me ask this, and it is part of my,

9    I suppose, underlying my question about whether this is an

10   evidentiary hearing.  Is the Debtor or the Committee going

11   to offer -- has it offered any evidence, will it offer any

12   evidence that the proposed changes in the transaction

13   structure will not result in a decrease in recoveries for

14   any of the classes of creditors that were projected in --

15   or, I'll use the word projected.  It's not exactly right,

16   but that were described in the plan and disclosure

17   statement.

18             MR. KWASTENIET:  We are prepared to make that

19   case, Your Honor, and have submitted declarations, both the

20   Committee and the company have submitted declarations in

21   support of the motion to make that case.

22             THE COURT:  And it's the position of the Debtor

23   and the Committee that there's no material negative effect

24   of these proposed changes.  The winddown was always one of

25   the contemplated solutions.  It's just, the particulars of

Page 26

1    it that have changed.

2              MR. KWASTENIET:  Yes.  Yes, Your Honor.

3              THE COURT:  So, your position is, and the

4    Committee's position is, it will not result in any decrease

5    in recoveries --

6              MR. KWASTENIET:  That's --

7              THE COURT:  -- that were already projected in the

8    disclosure statement?

9              MR. KWASTENIET:  That's correct, Your Honor, and

10   in fact, as the scope of the NewCo transaction has been

11   reduced to be just the mining company, the need for the

12   capitalization of the NewCo is less --

13             THE COURT:  I know your --

14             MR. KWASTENIET:  The fees are less.

15             THE COURT:  -- distributing more.

16             MR. KWASTENIET:  More liquid crypto, but yes, Your

17   Honor, absolutely.  It's not worse.  It's neutral to better.

18   We think better for creditors.

19             THE COURT:  All right.  Let me ask one other

20   question and then we can -- is, whether the Debtor and the

21   Committee have tried to engage with the U.S. Trustee and see

22   whether you can come to a resolution that would lead the

23   U.S. Trustee to object and argue that a new disclosure

24   statement and solicitation would be required.

25             MR. KWASTENIET:  I believe that members of my team

Page 27

1    and the White & Case team had a call with Ms. Cornell

2    yesterday where we learned of that position.

3            THE COURT:  Keep talking, would you, please?

4            MR. KWASTENIET:  Absolutely, Your Honor.  I was

5    not on that call, but I am happy to engage.  I can't speak

6    for Mr. Colodny, but I'm sure he's happy to -- '

7            THE COURT:  I'm sure Mr. Colodny's answer is yes.

8    I won't even -- you know.

9            MR. COLODNY:  Right.  Your Honor, I was on a call

10   with Ms. Cornell yesterday and we have spoken with her and

11   we will continue to discuss with her what we can do to

12   resolve the issue.

13           THE COURT:  Okay.  I hope you'll do that, and Mr.

14   Colodny, I -- just keep talking and see whether there's a

15   solution that's possible.  All right.  One more hand raised

16   -- go ahead, Mr. Colodny.

17           MR. COLODNY:  No, you asked about the

18   consideration and the evidence, Your Honor.  The Debtors

19   submitted a declaration of Robert Compagna which speaks to

20   them the issue that you squarely put.

21           And then as the consideration under the orderly

22   winddown, there were, I believe, three things to be

23   distributed:  liquid cryptocurrency, what we called illiquid

24   recovery rights, which was essentially a, you know, an

25   interest in the illiquid assets which would be monetized;

Page 28

1    litigation trust interests or litigation interests, which

2    were the same under both scenarios; and then NewCo mining

3    stock, and that is exact -- or mining stock.  And that is

4    exactly what's to be distributed under what the MiningCo

5    motion, which is in essence the orderly winddown.

6              THE COURT:  All right, thank very much. There's

7    one more hand raised.  Briefly, Mr. Iovine.

8              MR. IOVINE:  Yes, Jason Iovine, pro se.  I just

9    wanted to point out that that marketing campaign was done

10   when the market was distressed and pushed very negative.

11   The price of bitcoin has almost doubled since the petition

12   date and it could have a different outcome if another

13   marketing campaign was done.

14             THE COURT:  It could have a big outcome in the

15   value -- it could have --

16             MR. IOVINE:  Just wanted to point that out.

17             THE COURT:  -- a big -- in the value of NewCo, you

18   know, mining bitcoin looks much more profitable today than

19   it did at the start of the case, so -- but I take your

20   point.  But you don't rewind the case every time there's a

21   change in a market price of a commodity or something.  So,

22   all right.  We'll -- I guess the discovery issues, which was

23   the reason for setting the conference today, have been

24   resolved, so we are adjourned.

25             MR. ADLER:  Thank you, Your Honor.

1                MR. KWASTENIET:   Thank you, Your Honor.

2

3                (Whereupon these proceedings were concluded at

4    3:33 PM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 30

1                          C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4   transcript is a true and accurate record of the proceedings.

