Eoin McAnespy
60 Belltree Avenue
Clongriffin
Dublin
Ireland

Honorable Martin Glenn
United States Bankrupcy Court
Southern District of New York

27th February 2024

Dear Honorable Martin Glenn,

**RE: Celsius Claim Distribution Underpayment**

Dear Chief Judge Glenn,

I am writing to bring to your attention an issue that has arisen regarding the treatment of my claims in the bankruptcy proceedings.

I have recently discovered that my claims, which were initially supposed to amount to $17,452.99, have been arbitrarily reduced to $4,999.9 without my consent or direction.

At no point during the voting process was I informed that my decision to select the Fahrenheit toggle option would result in a reduction of my total liquid recoveries. My intention was solely to receive more cryptocurrency under this option.

Furthermore, it has come to my attention that the debtors did not contact every earn creditor who may have mistakenly selected this option, as seen in attachment 1, the debtors by taking this action did provide an equitable treatment among creditors in the same earn class.

Moreover, there appears to be no legitimate rationale behind the decision to opt for convenience in my case. Why were there no restrictions in place within the ballot to prevent such erroneous selections, especially considering the meticulous attention given to other ballot matters? The absence of any reserves being accounted for by the debtors prior to the effective date raises serious concerns regarding the integrity of the process. (Please refer to Attachment 1.)

Despite this lack of foresight in setting aside reserves, the debtors anticipate releasing over $500 million worth of reserves over time, while simultaneously proposing substantial bonuses for current management. This scenario, where creditors like myself are facing a 90% loss of funds due to a poorly designed ballot, is unacceptable.

I find it incomprehensible that ballots reflecting such an obvious design flaw were not invalidated, and that no provisions were made for reserves to mitigate the financial impact on creditors. The repercussions of this oversight are substantial, and for many creditors, including myself, they represent a significant financial blow.

This oversight should have been rectified, anticipated, or at the very least, factored into the establishment of higher reserves for distributions. For some creditors, including myself, this situation is causing severe financial distress, exceeding that caused by previous management, which is currently under prosecution in US courts.

In light of these circumstances, I respectfully request your intervention in this matter. The decisions made thus far are nonsensical, unjust, and suggestive of fraudulent intent.

Thank you for your attention to this matter.

Sincerely,

*[signature]*

Eoin McAnespy

As an initial matter, the Post-Effective Date Debtors acknowledge that these chapter 11 cases have taken time to come to a resolution and understand that creditors want to receive their distributions. Nonetheless, the Post-Effective Date Debtors want to highlight that, in coordination with their distribution partners, they have successfully commenced a *global* distribution process to ***hundreds of thousands of creditors*** without encountering any significant operational or security issues. Further, distributing cryptocurrency to the majority of creditors rather than Cash—as is usually the case in chapter 11 bankruptcies—has hastened the speed of distributions. The Post-Effective Date Debtors emphasize that they are committed to ensuring that creditors receive the distributions they are entitled to receive under the Plan and will work with creditors to do so. As explained in the Claim Distribution FAQ and the Effective Date Notice, creditors will have one year from the Effective Date to collect their Claim distribution.

In addition, the Post-Effective Date Debtors have received a number of inquiries from creditors who assert that they did not opt into the Convenience Class during the voting on the Plan in September 2023. However, the Debtors' records on voting revealed that all such creditors in fact opted into the Convenience Class. In early January 2024, before distributions began, creditors with Claims of $25,000 or above who opted into the Convenience Class were contacted via email and were given an opportunity to correct any mistaken Convenience Claim election at that time. *For the avoidance of doubt, because distributions have now begun and the funds available for distribution have been calculated and set aside, it is not possible to honor any further requests to rescind Convenience Class elections.*

Also importantly, the illustrative waterfall attached to the notice of effective date only detailed the initial distribution to creditors—the amounts of cryptocurrency, fiat currency and stock that will be received in the coming days and weeks. There will be subsequent distributions that reflect the proceeds associated with the sale of remaining illiquid assets. In addition, the Debtors expect future distributions as other disputed and unliquidated claims are resolved; there are $500 million of disputed and unliquidated litigation and damages claims reflected in the illustrative waterfall that the Debtors expect will be reduced over time, as those claims proceed through the adjudication process with the Bankruptcy Court. Cryptocurrency, fiat currency and stock were

2