Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

> **PLEASE CAREFULLY READ THE FOLLOWING DOCUMENTS.  THE MOTION PROPOSES TO (I) AUTOMATICALLY REVERSE ELECTIONS TO OPT INTO THE CONVENIENCE CLASS FOR ACCOUNT HOLDERS WITH AFFECTED CLAIMS AT OR ABOVE $9,334 AND (II) ALLOW ACCOUNT HOLDERS WITH AFFECTED CLAIMS BETWEEN $6,045 AND $9,333 TO ELECT TO REVERSE THEIR PRIOR CONVENIENCE ELECTIONS.**

**NOTICE OF POST-EFFECTIVE**
**DATE DEBTORS' MOTION SEEKING ENTRY**
**OF AN ORDER (I) APPROVING AUTOMATIC REVOCATION**
**OF PRESUMED MISTAKEN CONVENIENCE CLAIM ELECTIONS,**
**(II) APPROVING OPTIONAL REVOCATION PROCEDURE FOR ELIGIBLE**
**CONVENIENCE CLAIM ELECTIONS, AND (III) GRANTING RELATED RELIEF**

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE TAKE NOTICE** that a hearing on the *Post-Effective Date Debtors' Motion Seeking Entry of an Order (I) Approving Automatic Revocation of Presumed Mistaken Convenience Claim Elections, (II) Approving Optional Revocation Procedure for Eligible Convenience Claim Elections, and (III) Granting Related Relief* (the "Motion") will be held on **March 20, 2024, at 10:00 a.m., prevailing Eastern Time** (the "Hearing") before the Honorable Martin Glenn, Chief United States Bankruptcy Judge.

**PLEASE TAKE FURTHER NOTICE** that the Motion seeks to automatically rescind Convenience Claim Elections made by Account Holders with affected claims valued at or above $9,334 ("Automatic Reelection Claimants"). **If you are an Automatic Reelection Claimant and do not wish to have your Convenience Claim Election rescinded, you should object to the Motion and indicate that you do not wish to have your Convenience Claim Election rescinded.** If you are an Automatic Reelection Claimant and you would like your Convenience Claim Election rescinded (including because you believe you never made an election), no action is required of you.

**PLEASE TAKE FURTHER NOTICE** that the Motion seeks to allow Account Holders with claims valued between $6,045 and $9,333 ("Optional Reelection Claimants") to elect to reverse their Convenience Claim Elections. **If you are an Optional Reelection Claimant and the relief requested in the Motion is granted as the Post-Effective Date Debtors propose, you will receive further instructions in a notice filed on the docket and served to Optional Reelection Claimants by e-mail.**

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be conducted in a hybrid fashion both in person and via Zoom for Government. Those wishing to participate in the Hearing in person may appear before the Honorable Martin Glenn, Chief United States Bankruptcy Judge,

in the United States Bankruptcy Court for the Southern District of New York, in Courtroom No. 523, located at One Bowling Green, New York, New York 10004-1408. For those wishing to participate remotely, in accordance with General Order M-543 dated March 20, 2020, the Hearing will be conducted remotely using Zoom for Government. Parties wishing to appear at or listen to the Hearing, whether (a) an attorney or non-attorney, (b) appearing in person or remotely, or (c) making a "live" or "listen only" appearance before the Court, need to make an electronic appearance (an "eCourtAppearance") through the Court's website at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. When making an eCourtAppearance, parties must specify whether they will appear at the Hearing remotely or in person and, and if appearing remotely, whether they are making a "live" or "listen only" appearance. Electronic appearances (eCourtAppearances) need to be made by **4:00 p.m., prevailing Eastern Time, the business day before the hearing (*i.e.*, on Tuesday, March 19, 2024)**.

> **PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of *In re Celsius Network LLC*, No. 22-10964 (MG) by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at http://www.nysb.uscourts.gov); and (d) be served in accordance with the *Second Amended Final Order (I) Establishing Certain Notice, Case Management, and Administrative Procedures and (II) Granting Related Relief* [Docket No. 2560] (the "Case Management Order")

by **March 13, 2024, at 4:00 p.m., prevailing Eastern Time**, to (i) the entities on the Master Service List (as defined in the Case Management Order and available on the case website of the Post-Effective Date Debtors at https://cases.stretto.com/celsius) and (ii) any person or entity with a particularized interest in the subject matter of the Motion.

