Richard D. Grossman
**LAW OFFICES OF RICHARD D. GROSSMAN**
211 West Wacker Drive Ste 710
Chicago, IL  60606
(312) 750-9308
Fax (312) 750-9323
rgat135@gmail.com

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | Chapter 11 |
| **CELSIUS NETWORKS LLC**, *et al*., | Case No. 22-10964 (MG) |
| **Debtors.** | **MOTION FOR HEARING AND OTHER RELIEF** |

NOW COME Retail Borrower Creditors THOMAS CHERNAIK, DARIUS GHEORGHE and CHRISTIAN FUNCK and move this Court for entry of an order requiring Debtor to answer discovery concerning Debtor's use of Bitcoin, Ethereum or other cryptocurrency collateral, and further move this Court to set a hearing regarding the method Debtor has employed to deal with the creditors who opted to refinance the Retail Borrower Deposit Claims, and in support thereof state as follows:

1. The Movants are members of the class of persons who borrowed money from Debtor pledging Bitcoin, Ethereum or other cryptocurrency as collateral.

2. The administration of the plan is ongoing and the claims of Movants are not being treated equally and fairly with other members of the same class, but according to an administrative fiat that is manifestly unfair and is fraught with the potential for abuse.

3. Specifically, despite Debtor's professed desire (as explained to the Court by Mr. Chris Koenig on March 20, 2024) to "give creditors what they demanded from us: a distribution in cryptocurrency to the extent they could receive it", Movants are getting less than a third of the "crypto" they would otherwise be entitled to if not for the arbitrary formula devised by the Plan administrators. (March 20, 2024 Transcript, p. 13, ll. 10-13).

4. As Debtor has also explained, the calculus for dealing with Movants' claims is as follows:

    If a borrower…decided to refinance its loan, the third-party lender must repay the borrower's loan by making the payment to the Debtors, the Debtors would use those funds to purchase an equivalent amount of BTC and ETH on the market, and that BTC and ETH are then transferred to the third-party lender for use as collateral for the borrower's refinanced loan with the lender.

    (Debtor's Response to Distribution Issues, Pg. 9, 2nd par.)

5. First, the fact that the Debtor would be required to "go back into the market" to purchase the cryptocurrency was not explained to Movants. Second, Mr. Koenig stated to the Court that Debtor made valiant efforts to do what other financially troubled entities dealing in cryptocurrency did not – keep their cryptocurrency ("We held onto the crypto through the bankruptcy. We did not sell it. Other Debtors have sold it. That would have been the easy thing to do." (Transcript, March 20, 2024, p. 13, ll. 15-17).

6. Furthermore, the fact that Debtor did, in fact, retain their cryptocurrency means that Debtor had a rapidly appreciating asset that more than doubled in value between the Petition Date and the Effective Date, and that then again almost doubled between the Effective Date and the date of refinancings. If Debtor was holding these assets for the benefit of Creditors, and to settle Creditor claims, why should the debtors have benefitted from the increase of value in these assets during these critical periods, in particular during the period between the Effective Date and the Refinance dates?

7. If what Mr. Koenig represented to the Court is true, and Movants are desirous of discovery to determine the truth, then Debtor was fully aware of exactly how many Retail Borrowers would be refinancing as of the end of the option period and could easily have determined how much cryptocurrency would be needed to use as collateral for the third-party loans. There would have been no need to "go into the market" to purchase new cryptocurrency.

8. If what Mr. Koenig represented to the Court is true, and Debtors were aware of Creditor's elections, why would they have not withheld sufficient reserves to settle these claims, and wouldn't Debtors and Plan Administrators have had a fiduciary duty to protect the assets and interests of the Creditors?

9. Of course, as the price of cryptocurrency rose between the January 16, 2024 and the present, more and more money was needed to buy the increasingly expensive "crypto collateral" back from the market, effectively reducing the amount of recovery of collateral dollarized claims underlying Movants' respective loans, because Movants' cryptocurrency was arbitrarily "dollarized" and fixed as of January 16, 2024.

10. Due to unexplained delays on the part of the Debtors, claims for Borrowers who opted for refinance that were supposed to be settled on the Effective Date were further delayed into March 2024 and beyond. A number of these refinancings are still pending and not completed in May 2024.

11. Because each of Movants' loans was supported by substantial amounts of cryptocurrency in excess of the original loan amount, hundreds of thousands of dollars of each Movants' cryptocurrency value evaporated as a result of the formula described above, and tens of millions of cryptocurrency value belonging to the class of Retail Borrowers similarly simply vanished.

12. For Borrowers who opted to repay their loan principal who made payments in January 2024,

many of these Borrowers have still not received their crypto distributions in May 2024.

13. For Borrowers who opted to set off their claims in January 2024, many of these Borrowers still have not received their crypto distributions.

14. Given the egregious circumstances described above, Movants request the following relief:

a) The entry of an order allowing Movants to pursue discovery of Debtor's use, *vel non*, of the cryptocurrency pledged as security by the class of Retail Borrowers;

b) The entry of an order allowing Movants to pursue discovery of Debtor's unexplained delays and lack of provision for sufficient reserves for claims and elections by the class of Retail Borrowers to settle all claims at Effective Date pricing, in line with Borrowers who elected to repay their loan principal;

c) The scheduling of a hearing regarding the formula described in ¶ 4 above used to deal with the claims of Retail Borrowers; and

d) Other relief this Court deems appropriate under the circumstances.

Respectfully submitted,

 */s/ Richard D. Grossman*
Richard D. Grossman
*Attorney for Thomas Cherniak,
Darius Gheorghe and Christian Funck*

Richard D. Grossman
**LAW OFFICES OF RICHARD D. GROSSMAN**
211 West Wacker Drive
Suite 710
Chicago, IL  60606
(312) 750-9308
Fax (312) 750-9323
rgat135@gmail.com

4