5

6

7   *[signature]*

8   Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  December 20, 2023

[& - attorneys]                                                                        Page 1

| & | | | |
|---|---|---|---|
| **&** | **41,000**  7:9 | **adler's**  16:17 | **application** |
| **&**  3:3,11,13,19 | **5** | **administering** | 19:6 |
| 4:1,8,15 8:17 | **51**  4:10 | 20:24 | **appreciated** |
| 17:23 27:1 | **54,000**  15:11 | **advance**  21:1 | 18:19 |
| **1** | **555**  3:14 | 21:24 23:7 | **approach** |
| **10004**  1:13 5:5 | **6** | **adverse**  9:3 | 18:13 |
| **10010**  4:11 | **601**  3:5 | **advise**  12:4 | **appropriate** |
| **10017**  4:18 | **7** | **afternoon**  6:2 | 17:19 18:11 |
| **10019**  3:22 4:4 | **787**  4:3 | 6:6 11:13 | **approval**  24:25 |
| **10022**  3:6 | **8** | **agencies**  15:13 | **approve**  18:4 |
| **11**  9:19 | **825**  3:21 | **agree**  14:21 | 20:4 |
| **11501**  30:23 | **9** | 18:23 | **approved**  9:8 |
| **12151**  30:7 | **90071**  3:15 | **agreed**  7:2 | 9:17,21 10:23 |
| **13**  1:15 | **a** | 14:15,16,18 | **approving** |
| **2** | **aaron**  3:17 | 18:1 | 10:1 |
| **20**  30:25 | **able**  9:18 | **agreement** | **argue**  26:23 |
| **2023**  1:15 | **above**  15:11 | 6:25 7:4 19:15 | **argument**  18:6 |
| 30:25 | **absolutely** | 19:21 21:16,17 | 21:10 |
| **21st**  8:23,25 | 21:13 26:17 | 22:15 | **arrival**  17:14 |
| 9:24 16:5,11 | 27:4 | **agreements** | 19:4 |
| 16:23,25 17:20 | **absurd**  19:3 | 22:4 | **asked**  8:7 |
| 19:25 | **accurate**  30:4 | **ahead**  6:9,16 | 10:17 23:12 |
| **22-10964**  1:3 | **ad**  3:20 11:14 | 10:24 27:16 | 27:17 |
| **3** | 17:15 18:15 | **alexander**  5:3 | **aspects**  11:16 |
| **300**  30:22 | **add**  12:22 | **allow**  23:22 | **assets**  7:1 |
| **30th**  10:19 | **additional**  12:9 | **alternative** | 19:11 23:25 |
| **330**  30:21 | **address**  9:12 | 23:14 | 25:7 27:25 |
| **3:00**  1:16 | 12:1 18:25 | **alternatives** | **assume**  12:15 |
| **3:33**  29:4 | **adjourned** | 21:4 | **attached**  22:16 |
| **4** | 28:24 | **angeles**  3:15 | **attend**  14:1,4 |
| **4073**  2:2 | **adjustments** | **answer**  27:7 | **attended**  16:19 |
| **4077**  2:3 | 24:24 | **anybody**  11:10 | **attention**  11:9 |
| **4079**  2:2 | **adler**  3:24 | 17:4 18:17 | 15:8 |
| **4086**  2:2 | 11:12,13,14 | **appearing**  5:10 | **attorneys**  3:4 |
| | 12:13,21 28:25 | **appears**  17:9 | 3:12,20 4:2,9 |
| | | **applicable** | 4:16 5:2 |
| | | 15:22 | |

| auction 22:19 | big 28:14,17 | bruh 5:8 | cessation 7:3 |
|---|---|---|---|
| 22:20 23:2 | bit 11:16 19:1 | budding 19:1 | cetera 9:20 |
| 24:21 | bitcoin 7:8 | built 9:2 | 23:1 |
| audio 12:18 | 15:11 21:7,23 | burden 8:2 | change 21:2 |
| audited 13:13 | 21:25 22:6,12 | business 22:22 | 28:21 |
| 13:15,19 | 23:2,7 24:20 | 22:25,25 23:1 | changed 13:12 |
| avenue 3:5,21 | 28:11,18 | 23:3,4,5,8,15 | 21:5,11,17 |
| 4:3,10,17 | blockchain 4:2 | 23:17 24:6,11 | 26:1 |
| aware 7:8 | 4:9 | | changes 15:23 |
| azman 4:21 | bonsall 3:25 | **c** | 25:12,24 |