  **PLEASE TAKE FURTHER NOTICE** that only those responses or objections that are timely filed, served, and received will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Post-Effective Date Debtors.  **For the avoidance of doubt, if you are Automatic Reelection Claimant and the Motion is granted as the Post-Effective Date Debtors have proposed, your Convenience Claim Election will be rescinded if you do not take action.  If you are an Automatic Reelection Claimant and you wish to have your Convenience Claim Election honored (*i.e.*, reduce your claim to $5,000 and receive Convenience Class Treatment), you should object to the Motion by March 13, 2024 at 4:00 p.m., prevailing Eastern Time and indicate in your objection that you do not want your prior Convenience Claim Election rescinded.**

  **PLEASE TAKE FURTHER NOTICE** that copies of all pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/Celsius.  You may also obtain copies of the motions and other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

  *[Remainder of page intentionally left blank]*

New York, New York
Dated: February 28, 2024

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          patrick.nash@kirkland.com
                ross.kwasteniet@kirkland.com
                chris.koenig@kirkland.com
                dan.latona@kirkland.com

*Counsel to the Post-Effective Date Debtors*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

### POST-EFFECTIVE DATE DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) APPROVING AUTOMATIC REVOCATION OF PRESUMED MISTAKEN CONVENIENCE CLAIM ELECTIONS, (II) APPROVING OPTIONAL REVOCATION PROCEDURE FOR ELIGIBLE CONVENIENCE CLAIM ELECTIONS, AND (III) GRANTING RELATED RELIEF

The above-captioned post-effective date debtors (the "Post-Effective Date Debtors" and,

prior to the Effective Date, the "Debtors") state the following in support of this motion

(this "Motion"):

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

### Preliminary Statement[2]

1.       On January 31, 2024, the Post-Effective Date Debtors emerged from chapter 11 and commenced distributions under the Plan.  Within two weeks, the Post-Effective Date Debtors attempted to send an initial distribution e-mail to every creditor eligible for a first-round Liquid Cryptocurrency distribution.  The majority of creditors—over 180,000—have already successfully received their distributions, and creditors have now claimed over 80% of the Liquid Cryptocurrency made available for distribution, which is over $2 billion worth of Liquid Cryptocurrency.

2.       Of course, with hundreds of thousands of creditors all around the world, some creditors have not been able to claim their distributions yet for one reason or another. The Post-Effective Date Debtors have received a flood of inquiries regarding distribution issues and have been reviewing these inquiries in consultation with the Distribution Agents to identify and triage common, high-incidence issues that, once resolved, will allow distributions to promptly be made to the greatest number of people.  The Post-Effective Date Debtors expect to file a further update on claims distributions in the near term with updates on resolutions for these common issues, but that is beyond the scope of this Motion.

---

[2]    Terms capitalized but not defined in this Preliminary Statement have the meaning ascribed to such terms elsewhere in this Motion.  Terms capitalized but not defined in this Motion have the meaning ascribed to them in the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "Plan"), the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (the "Disclosure Statement"), or the *Order (I) Approving the Adequacy of the Debtors' Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan of Reorganization, (III) Approving the Form of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, (V) Authorizing and Approving Reimbursement of Certain of the Plan Sponsor's Fees and Expenses, and (VI) Granting Related Relief* [Docket No. 3337] (the "Disclosure Statement Order"), as applicable.

3.      This Motion deals with one of the most common issues that has been reported by Account Holders:  apparent inadvertent or accidental Convenience Claim Elections on the ballot to vote on the Plan, which election reduces the electing creditor's claim to $5,000 and provides a distribution of Liquid Cryptocurrency equal to 70% of the reduced claim (*i.e.*, $3,500 of Liquid Cryptocurrency) in full and final satisfaction of that claim.  Dozens of creditors have written to the Post-Effective Date Debtors (and the Court) asserting that they did not make that election (or that they were mistaken if they did), appealing to notions of equity, and pleading for revocation of the election.   The Post-Effective Date Debtors informed creditors that they could not make the requested corrections because the Effective Date had occured.  In light of the overwhelming reports of mistaken Convenience Claim Elections (and the often devastating consequences of such mistakes), the Post-Effective Date Debtors assessed the Convenience Claim Election data, evaluated the available claims reserves, and developed a proposed solution that the Post-Effective Date Debtors submit is permissible under the Disclosure Statement Order (that approved the Account Holder Ballot), the Plan, and the Bankruptcy Code.

4.      This problem is a complex one without a clear and simple solution, particularly because distributions have proceeded so quickly.  On the one hand, hundreds of creditors evidently made a mistake that will result in devastating economic consequences to the electing creditors absent a correction.  At the same time, "drawing the line" on identifying which creditors made a mistake is a challenging—many creditors whose claims were only slightly above $5,000 may have rationally made the Convenience Claim Election for any number of reasons, including because they valued Liquid Cryptocurrency much more than the new equity being distributed under the Plan.  This is why the Debtors offered the Convenience Claim Election in the first place—after consulting with the Committee, the Debtors understood that many creditors preferred Liquid

Cryptocurrency, and so the Plan offered a way for creditors to opt to forego other recoveries under the Plan and maximize their Liquid Cryptocurrency distribution. Against this backdrop, the Post-Effective Date Debtors do not want to automatically revoke the election of any creditor unless they could not possibly have intended to make the election.