| **b** | 11:12,15 12:20 | c 3:1 6:1 30:1,1 | chapter 9:19 |
|---|---|---|---|
| b 1:21 | 12:21 13:3,5,7 | california 3:15 | characterizat... |
| back 7:12 | 13:24 14:3,6 | call 19:7 27:1,5 | 16:16,18 |
| 17:10 22:19 | 14:11,15,18,25 | 27:9 | cheapest 22:21 |
| background | 15:3,5 | called 9:5 | christopher |
| 9:18 | borrowers | 27:23 | 3:9 |
| backup 21:15 | 3:20 11:14 | campaign 28:9 | claims 7:2 20:1 |
| 21:15 | bowling 1:12 | 28:13 | classes 25:14 |
| bad 6:22 | 5:4 | candidly 18:5 | clear 18:5 20:9 |
| bankruptcy | break 22:14 | 18:12 | clearance 19:6 |
| 1:1,11,23 7:8 | breuder 17:2,3 | capitalization | clearly 16:11 |
| 15:22 16:15,22 | 17:3,18,22 | 26:12 | 21:4 |
| based 24:23 | 18:18 | carry 8:1 | clerk 11:11 |
| bear 7:18 | breuder's | case 1:3 3:11 | code 11:3 |
| behalf 8:17 | 18:25 | 3:13 23:19 | coins 7:12 |
| 11:14 17:24 | brian 4:6 | 24:14 25:4,19 | colloquy 20:10 |
| believe 9:15 | bric 6:12,13,24 | 25:21 27:1 | colodny 3:17 |
| 14:19 15:12,14 | 6:25 7:15 | 28:19,20 | 8:9 16:12,13 |
| 16:17,22 17:5 | 19:16 21:15 | cases 7:12 | 27:6,9,14,16 |
| 17:16 20:5,18 | brics 12:3 | cash 23:15 | 27:17 |
| 20:20 23:20 | brief 6:8 | caused 9:3 | colodny's 8:7 |
| 26:25 27:22 | briefly 15:6 | celsius 1:7 20:3 | 27:7 |
| best 6:15 | 21:9 28:7 | centerview | come 12:9 |
| better 26:17,18 | bring 15:8 | 23:22 | 26:22 |
| bidder 21:15 | broader 22:15 | certain 7:1 | comes 11:24 |
| bids 24:1,5,6 | bronge 5:13 | 12:17 | coming 12:2 |
| 25:6,7 | | certified 30:3 | |

| | | | |
|---|---|---|---|
| **commented** 15:20 | **concept** 9:2 20:25 | **contribution** 20:1 | 27:13 28:6,14 28:17 |
| **comments** 10:19,20 11:22 18:23,25 | **concern** 17:6 24:10 | **convert** 23:15 | **courthouse** 19:22 |
| **committee** 3:12 6:11 8:21 9:25 10:14 12:6,8 15:18 15:18 16:6,19 16:20 18:14 23:13 25:10,20 25:23 26:21 | **concerned** 7:15 **concerns** 17:8 **concluded** 29:3 **concluding** 7:12 **conclusion** 24:21 **confer** 12:7 14:20 16:18 | **core** 23:4,4 **cornell** 5:7 10:4,7,10,13 10:18,22,25 11:5,8 27:1,10 **corners** 16:24 18:8 **correct** 8:9,17 9:15,23 10:3 20:2 26:9 | **covered** 12:21 **creditor** 5:11 5:12,13 15:8 17:3 **creditors** 3:12 7:6 15:10,20 16:2 25:2,14 26:18 **crypto** 23:15 |
| **committee's** 6:5 19:17 26:4 | **conference** 2:1 6:3,14 28:23 | **cost** 18:13 | 25:1 26:16 **cryptocurrency** 9:19 27:23 |
| **committees** 17:15 | **confirm** 25:1 **confirmation** 13:21 14:1,4 19:5,9 | **counsel** 6:5 7:23 8:6 **country** 30:21 | **current** 10:25 **currently** 23:16 |
| **commodity** 28:21 | **confused** 11:17 | **course** 21:1,25 22:9 | **custom** 5:3 |
| **communicati...** 14:11 17:8,11 | **consideration** 27:18,21 | **court** 1:1,11 6:2,2,8,9,15,19 | **d** |
| **communicati...** 12:6,12,14,19 12:23 13:8 14:19,21 18:2 18:15 | **considered** 23:14 24:4 **consortium** 4:2 4:9 22:5 | 7:18 8:3,5,12 8:20 9:6,8,13 9:23 10:4,8,12 10:16,20,23 11:4,6,9 12:11 | **d** 6:1 **darren** 4:21 **date** 7:11 28:12 30:25 |
| **compagna** 27:19 | **conspiracy** 19:1 | 12:20,25 13:4 13:6,11 14:1,4 | **david** 3:24 11:13 |
| **company** 6:24 12:16 13:10,18 20:24 25:20 26:11 | **constrained** 16:3 **contemplated** 11:2 20:22 21:4 25:25 | 14:10,12,16,23 15:2,5,16 17:2 17:18 18:16 19:18,23 20:3 20:8,12 21:3 23:9,11 24:2,8 | **day** 11:24 **days** 9:7,7 **dead** 17:13 19:4 **deadline** 9:13 |
| **company's** 22:18 | **continue** 7:7 23:8 27:11 | 24:25 25:8,22 26:3,7,13,15 | **deal** 14:24 22:2 22:11,16 24:19 |
| **completely** 18:24 | **continuing** 22:13 | 26:19 27:3,7 | **debtor** 1:9 3:4 6:5 8:21 14:15 14:16,18,21 |