5.      Having evaluated this issue extensively, the Post-Effective Date Debtors believe the best solution has two components. ***First***, the Post-Effective Date Debtors are asking the Court to authorize the Post-Effective Date Debtors to automatically revoke the election of any creditor who clearly made an economic mistake in making its election. Specifically, the Post-Effective Date Debtors determined that a creditor whose sole goal was to maximize its Liquid Cryptocurrency recovery would only have rationally opted into the Convenience Class if their claim was valued at **$9,333 or less** (the "Presumptive Mistaken Election Threshold")—any creditor with a claim over the Presumptive Mistaken Election Threshold would actually receive more Liquid Cryptocurrency (in addition to other consideration) if they did ***not*** make the Convenience Claim Election (any such election, a "Presumed Mistaken Election").[3] The Post-Effective Date Debtors believe an automatic revocation is appropriate under these circumstances because no creditor would rationally make the Convenience Claim Election, and creditors should not be required to affirmatively respond in order to fix this mistake. Importantly, prior to the Effective Date, the Debtors determined that many creditors had likely made a mistake and provided electing creditors with claims over $25,000 a ten-day window to rescind their election—only 75% of these creditors timely rescinded their election, and subsequently many

---

[3]    Because the Post-Effective Date Debtors are requesting global opt-out relief to rescind the Presumed Mistaken Elections, the Post-Effective Date Debtors selected a conservative Presumptive Mistaken Election Threshold where there is no economically rational reason for an Account Holder to have made a Convenience Claim Election.

creditors complained that they missed the e-mail or did not have sufficient time to respond. The Post-Effective Date Debtors therefore request an automatic revocation to avoid a repeat of this issue.

6.    ***Second***, the Post-Effective Date Debtors are asking the Court to approve a process to provide creditors **between $6,045 and $9,333** with the opportunity to affirmatively rescind their Convenience Claim Election.  Reviewing the letters filed by Account Holders, the Post-Effective Date Debtors determined that at least some creditors who asserted that they did not intend to make their Convenience Claim Election held claims valued below the Presumptive Mistaken Election Threshold.  The Post-Effective Date Debtors do not request automatic revocation of such elections because there may well have been a reasoned basis for a creditor with claims in this range to make the Convenience Claim Election and receive more Liquid Cryptocurrency.  To balance these considerations, the Post-Effective Date Debtors seek approval of a formal process to allow creditors in this range to affirmatively rescind their election.

7.    To be clear, in either case (the automatic revocation or the optional revocation), creditors who are allowed out of their earlier election will receive the treatment to which they would have otherwise been entitled under the Plan—Liquid Cryptocurrency, the new stock, and future distributions from Illiquid Recovery Rights.

8.    Importantly, no revocation will be possible for creditors with claims at or below $6,045 (the "Revocable Convenience Election Threshold" and the associated elections, the "Revocable Convenience Elections" and the Presumed Mistaken Elections and any Revocable Convenience Elections for which an Account Holder requests revocation, the "Mistaken Elections") because claims at or below the Revocable Convenience Election Threshold received a higher distribution of Liquid Cryptocurrency with Convenience Claim

5

Treatment than they otherwise would have. Revoking such elections would require creditors to return Liquid Cryptocurrency, making it too complicated to "unscramble the egg" at this point for such creditors (and it is far less likely that a creditor with a claim at or below $6,045 made a mistake in reducing to $5,000).

9.      The chart below summarizes all Convenience Claim Elections; the line through the middle of the chart separates the bands of creditors that had the opportunity to revoke their Convenience Claim Elections prior to the Effective Date from those who did not.

| Claim Range[1] | Total Universe | | | Rescinded Election | | | Remaining Opt-Ins to Convenience | |
|---|---|---|---|---|---|---|---|---|
| | Claims ($) | | Claims (#) | Claims ($) | | Claims (#) | Claims ($) | Claims (#) |
| > $1mm | $ | 13,739,223 | 7 | $ | 12,691,743 | 6 | $   1,047,480 | 1 |
| $500k - $1mm | | 6,874,430 | 11 | | 5,468,706 | 9 | 1,405,724 | 2 |
| $250k - $500k | | 12,774,422 | 37 | | 9,582,851 | 28 | 3,191,571 | 9 |
| $100k - $250k | | 17,449,094 | 116 | | 12,536,699 | 83 | 4,912,395 | 33 |
| $50k - $100k | | 17,062,360 | 248 | | 11,565,202 | 171 | 5,497,158 | 77 |
| $25k - $50k | | 15,887,888 | 462 | | 10,792,430 | 316 | 5,095,459 | 146 |
| $15k - $25k | | 10,141,059 | 523 | | - | - | 10,141,059 | 523 |
| $10k - $15k | | 6,915,788 | 573 | | - | - | 6,915,788 | 573 |
| $9,334 - $10k | | 950,390 | 98 | | - | - | 950,390 | 98 |
| $6,046 - $9,333 | | 11,846,314 | 1,658 | | - | - | 11,846,314 | 1,658 |
| $5k - $6,045 | | 11,692,741 | 2,140 | | - | - | 11,692,741 | 2,140 |
| **Total** | **$** | **125,333,709** | **5,873** | **$** | **62,637,631** | **613** | **$   62,696,079** | **5,260** |

(1) Class 2 Retail Borrow Post-Set Off, Class 5 General Earn, and Class 7 Withhold Claims Combined

10.      The Post-Effective Date Debtors evaluated the economic effects of the proposed relief and determined that they have sufficient reserves to allow revocation of all Mistaken Elections as set forth above. Specifically, revocation of all Presumed Mistaken Elections will result in the distribution of approximately $18.3 million worth of additional Liquid Cryptocurrency and $6.1 million in MiningCo Common Stock and the inclusion of approximately 1,450 additional creditors in future distributions on account of Illiquid Recovery Rights. Assuming revocation of every Revocable Convenience Election, the revoking creditors would receive an aggregate of approximately $1.1 million worth of additional Liquid Cryptocurrency and $1.8 million in

MiningCo Common Stock, and approximately 1,650 additional creditors would participate in future distributions on account of Illiquid Recovery Rights.