15:17 19:16
23:13 25:10,22
26:20
**debtors** 6:11
9:10,17,25
10:14 12:5,7
15:18 16:6
17:10,12,24
18:1 20:15
23:23 27:18
**december** 1:15
30:25
**decide** 16:25
**decision** 9:3
**decisions** 24:18
**declaration**
27:19
**declarations**
25:19,20
**decrease** 25:13
26:4
**delaying** 15:9
15:14
**deliver** 6:23
**denied** 17:11
**deny** 17:6
**department**
5:1
**depose** 8:8
**describe** 9:5
**described**
11:20 21:6,11
21:14 25:16
**describing** 7:5
**designed** 20:22
**desire** 16:1

**destruction**
15:9,15
**detailed** 21:16
**determination**
18:10
**determined**
24:9
**deviate** 9:4
**different** 21:8
23:1 28:12
**direction** 24:15
**disagree** 16:15
16:17
**disclose** 24:25
**disclosure** 11:2
11:20 13:25
15:24 18:8
21:6,12,14,18
25:16 26:8,23
**discovery** 2:1
6:3,14 7:3,22
8:11,19 12:5,5
14:13 17:5,16
17:19,25 18:11
18:13 28:22
**discuss** 27:11
**discussion** 17:9
**discussions**
6:12 22:8
**dispute** 14:24
18:1,4
**distressed**
28:10
**distribute**
23:16 25:1
**distributed**
27:23 28:4

**distributing**
26:15
**distribution**
15:19
**distributions**
9:20 16:2 25:2
**district** 1:2
**dixon** 15:6,7,7
15:16 16:12
**dixon's** 16:16
18:23
**doc** 2:2
**docket** 8:14
11:25 19:24
20:4
**document** 2:2
7:4 16:24
**doing** 17:1
**double** 7:10
**doubled** 28:11
**doubt** 13:7
**doubting** 12:25
13:4,6,17
**due** 17:7

**e**

**e** 1:21,21 3:1,1
6:1,1 30:1
**earlier** 23:19
24:14 25:4
**echo** 10:18
**ecro** 1:25
**effect** 25:23
**effective** 9:22
16:7
**effectively** 24:7
24:11

**effort** 25:6
**eighth** 3:21
**either** 10:15,16
**ellis** 3:3 17:23
**else's** 17:4
**emanuel** 4:8
**embarrassin...**
16:3
**emerge** 9:19
**emergence** 7:7
22:10
**emery** 4:15
8:17
**engage** 26:21
27:5
**engaged** 6:12
22:7
**engaging** 16:20
**english** 3:19
**entered** 19:8
**entry** 9:25
**equipment**
24:7
**essence** 28:5
**essentially**
16:5 20:4
27:24
**established**
12:14
**estate** 18:14
**et** 9:20 23:1
**event** 21:19
**everybody** 8:5
8:8
**evidence** 20:16
20:18 25:11,12
27:18

**evidentiary**
20:10,12,13
25:10
**exact** 28:3
**exactly** 11:6
21:1,23 23:20
25:15 28:4
**expect** 7:4 8:22
9:1 19:18

**f**

**f** 1:21,25 30:1
**face** 19:3
**fact** 24:22
26:10
**fahrenheit** 9:4
21:24 22:8,11
22:15
**fairness** 14:7
**fallback** 20:22
**far** 7:15 15:9
17:10
**farr** 4:1
**feedback** 18:24
20:21 22:7
24:23
**fees** 26:14
**ferguson** 1:25
**figure** 24:24
**figuring** 25:5
**file** 7:4 8:18
9:6 11:23
**filed** 7:21 8:10
8:18 9:12 19:6
19:12 22:17
**filing** 10:5
**final** 13:22

**financials**
13:13,15,19
**fine** 15:2
**finestone** 6:4
**first** 18:23
20:11,17 21:17
22:6 23:24
**fit** 20:19
**fits** 16:23
**flower** 3:14
**focused** 7:7
15:19 16:14,21
18:24
**follow** 16:3
**foregoing** 30:3
**forget** 23:20
**formal** 18:2
**forthcoming**
7:17 12:2
**forward** 7:13
9:21 11:4 17:1
21:19 22:11
23:6 24:19
25:1
**found** 19:7
**four** 9:14 16:24
18:8
**full** 21:10