11.     Against this backdrop, the Post-Effective Date Debtors file this Motion, seeking authorization to automatically revoke all Presumed Mistaken Elections (unless the creditor objects to the Motion to reaffirm their Convenience Claim Election) (the "Automatic Revocation of Presumed Mistaken Elections") by deeming this Motion to be a revocation request by each Account Holder who made a Presumed Mistaken Election (each, an "Automatic Reelection Claimant") to ensure a consistent, fair approach.  The Post-Effective Date Debtors further propose allowing all Account Holders who made Revokable Convenience Elections (each, an "Optional Reelection Claimant") to have thirty days to revoke their Convenience Claim Elections. The Post-Effective Date Debtors are serving this Motion on all Account Holders, and if the Motion is approved, will file and serve a specialized notice detailing the process for Optional Reelection Claimants to affirmatively revoke their election.   As set forth herein, the Post-Effective Date Debtors believe that this approach is authorized under the Plan, the Disclosure Statement Order, and applicable law, and presents the most equitable solution available under the circumstances.

## Relief Requested

12.     The Post-Effective Date Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order") (i) approving the Automatic Revocation of Presumed Mistaken Elections, (ii) approving the reelection procedure for Optional Reelection Claimants, and (iii) granting related relief, as set forth therein.

## Jurisdiction and Venue

13.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

7

*Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. The Post-Effective Date Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

14.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

15.     The bases for the relief requested herein are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Civil Procedure 60 ("Rule 60"), applicable to these chapter 11 cases through rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## **Background**

### I.     **The Convenience Claim Election.**

16.     Under the Plan, Convenience Claims (put simply, aggregated Account Holder Claims that are greater than $10 and less than or equal to $5,000) receive Liquid Cryptocurrency in an amount sufficient to provide a 70% recovery, in full and final satisfaction of such Convenience Claims (the "Convenience Class Treatment"). *See* Plan, Art. I.A.64 (defining "Convenience Class Distribution"). Convenience Claims do not receive either equity in MiningCo or future distributions of Liquid Cryptocurrency as litigations are resolved and as the claims reserves are reduced. After consulting with the Committee, the Debtors wanted to provide the opportunity for Account Holders who preferred Liquid Cryptocurrency, but were not in the Convenience Class, to elect to forego other distributions and opt in to receiving Convenience Class Treatment. As a result, the ballot to vote on the Plan (the "Account Holder Ballot") offered

Account Holders with Retail Borrower Deposit Claims, General Earn Claims, and Withhold Claims the ability to elect to reduce their Account Holder Claims (other than Custody Claims) to $5,000 and receive treatment as Class 4 Convenience Claims (the "Convenience Claim Election") to allow creditors to make that decision for themselves. The Convenience Claim Election was designed to be convenient for small claim holders by offering the option to receive a one-time distribution of Liquid Cryptocurrency that was guaranteed to be 70% regardless of shifts in Cryptocurrency prices.

17.     On August 17, 2023, the Court entered the Disclosure Statement Order, pursuant to which the Court approved the Disclosure Statement, the Solicitation and Voting Procedures, and the forms of the Ballots, including the Account Holder Ballot. The approved Account Holder Ballots for Account Holders with Retail Borrower Deposit Claims, General Earn Claims, and Withhold Claims contained a check box to make the Convenience Claim Election. *See* Disclosure Statement Order, Ex. 3A, Item 5; *see also* Plan, Art. I.A.61 (defining "Convenience Claim Election"). The Convenience Claim Election appeared on the electronic Account Holder Ballots as follows:[4]

---

[4]     This image reflects how the Convenience Claim Election appeared to Account Holders on the online voting portal and is provided here for the benefit of all parties. For the avoidance of doubt, the language within the image is consistent in all respects with the relevant section of the Account Holder Ballot as approved by the Disclosure Statement Order.