**g**

**g** 6:1
**galaxy** 4:16
7:19 8:8,10,17
24:15
**galaxy's** 8:6
**gallager** 5:12
**gallagher** 4:1

**gazzola** 4:13
**gears** 16:10
**getting** 7:12
14:13 16:15,21
**give** 8:3 10:8
18:14
**glenn** 1:22
**glitch** 12:18
**go** 6:9,15 9:21
9:22 10:24
11:19 13:18
15:5 18:13
22:1,11 23:6
24:19 25:1
27:16
**goal** 15:21
**goes** 22:18,18
**going** 6:18 7:3
10:5,11 11:23
11:24 14:13
17:6 18:13
19:14 20:10
21:19 22:23,24
23:6 24:10,10
25:10
**good** 6:2,6,11
6:18 11:13
13:9
**government**
2:2 15:12
**grant** 19:9
**granting** 10:2
**great** 6:10
**green** 1:12 5:4
**group** 3:20
11:14 21:25,25

**guess** 8:6 12:22
18:25 28:22

**h**

**haims** 4:20 8:4
8:16,16
**hamilton** 5:3
**hand** 12:20
27:15 28:7
**handle** 6:25
**handling** 11:16
**hands** 11:12
15:6 18:19
**happen** 8:22
**happened**
24:14
**happens** 16:4
17:21
**happy** 18:14
27:5,6
**hear** 6:4 8:6
12:8
**heard** 6:15
11:10 16:23
18:18 20:16
**hearing** 2:1
8:22 9:24
10:19 13:21
14:2,5,16
15:21 16:4,11
17:20 19:25
20:9,11,11,13
21:10 23:13,20
25:10
**held** 2:1
**hey** 22:1
**hi** 15:7

| high | i | 27:12,20 | knowing 17:13 |
|---|---|---|---|

**high** 6:24
**hit** 8:14
**hits** 15:11
**hoc** 3:20 11:14
    17:15 18:15
**hold** 8:5,5
    10:12
**hon** 1:22
**honor** 6:6,10
    6:24 7:6,14,23
    8:4,9,15,18,24
    9:1,11,16 10:3
    10:7 11:5,13
    12:4,10,18,22
    13:5,25 14:7
    14:22 15:1
    16:13,19,24
    17:24,25 18:3
    18:10,21,24
    19:8,21 20:2,6
    20:17 21:13
    22:6,17 23:10
    23:18,21 24:6
    24:16 25:3,19
    26:2,9,17 27:4
    27:9,18 28:25
    29:1
**honor's** 10:18
**hope** 27:13
**hopeful** 15:3
**hours** 19:8
**house** 5:3
**huge** 7:11
**hyde** 2:25 30:3
    30:8

**i**

**idea** 13:9
**ideas** 23:1
**identified** 21:7
**identify** 21:20
**illiquid** 7:1
    23:25 27:23,25
**immediate** 7:2
**implement** 9:9
    9:22 11:1
**implementati...**
    10:1
**important** 20:6
**include** 16:9
    21:16
**included** 17:13
**incorporate**
    19:15
**incredible**
    24:10
**indicated** 19:5
**indiscernible**
    8:19
**instance** 20:18
    23:24
**intend** 8:11
**intention** 25:3
**interest** 27:25
**interests** 28:1,1
**investment** 4:2
    4:9
**iovine** 5:11
    28:7,8,8,16
**issue** 12:8
    13:12,14,22
    14:8 15:17,25
    16:25 17:25

27:12,20
**issues** 7:19,22
    10:13,18 12:9
    12:17 28:22

**j**

**january** 20:1
**jason** 5:11 28:8
**joel** 4:20 8:4,16
**johan** 5:13
**joined** 11:15
**joint** 9:24
**judge** 1:23
    11:11 14:7
**july** 17:10 19:7
**june** 17:10
**justice** 5:1

**k**

**keenly** 15:18
**keep** 27:3,14
**kielty** 23:23
**kind** 13:8
**kirkland** 3:3
    6:7 8:25 17:23
    18:22
**knew** 13:20
**know** 7:10,25
    9:7,16,20 12:2
    12:17,17 13:3
    18:12 19:13,21
    20:12,22 21:1
    21:1,7,9 22:3
    22:17,20,21,24
    24:12,16,23
    26:13 27:8,24
    28:18

**knowing** 17:13
**known** 19:2
    21:23 23:7
**koenig** 3:9 6:17
    6:22
**kwasteniet** 3:8
    6:6,7,9,10,17
    6:21 7:20 8:14
    8:24,25 9:15
    10:3 11:23
    18:21,21 19:20
    20:2,5,17
    21:13 23:10,18
    24:5,9 25:18
    26:2,6,9,14,16
    26:25 27:4
    29:1

**l**

**law** 15:22 16:3
    16:4
**lead** 26:22
**learned** 27:2
**leaving** 24:10
    24:11
**ledanski** 2:25
    30:3,8
**legal** 15:25
    18:10 30:20
**lennon** 4:6
**letter** 8:7,10,18
    14:25
**level** 6:24
**lexington** 3:5
**light** 16:8
**limited** 12:5
**line** 7:7,23
    15:11

liquid  25:1
   26:16 27:23
liquidation
   24:7 25:7
lisa  3:25 11:15
listed  13:10
literally  19:8
litigation  7:2
   28:1,1
little  11:16
live  17:25
llc  1:7
llp  3:3,11,13,19
   4:1,8
long  13:16
look  7:13 11:4
   17:1
looked  22:25
looking  24:15
looks  28:18
los  3:15
lot  12:15