18.     The Debtors and the Committee repeatedly informed Account Holders about the Convenience Claim Election and the consequences of making it.  In addition to the in-line explanation on the Account Holder Ballot, Account Holders received the following warnings and explanations:

- ***Item 5 Ballot Disclosure***.  Item 5 of the Account Holder Ballot was titled "Optional Convenience Claim Election for Class 2 Retail Borrower Post-Set Off Claims, Class 5 General Earn Claims and Class 7 Withhold Claims."  Item 5 of the Account Holder Ballot provided that "Account Holders whose Claims (excluding Custody Claims and Retail Borrower Deposit Claims but including Retail Borrower Post-Set Off Claims) total more than $5,000 may irrevocably elect to have their Claims reduced to $5,000 and receive the treatment for Class 4 as Convenience Claims.  By opting to receive Convenience Class treatment for your Claims (*i.e.*, choosing the Convenience Claim Election), the ***aggregate*** amount of your Account Holder Claims (excluding Custody Claims) will be irrevocably reduced to $5,000." (emphasis in original).  Item 5 of the Account Holder Ballot further included a chart restating the treatment of claims in Class 4, 5, and 7 (Item 3 contained the treatment of Class 2) to help Account Holders understand the significance of the election.

- ***Flow Charts.***    The Disclosure Statement included flowcharts titled "Navigating the Ballot" as <u>Exhibit G</u> (Retail Borrower Deposit Claims), <u>Exhibit I</u> (General Earn Claims), and <u>Exhibit K</u> (Withhold Claims).  Each flow chart explained the various options available when filling out the Account Holder Ballot.  One step of the flow chart asked "Do you wish to make the Convenience Claim Election? (Review <u>Item 5</u> on your Ballot.)"  In each exhibit, the "Yes" branch disclosed the reduction of the electing

creditor's Account Holder Claims to $5,000 and treatment as a Convenience Claim.

- ***Explanatory Video***.   On August 28, 2023, the Committee published a 22-minute-long video titled "Account Holder Ballot Walkthrough" which provided information to Account Holders regarding each Item of the Account Holder Ballot.   The video was made publicly available at youtube.com/@CelsiusUcc.   The video explained the Convenience Claim Election at minute 9:20: "The Convenience Claim Election. . . allows a creditor with a claim that is higher than $5,000. . . to opt-in to the Convenience Class and receive the 70% in Liquid Cryptocurrency.   The catch is, to do so, you have to reduce your Claim to the Convenience Class level.   So if you had a $6,000 General Earn Claim and made this election, you would have to reduce that $6,000 Earn Claim to $5,000 and then you would receive 70% of the reduced $5,000 claim."

## II.   Voting Results and Convenience Claim Election Clarification.

19.   On September 25, 2023, the Debtors filed the *Declaration of Brian Karpuk Regarding the Solicitation and Tabulation of Votes on the Joint Chapter 11 Plan of Reorganization of Votes on the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3560, Amended Docket No. 3574] (the "Voting Declaration"). As described in the Voting Declaration, the Solicitation Agent examined each timely submitted, valid Account Holder Ballot and determined that 5.85% (5,888) in number, which is equivalent to 2.94% ($126,102,387.56) in dollar value, of Holders of Account Holder Claims in the Voting Classes eligible to opt into the Convenience Class affirmatively did so. *See* Voting Declaration ¶ 14.[5]

20.   Upon further review of the data during preparations for the Effective Date of the Plan, the Debtors noticed that many Account Holders made Convenience Claim Elections that

---

[5]   The Post-Effective Date Debtors reconciled the discrepancies between the figures contained in this Motion and those contained in the Voting Declaration and identified that the Voting Declaration contained six duplicate entries and included "opt in" results for nine creditors who responded to the Convenience Claim Election on their ballot but were already in the Convenience Class by default.

11

were surprising from an economic perspective.  For example, seven individuals with claims valued over $1 million made the Convenience Claim Election.  Believing such elections were likely a mistake, the Debtors reached out by email to Account Holders who had Claims valued at $25,000 or greater who made the Convenience Claim Election to allow such Account Holders to rescind their elections, as permitted by the Solicitation and Voting Procedures.  *See* Disclosure Statement Order, Exhibit 1 ¶ 4.iii.w ("[A]fter the Voting Deadline, no Ballot may be withdrawn or modified without the prior consent of the Debtors, in consultation with the Committee, or further order of the Court.").  Counsel to the Debtors provided an update to the Court on this issue on January 11, 2024.[6]

21.    Specifically, on January 4, 2024, the Solicitation Agent sent a communication to any Account Holder who held a Claim in excess of $25,000 and made the Convenience Claim Election (the "Election Confirmation Message").  The Election Confirmation Message stated: "You are receiving this email on behalf of Celsius because voting records indicate that you are the holder of a Claim in excess of $25,000, but you elected to receive Convenience Class treatment during the voting on the Plan, which will **reduce your total Claim to $5,000.**  This means that you will only receive a liquid cryptocurrency distribution of approximately $3,500 and no other form of recovery on your Claim.  **Because of the significant difference between the value of your original Claim and the value of your Claim under Convenience Class treatment, we are writing to confirm that you intended to elect the Convenience Class treatment and reduce**

---

[6]    *See* Jan. 11, 2024 Hr'g Tr. 13:13-25 ("When we looked at the data, we noticed that there quite a bit of people that made an election that in our view may have been uneconomic. . . . So we reached out to the creditors that had high claims but nonetheless checked the box and said did you mean to do this, would you like to rescind your election and go back to the claim you had before?").