**m**

made  24:18,24
madison  4:10
main  22:19
make  9:19
   15:23 16:14,14
   18:11,22 25:2
   25:18,21
making  9:18
manage  22:24
   23:8 25:6
management
   21:17
manager  21:21
   21:22,24 22:3

22:13 23:3
24:21
managing
   22:21
mario  4:13
mark  5:8
market  28:10
   28:21
marketing
   23:19,24 24:13
   24:17 25:4,6
   28:9,13
martin  1:22
material  25:23
maths  15:10
matter  1:5
mccarrick
   17:21,23,23
   18:17,18
mccarter  3:19
mcdermott
   4:15 8:16
mean  11:6
   13:16,20
meet  12:7
   14:20 16:18
members
   26:25
mg  1:3
mineco  12:14
   13:9,10
mineola  30:23
mining  12:16
   13:2 16:8
   19:10 20:23
   21:16,19,21,22
   21:23 22:2,3

22:13,22 23:3
23:8,14,17
24:3,5,11,13
24:20 25:7
26:11 28:2,3
28:18
miningco  10:1
   13:13 16:9
   18:7 28:4
minute  8:6
mister  14:24
monday  20:14
monetization
   7:1
monetize  23:25
monetized
   27:25
morning  7:10
   8:15
motion  7:5,23
   7:25 9:23,24
   11:1,17 12:24
   13:9 14:8,12
   16:23 19:12
   20:4 24:25
   25:21 28:5
mouths  17:4
move  20:7

**n**

n  3:1 6:1 30:1
necessary  9:18
need  6:13 8:19
   17:5 24:24
   26:11
needed  17:19
negative  25:23
   28:10

network  1:7
neutral  26:17
never  24:22
new  1:2,13 3:6
   3:22 4:4,11,18
   5:5 11:2,24,25
   15:23 22:24,25
   23:16 24:17
   26:23
newco  17:6,11
   18:4 21:20
   22:3,22 23:4,5
   25:5 26:10,12
   28:2,17
news  6:11,18
   6:22 22:8
note  7:6
noted  17:25
   18:3
notice  9:7,24
november
   10:19
number  12:3,4
ny  1:13 3:6,22
   4:4,11,18 5:5
   30:23

**o**

o  1:21 6:1 30:1
o'clock  9:14
object  7:22
   11:17 26:23
objection  8:19
   9:13 10:6
   11:23 14:19
   18:2
objections  9:12
   12:1

| | | | |
|---|---|---|---|
| **objects** 7:25 | **parties** 9:6 | **plans** 9:18 | **price** 15:11 |
| **obviates** 6:13 | 11:11 | **pleading** 7:21 | 28:11,21 |
| **obviously** 7:24 | **partner** 11:15 | **please** 27:3 | **pro** 5:11,12,13 |
| 9:11 11:9 | 22:23 | **pleased** 7:15 | 15:7 17:3 28:8 |
| 16:24 | **partnering** | **plural** 15:18 | **procedure** |
| **occur** 15:9 | 22:9 | **pm** 1:16 29:4 | 13:15 15:22 |
| **occurred** 17:9 | **partners** 4:16 | **point** 10:13 | **procedures** |
| **offer** 25:11,11 | **path** 25:5 | 16:5,10 28:9 | 7:14 9:2,5,8,17 |
| **offered** 25:11 | **paul** 17:3 | 28:16,20 | 9:21 11:25 |
| **official** 3:12 | **pay** 11:9 | **points** 16:14 | 19:14,15 20:19 |
| **okay** 7:18 8:12 | **people** 7:12 | **portion** 13:9 | 20:25 21:20 |
| 10:4 11:6 | 8:21 23:1 | 15:13 | **proceeded** |
| 16:10 17:2 | 24:22,22 | **position** 11:18 | 17:12 |
| 27:13 | **permission** | 13:20,22 16:6 | **proceeding** |
| **old** 30:21 | 22:12 | 16:8 20:15 | 11:16 |
| **once** 9:16 | **permit** 13:1 | 25:22 26:3,4 | **proceedings** |
| 15:10 22:7 | **perspective** | 27:2 | 29:3 30:4 |
| **ones** 14:8 | 9:10 22:18 | **possible** 7:8,13 | **process** 23:19 |
| **operation** 13:1 | 24:18 | 16:1,2,8,15,22 | 23:24 24:13,17 |
| 13:13,19 16:9 | **persuaded** | 27:15 | 25:4 |
| 17:7 | 17:19 | **pre** 17:11 19:6 | **produce** 18:1 |
| **opposite** 24:22 | **petition** 7:11 | **preclearance** | **profitable** |
| **order** 9:25 | 28:11 | 19:10 | 28:18 |
| 15:6 19:9 | **phone** 19:7 | **preferred** 23:3 | **projected** |
| **orderly** 27:21 | 24:14 | 24:20 | 25:14,15 26:7 |
| 28:5 | **pick** 22:23 | **premium** 7:11 | **promotes** 13:9 |
| **outcome** 28:12 | **pitching** 23:1 | **prepared** 8:1 | **proposal** 12:2 |
| 28:14 | **pivoted** 19:12 | 25:18 | 13:11,18 22:21 |
| | **placed** 7:11 | **preparing** | **proposed** 7:14 |
| **p** | **plan** 8:18 9:2,9 | 11:17 | 9:1 18:7,7 21:8 |
| | 9:21,22 11:2 | **present** 9:1,11 | 21:21 23:14 |
| **p** 3:1,1 6:1 | 11:19,21 15:9 | **presenting** | 25:12,24 |
| **paper** 7:17 | 16:7,16 17:13 | 7:13 | **proposing** |
| **part** 13:1 21:20 | 18:9 19:4 | **preview** 10:9 | 15:23 19:13 |
| 21:25 23:5 | 20:20 21:12,14 | **previewed** | **proverbial** |
| 25:8 | 21:18 22:5 | 10:14 13:23 | 19:22 |
| **particulars** | 25:16 | | |
| 25:25 | | | |