**your total Claim to $5,000.**" (emphasis in original).  The Election Confirmation Message included the following example for illustrative purposes:

|  | Convenience Class Election | Earn Class Treatment |
|---|---|---|
| Your claim amount (at Petition Date) | $25,000 | $25,000 |
| Convenience Class Election? | Yes | No |
| $ value of crypto or fiat that you may receive under the Plan as an Earn Creditor | ~$3,500 | ~$12,750[1] |

The Election Confirmation Message instructed users who did not intend to opt into the Convenience Class to notify Stretto in writing by emailing CelsiusSolicitation@stretto.com within 10 days from the date the Account Holder received the Election Confirmation Message.

22.     By the Effective Date, nearly 70% of the Account Holders who were sent the Election Confirmation Message rescinded their Convenience Claim Election (613 claims with an aggregate value of $62,637,631).

**III.     Post-Effective Date Developments.**

23.     On January 31, 2024, the Effective Date of the Plan occurred, and the Post-Effective Date Debtors and the Distribution Agents commenced distributions in accordance with the Plan.  *See Notice of Occurrence of Effective Date of Debtors' Modified Chapter 11 Plan of Reorganization and Commencement of Distributions* [Docket No. 4298].

24.     Once distributions were under way, the Post-Effective Date Debtors began receiving inquiries from creditors who received Convenience Class Treatment, were surprised by the recovery they received, and asserted that they did not make the Convenience Claim Election. In each such instance, the Debtors' voting records reflected that the inquiring creditor **had** made the Convenience Claim Election.  The Post-Effective Date Debtors disclosed this development in the *Post-Effective Date Debtors' First Update on Distributions* [Docket No. 4319] (the "First Claims Update") and conveyed that "because distributions have now begun and the funds available

13

for distribution have been calculated and set aside, it is not possible to honor any further requests to rescind Convenience Claim Elections." First Claims Update at 2.

25.    On February 21, 2024, creditors began filing letters on the docket alleging that they did not intend to opt into Convenience Class Treatment and requesting that the Court allow them to rescind their Convenience Claim Election.[7]

26.    In light of the overwhelming number of creditors who have communicated that they made a mistake (and the consequences of such mistakes), the Post-Effective Date Debtors reassessed the Convenience Claim Election data, evaluated the available claims reserves, and attempted to identify an equitable solution that would be permissible under the Disclosure Statement Order, Plan, Confirmation Order, and Bankruptcy Code. After careful consideration, the Post-Effective Date Debtors determined to file the Motion, requesting approval of the Automatic Revocation of Presumed Mistaken Elections and a process for Account Holders to request revocation of Revokable Convenience Elections.

---

[7]    *See, e.g.*, Beck Letter [Docket No. 4331] ("I am 100[%] sure I did not elect the convenience class, my claim was over $16 thousand dollars, so to elect the convenience would have meant that I was giving up over $6 thousand dollars in immediate crypto distribution not to mention the stock I was due."); Holm Letter [Docket No. 4334] ("This reclassification to the "Convenience" class, seemingly without my consent or prior notification, has raised serious concerns about the integrity of the asset distribution process."); Swim Letter [Docket No. 4338] ("[S]omehow I got placed in convenience class decreasing my claim to $5,000. I don't know or exactly understand how this happened."); Ujma Letter [Docket No. 4340] ("I have been put in the "convenience class" although I did not check that box and I am being offered a small fraction about 5% of what I am owed."); David Letter [Docket No. 4343] ("It seems I have been put in the "convenience class" although I did not check that box and I am being offered a small fraction of what I am owed."); Maan Letter [Docket No. 4347] ("[My claim] seems to be added to the convenience class for the recovery of assets, which I never intended to do."); Mansour Letter [Docket No. 4348] ("[T]here appears to be no legitimate rationale behind the decision to opt for convenience in my case."); Saliba Letter [Docket No. 4349] ("At no point during the voting process [did I select to be] in the convenience class, but it seems that somehow I have ended up in this category without my knowledge."); McAnespy Letter [Docket No. 4350] ("I have recently discovered that my claims . . . have been arbitrarily reduced to $4,999.9 without my consent or direction.").

**Basis for Relief**

27.     The Court can approve the Motion under section 105(a) of the Bankruptcy Code,
the Disclosure Statement Order, and Bankruptcy Rule 9024, which incorporates Rule 60.
11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or
appropriate to carry out the provisions of this title."); Fed. R. Bankr. P. 9024 (making Fed. R. Civ.
P. 60 applicable in cases under the Bankruptcy Code, subject to inapplicable exceptions); Fed. R.
Civ. P. 60(b) (providing for relief from judgment on the basis of a mistake within one year of the
date of the applicable judgment).