provide  14:18
  14:21
public  13:18
  16:9 20:23,24
publicly  13:10
  23:16
puntus  23:23
purpose  22:19
purposes  17:20
pursue  19:4
pursuit  7:1
pushed  20:1
  28:10
put  14:8,25
  17:4 18:19
  27:20

**q**

question  8:7
  10:17,20,24
  15:21 20:8
  23:12 24:3,3
  25:9 26:20
quick  13:14
quickly  19:12
quinn  4:8

**r**

r  1:21 3:1 6:1
  30:1
raised  10:24
  11:12 12:17
  15:6 27:15
  28:7
ran  23:19,23
rather  23:16
reached  6:12
  6:25 7:16

19:16,21
read  14:3
really  13:6
  15:25 22:1
reason  17:17
  28:23
reasons  18:3
rebecca  5:12
record  8:25
  12:13 30:4
recoveries
  25:13 26:5
recovery  4:2,9
  15:14 27:24
reduced  26:11
regarding
  12:14
regulatory  9:3
  24:23
related  2:2
  10:2
relating  12:2,6
relevance
  12:11,23 18:2
relevant  14:20
  18:6
relief  10:2
remarks  18:22
remember  24:2
reopening  25:3
report  7:15
represent
  23:22
request  6:3
require  15:23
required  11:3
  20:16,18 26:24

resolution  6:13
  7:16 26:22
resolve  27:12
resolved  28:24
respect  12:22
  13:8 19:10
respond  8:1
response  18:22
rest  20:24 22:1
result  25:13
  26:4
retail  3:20
  11:14
rewind  28:20
right  6:2 8:20
  9:14 14:23
  18:16 20:8
  21:17 22:6,19
  23:3,5,25 24:8
  25:15 26:19
  27:9,15 28:6
  28:22
rights  27:24
road  30:21
robert  27:19
role  21:8
ross  3:8 6:7
  8:24 18:21
roughly  7:10
rules  20:11
run  24:17

**s**

s  2:2 3:1 6:1
sale  23:14 24:3
saying  7:21
  8:10,18 14:14
  19:9

scenarios  28:2
scheduled  6:3
scheduling  2:1
scope  26:10
screen  10:5
  19:24
se  5:11,12,13
  15:7 17:3 28:8
sec  6:22 12:6
  12:12,23,25
  13:15,17 14:11
  14:18 16:8
  17:6,9,11,24
  18:3,4,25 19:6
  19:7 22:7
sec's  20:20
second  7:18
  8:3
see  8:13 10:4
  12:20 13:24
  15:6 16:4
  17:20 22:20
  23:24 26:21
  27:14
seeing  11:4
seek  8:11 24:25
seeks  11:1
seems  19:1
sell  24:12
sense  11:22
sentence  10:8
sentences
  10:10,12
separate  22:15
sequential
  24:18

seriously 11:7
serve 12:5
    22:13
setting 28:23
seventh 4:3
shara 5:7
share 15:25
shift 16:10
show 18:12
signature 30:7
significant
    15:13
significantly
    15:15
simon 15:7
solicit 17:13
solicitation
    11:3 15:24
    26:24
solicited 24:1,5
solution 27:15
solutions 25:25
    30:20
somebody 7:25
somewhat 21:8
sonya 2:25
    30:3,8
soon 7:8,13,17
    9:20 15:20
    16:1,2,7,15,22
sort 18:12
sounds 14:23
south 3:14
southern 1:2
speak 7:20,24
    22:12 27:5