**I.      The Disclosure Statement Order Provides the Post-Effective Date Debtors and the
Court with Flexibility to Correct the Mistaken Elections.**

28.     The approved Solicitation and Voting Procedures provide that "after the Voting
Deadline, no Ballot may be withdrawn or modified *without the prior consent of the Debtors*, in
consultation with the Committee, *or further order of the Court*." *See* Disclosure Statement Order,
Exhibit 1 ¶ 4.iii.w (emphasis added).[8]

29.     As described herein, prior to the Effective Date, the Debtors already attempted to
utilize their discretion under the Disclosure Statement to help Account Holders correct certain
Presumed Mistaken Elections (for claims in excess of $25,000).  Those efforts rectified a number
of Presumed Mistaken Elections but, with hindsight, clearly did not fully solve the problem.
Without order of the Court, the Post-Effective Date Debtors cannot globally correct the issue, and
the requests are too voluminous and decentralized (coming to the Post-Effective Date Debtors'

---

[8]     As of the Effective Date, the Committee was dissolved other than for purposes of fee applications, so the
consultation requirement is no longer applicable.  *See Findings of Fact, Conclusions of Law, and Order
Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor Affiliates* [Docket No.
3972] ¶ 362.

counsel, the Solicitation Agent, and directly to the Court via e-mails, calls, and letters) to ensure equitable treatment on an ad hoc basis.

30.    Therefore, the Post-Effective Date Debtors propose via this Motion that (a) each Automatic Reelection Claimant be deemed to have requested to revoke its Presumed Mistaken Election (absent an Automatic Reelection Claimant objecting to the Motion to reaffirm their Convenience Claim Election) and (b) each Optional Reelection Claimant have 30 days to request revocation of its Revocable Convenience Election.    Under the circumstances, the relief is appropriate because (i) there is no economically rational explanation for the Presumed Mistaken Elections, (ii) no apparent harm to the Automatic Reelection Claimants will result from rescinding their Presumed Mistaken Elections, (iii) the Post-Effective Date Debtors have authority to approve revocation of the Revocable Convenience Elections under the Disclosure Statement Order upon request, and (iv) the effect to other creditors is *de minimis* (a Pro Rata reduction of the subsequent distribution of the remainder of the claims reserve) and consistent with reasonable creditor expectations at the time of voting, when no creditor should have assumed the occurrence of economically irrational elections.

31.    For these reasons, the Post-Effective Date Debtors request that the Court enter the proposed Order to effectuate revocation of all Presumed Mistaken Elections and to approve the process by which Optional Reelection Claimants can request revocation of Revocable Convenience Elections.

## II.    Rule 60(b) Provides an Additional Basis for the Requested Relief.

32.    Alternatively, the Court can deem the Motion to be a motion on behalf of each Automatic Reelection Claimant for relief from the Disclosure Statement Order under Rule 60(b), made applicable in these cases by Bankruptcy Rule 9024.    Rule 60(b)(1), permits a bankruptcy

court to "relieve a party or its legal representative from a final judgment, order, or proceeding for mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).

33.    As an initial matter, Rule 60(c)(1) requires that Rule 60(b)(1) motions "must be made within a reasonable time—and [in the case of a motion based on mistake, inadvertence, surprise, or excusable neglect] no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).  Account Holders raised the issue of Mistaken Elections promptly after the Effective Date, and the Court entered the Disclosure Statement Order on August 17, 2023.  Therefore, requests for relief under Rule 60(b) are timely.

34.    The Supreme Court has held that a court's determination of whether relief under Rule 60(b)(1) should be granted on excusable neglect grounds (which fall in the same subsection of Rule 60(b)) is an equitable one "tak[ing] account of all relevant circumstances. . . ." *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993). In considering whether Rule 60(b)(1) relief is warranted on excusable neglect grounds, *Pioneer* requires consideration of four factors: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether movant acted in good faith.  *Id.*; *William v. City of New York*, 727 Fed.Appx. 30, 31–32 (2d Cir. 2018) (citing *Pioneer* and restating the *Pioneer* factors).  An evaluation of these four factors (adapted for a "mistake" basis), supports approval of the Automatic Revocation of Presumed Mistaken Elections.

35.    For the first factor, the risk of prejudice weighs in favor of the requested relief. Absent the relief requested, the Post-Effective Date Debtors will be required to address all Mistaken Elections on an ad hoc basis, which would be prohibitively complex to equitably

administrate in any manner other than blanket rejections (exposing the Post-Effective Date Debtors to continued controversies over the Mistaken Elections). As described above, the proposed relief balances the equities among the parties—Automatic Reelection Claimants will avoid severe prejudice, Optional Reelection Claimants will have an opportunity to correct mistaken elections, and the consequences to other creditors are *de minimis* and consistent with creditors' reasonable expectations during Plan solicitation. Therefore, the danger of prejudice weighs in favor of approving the Motion.

36.     The second factor (regarding the length of a delay) does not translate cleanly from the "excusable neglect" context to a "mistake" context, but the Post-Effective Date Debtors are filing this Motion (to be deemed to be a motion on behalf of each Automatic Reelection Claimant, barring any opt outs) within the statutory period prescribed by Rule 60 and within a month of the Effective Date, when many Account Holders discovered and reported their Mistaken Elections. Further, the Post-Effective Date Debtors are requesting the Automatic Revocation of Presumed Mistaken Elections and a streamlined procedure for revocation of Revocable Convenience Elections to avoid delay in the administration of their estates, such that denial of the Motion would threaten delay. Therefore, to the extent the Court considers delay as a factor, it also weighs in favor of approving the Motion.