speaks 27:19
spoken 18:17
    27:10
spring 22:19
    22:20
squarely 16:23
    20:19,20 27:20
staking 13:1,13
    13:19 16:9
    17:7
standpoint
    7:25
start 6:7 28:19
starting 20:13
    20:14
statement 11:3
    11:20 13:25
    15:24 18:8
    21:6,12,14,18
    25:17 26:8,24
states 1:1,11
    5:1,2
stealing 6:23
step 8:12
steps 19:22
stock 28:3,3
stop 8:5
story 22:17
street 3:14
structure
    25:13
styled 9:24
subject 9:16
    18:1
submissions
    12:15

submitted
    25:19,20 27:19
subordination
    15:12
substantial
    20:1
suffice 10:11
suggest 24:16
suggested 8:7
suggesting
    10:21
suite 30:22
sullivan 4:8
supplement
    7:4
supplementing
    19:14
support 25:21
suppose 7:20
    25:9
sure 6:9 10:10
    10:22,25 14:13
    23:7 27:6,7
surprise 10:15
surprised
    10:16

**t**

t 30:1,1
t.j. 17:23
table 24:12
take 16:6,11
    20:23 28:19
taken 13:21
talking 27:3,14
team 26:25
    27:1

telephonically
    3:8,9,17,24,25
    4:6,13,20,21
    5:7,8,10
tell 6:22 21:9
ten 9:7,7
terms 6:25 7:5
    7:16 21:21
testify 23:23
testimony
    23:21
thank 8:20
    11:5 15:5
    16:12 18:20
    28:6,25 29:1
thanks 18:16
theory 19:2
thing 12:22
    15:16 21:17
    22:6
things 27:22
think 7:9 12:13
    12:18,21 13:12
    13:22 15:17
    16:5,20 17:7
    17:15 18:12
    19:3,13 20:19
    21:9 23:20,22
    26:18
thought 6:17
three 27:22
thunder 6:23
thursday 19:25
    20:14,15
time 13:16,21
    21:10 28:20

**timeline** 17:8
**timing** 12:1
**tiptoeing** 17:16
**today** 7:21
8:10 11:15
28:18,23
**today's** 6:14
15:17
**toggle** 11:19
**told** 6:17 24:22
24:22
**tomorrow** 9:13
11:18
**top** 15:10
**towards** 22:10
**traded** 23:17
**trading** 7:9
**transaction** 9:4
10:1 11:1 17:7
17:12 18:5,7
20:23 21:7
25:12 26:10
**transcribed**
2:25
**transcript** 30:4
**transcripts**
14:6,7
**trepidation**
23:11
**trial** 19:6
**tried** 26:21
**true** 30:4
**trust** 28:1
**trustee** 5:2
10:5 11:18
26:21,23

**trying** 15:19
16:7 19:23
**two** 10:8,10,12
11:11 12:4
19:13 20:13

**u**

**u.s.** 1:23 10:5
11:18 15:12
21:7,23,25
22:6,12 23:2,7
24:20 26:21,23
**ucc** 6:24 17:10
17:12
**under** 11:3
15:12 27:21
28:2,4
**underlying**
25:9
**understand**
11:8 13:12
**understanding**
19:25
**understood**
17:22
**undoubtedly**
23:12
**unfortunate**
20:21
**unfortunately**
22:10
**united** 1:1,11
5:1,2
**unsecured** 3:12
**update** 6:8,15
**urquhart** 4:8
**use** 25:15

**using** 2:1

**v**

**value** 15:8,15
24:11 28:15,17
**values** 24:7
**vanderbilt**
4:17
**various** 23:25
**veritext** 30:20
**viewing** 10:25

**w**

**waiting** 12:8
**want** 6:19
11:10 16:19
17:4,16 24:19
24:19
**wanted** 8:8
15:8 28:9,16
**wanting** 24:16
**warranted**
18:11
**way** 22:18
**we've** 6:12 7:2
7:16 15:10
19:5,15 24:18
**week** 7:5,14
19:20 20:13
**weeks** 19:13
**went** 25:5
**white** 3:11,13
27:1
**wilkie** 4:1
**winddown**
7:14 9:1,5,8,17
9:20 11:25
19:14,15 20:19

20:25 21:3,6
21:20 25:24
27:22 28:5
**wish** 11:19
**wishes** 18:18
**wonder** 13:7
**word** 25:15
**words** 17:4
**work** 21:2 22:2
22:14,17,24
**working** 7:3
22:9
**world** 8:8
**worse** 15:15
26:17
**wrapped** 16:1
**write** 22:21

**x**

**x** 1:4,10

**y**

**yeah** 6:21
14:10
**yesterday** 12:7
14:20 16:18
27:2,10
**york** 1:2,13 3:6
3:22 4:4,11,18
5:5

**z**

**zoom** 2:1