37.     The third factor (reason for the delay) similarly does not precisely translate to the "mistake" context. Adapting this factor to be the "reason for the mistake," this factor also weighs in favor of approving the Motion. The majority of Account Holders in these proceedings are *pro se* creditors participating in a chapter 11 process for the first time. As a consequence, despite the Debtors' and Committee's efforts to facilitate informed decisions, Account Holders likely did not always understand the consequences of their actions. Moreover, with Account Holders all over

the world receiving solicitation communications in English, certain creditors faced additional barriers to understanding the materials provided to them. Lastly, several creditors to whom the Debtors sent Election Confirmation Messages conveyed that they were not sure if the Election Confirmation Message was a phishing attempt, an issue which has plagued these cases. For all of these reasons, the third factor (as adapted) justifies approving the Motion.

38.     Lastly, the final factor (good faith) also weighs in favor of approving the Motion. The Post-Effective Date Debtors are requesting the Automatic Revocation of Presumed Mistaken Elections and a streamlined process for revocation of Revocable Convenience Elections to avoid harm to the affected Account Holders and for no other purpose. The Post-Effective Date Debtors established the criteria for identification of Presumed Mistaken Elections and Revocable Convenience Elections using objective, reasoned parameters that ensure minimal prejudice to all unaffected Account Holders. Therefore, the final factor (and all of the *Pioneer* factors) weigh in favor of granting the Motion.

## **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

39.     The Post-Effective Date Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that cause exists to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

## **Motion Practice**

40.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the Post-Effective Date Debtors submit that this Motion satisfies Local Rule 9013-1(a).

**Notice**

41.     The Post-Effective Date Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) counsel to NewCo; (c) counsel to the Litigation Administrator; (d) all Account Holders; and (e) any party that has requested notice pursuant to Bankruptcy Rule 2002 after the Effective Date.  In light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

42.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

20

WHEREFORE, the Post-Effective Date Debtors request that the Court enter the Order

granting the relief requested herein and such other relief as the Court deems appropriate under the

circumstances.

New York, New York
Dated: February 28, 2024

*/s/ Joshua A. Sussberg*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          jsussberg@kirkland.com

 - and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          patrick.nash@kirkland.com
               ross.kwasteniet@kirkland.com
               chris.koenig@kirkland.com
               dan.latona@kirkland.com

*Counsel to the Post-Effective Date Debtors*

## Exhibit A

**Proposed Order**

**Hearing Date:  March 20, 2024, at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline:  March 13, 2024, at 4:00 p.m. (prevailing Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) ) ) ) ) ) ) | Chapter 11 |

In re:
)   Chapter 11
)
CELSIUS NETWORK LLC, *et al.*,[1]
)   Case No. 22-10964 (MG)
)
       Debtors.
)   (Jointly Administered)
)
)

**ORDER (I) APPROVING AUTOMATIC REVOCATION OF**
**PRESUMED MISTAKEN CONVENIENCE CLAIM ELECTIONS,**
**(II) APPROVING OPTIONAL REVOCATION PROCEDURE FOR ELIGIBLE**
**CONVENIENCE CLAIM ELECTIONS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the post-effective date debtors (collectively, the "<u>Post-Effective Date Debtors</u>" and, prior to the Effective Date, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>"), approving the Automatic Revocation of Presumed Mistaken Elections (and related opt-out mechanism) and the optional revocation procedure for Revokable Convenience Elections, all as more fully set forth in the Motion; and upon and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012; and this Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of these chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

---

[1].  The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

[2]   Capitalized terms used but not defined herein have the meanings given to such terms in the Motion.

the relief requested in the Motion is in the best interests of the Post-Effective Date Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Post-Effective Date Debtors' notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing (the "Hearing") before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Motion is deemed to be a request on behalf of each Automatic Reelection Claimant to rescind its Presumed Mistaken Election, and all such Presumed Mistaken Elections are hereby rescinded.

3.      The Debtors shall provide all Account Holders who made Revokable Convenience Elections with thirty days to revoke such elections, noticed via filing on the docket with e-mail service to the eligible Account Holders.  The Debtors shall honor all timely requests to revoke Revokable Convenience Elections.

4.      Except as expressly provided herein, nothing in this Order restricts the Post-Effective Date Debtors' discretion under the Disclosure Statement Order, and the Post-Effective Date Debtors shall not be required to honor any other requests to rescind Convenience Claim Elections except as set forth in this Order.

5.      Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of the Post-Effective Date Debtors' rights to

dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Post-Effective Date Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Post-Effective Date Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Post-Effective Date Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Post-Effective Date Debtors' rights to subsequently dispute such claim.

6.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rules and the Local Rules are satisfied by such notice.

7.    Notwithstanding anything to the contrary in the Bankruptcy Code, Bankruptcy Rules, or Local Rules, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

8.    The Post-Effective Date Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated: _____, 2024

_____
THE HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE