Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) Case No. 22-10964 (MG) |
| Post-Effective Date Debtors. | ) (Jointly Administered) |
| | ) Case No. 22-10964 |

**POST-EFFECTIVE DATE DEBTORS' PRELIMINARY OBJECTION TO
RETAIL BORROWERS' MOTION FOR HEARING AND OTHER RELIEF**

The above-captioned post-effective date debtors (prior to the Effective Date of the Plan, the "Debtors," and, after the Effective Date, the "Post-Effective Date Debtors," as applicable) submit this preliminary objection to the *Motion for Hearing and Other Relief* [Docket No. 4860] (the "Motion") filed on May 3, 2024 by Retail Borrowers Thomas Chernaik, Darius Gheorghe,

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

and Christian Funck (the "Movants"). Concurrently with the Motion, the Movants filed a proposed order requesting presentment of the same at the omnibus hearing to be held on May 7, 2024 (the "Omnibus Hearing"). The Movants request that the Court enter an order allowing them to pursue discovery related to the Post-Effective Date Debtors' use of cryptocurrency serving as collateral for the loans they took out from Celsius and a hearing regarding the refinancing of Retail Borrowers' loans under the Plan.

**Preliminary Objection**

1. ***First***, as an initial matter, the Movants seek to have a hearing on the Motion on just two business days' notice, having filed the Motion after the agenda was filed for the Omnibus Hearing. This absurdly late request should be denied, and the Motion must be re-noticed for a new hearing.

2. Bankruptcy Rule 2002(a)(2) requires at least 21 days' notice by mail of "a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice." In addition, the Case Management Procedures [Docket No. 2560] provide the following:

> In accordance with Local Rule 9006-1(b)…in the event that a party files and serves a Request for Relief *at least 14 days* before the next Omnibus Hearing, the matter shall be set for hearing at such Omnibus Hearing. If a Request for Relief is served by overnight delivery, it must be filed and served *at least 15 calendar days* before the next Omnibus Hearing. If a Request for Relief is served by U.S. mail only, it must be filed and served *at least 17 calendar days* before the next Omnibus Hearing.[2] (emphasis added).

Here, the Motion was filed on May 3, 2024 for a May 7, 2024 hearing—in other words, on only ***two business days'*** notice. Further, the Movants have not filed a motion requesting shortened

---

[2] Case Management Procedures ¶ 18.

2

notice, and the Court has not otherwise shortened the time or directed another method of giving the required notice. Accordingly, the Motion is manifestly untimely and cannot go forward on May 7, 2024, and the proposed order should not be considered at the Omnibus Hearing.

3. **Second**, the Motion should be denied on the substance because the Movants' concerns are without basis and have already been addressed at length by the Post-Effective Date Debtors, both in previous hearings and in writing. The Post-Effective Date Debtors reiterate these explanations below.

4. The Movants' primary arguments are that they are receiving less cryptocurrency than they are entitled to,[3] that they are not being treated like other members of the same class (specifically, like Retail Borrowers who elected to repay their loans in January 2024),[4] that the refinancing process was never explained to the Movants and that they were not aware that the Post-Effective Date Debtors would have to purchase the cryptocurrency to be returned to Movants in the market,[5] and that the Post-Effective Date Debtors are benefiting from the market price appreciation of cryptocurrency that has occurred since the Effective Date.[6]

5. These claims largely mirror the arguments raised by other Retail Borrowers in the letters filed on March 19, 2024 [Docket No. 4716] and on March 31, 2024 [Docket No. 4766]. Indeed, Mr. Chernaik, Mr. Gheorghe, and Mr. Funck were signatories to those letters, and Mr. Funck spoke at the March 20, 2024 omnibus hearing on the same issues.[7] The Post-Effective

---

[3]    Motion ¶ 3.

[4]    *Id.* ¶ 2.

[5]    *Id.* ¶ 5.

[6]    *Id.* ¶¶ 6-9.

[7]    Mr. Funck's remarks at the March 20, 2024 hearing can be found on pages 55-56 of the March 20, 2024 Hr'g. Tr.

3

Date Debtors responded to these arguments in the *Post-Effective Date Debtors' Response to Distribution Issues Raised by Corporate Creditors and Retail Borrowers* [Docket No. 4786] (the "<u>Response</u>"), and incorporate them by reference herein.

6. The Movants' first argument that they are getting less cryptocurrency than they are entitled to is without basis because Retail Borrowers who elected to refinance are being treated in accordance with the Plan and are receiving precisely the amount of cryptocurrency that they are entitled to receive under the Plan.

7. As a reminder, the Plan provided two treatment options to borrowers: the Repayment Election and the Set Off Treatment.[8] Retail Borrowers who made the Repayment Election had two options to repay their loans: direct repayment by the borrower or through refinancing of the borrower's loan with a third-party lender. In exchange for repayment of a loan, whether through direct repayment or repayment through refinancing, the Plan provides that the borrower will receive an equivalent amount of BTC and ETH valued as of noon prevailing Eastern Time on the date of repayment.[9] Direct repayment was only available between January 21, 2024 and January 26, 2024—*i.e.*, at a time when the price of BTC and ETH was lower (as a result of which Retail Borrowers who repaid their loans at that time received more cryptocurrency in return than Retail Borrowers who refinanced later when BTC and ETH market prices were higher).

---

[8] *See* Plan, Art. III.B.2. Under the Set Off Treatment, the principal amount of the loan owed to the Debtors is set off or recouped against the applicable "Retail Borrower Deposit Claim," or the Petition Date value of the cryptocurrency transferred as collateral for the borrower's loan. The borrower retains the proceeds of its loan and has the associated Retail Borrower Deposit Claim reduced by the amount of the loan outstanding on the Petition Date. The remaining amount of the Retail Borrower Deposit Claim (i.e., the "Retail Borrower Post-Set Off Claim") receives the Unsecured Claim Distribution Consideration (i.e., its pro rata portion of (1) Liquid Cryptocurrency, (2) MiningCo Common Stock, (3) Illiquid Recovery Rights, and (4) Litigation Proceeds) or Convenience Class Distribution, as applicable.

[9] *See* Plan, Art. I.A.214 ("'Retail Advance Obligation Repayment Amount' means an amount of BTC or ETH that is equivalent in value to the amount of the Retail Advance Obligations repaid by the applicable Retail Borrower pursuant to the Retail Advance Obligation Repayment Election, which BTC or ETH ***shall be valued as of the day that such repayment is made as of 12:00 p.m., prevailing Eastern Time***…")(emphasis added).

4

However, as the Post-Effective Date Debtors have explained repeatedly, the distribution model under the Plan does not—and cannot—account for all possible market movements. Fundamentally, all Retail Borrowers, whether they elected direct repayment or repayment through refinancing, are being treated in accordance with the plain language of the Plan.[10]

8.   The repayment provision referenced above—that a Retail Borrower who repays its loan (whether through direct repayment or through refinancing) will receive an equivalent amount of BTC and ETH valued as of noon prevailing Eastern Time on the date of repayment[11]—obviates the Movants' second argument that the refinancing process was not explained and that they were not aware that the Post-Effective Date Debtors would have to purchase cryptocurrency on the market. The Plan *always* provided that the amount of cryptocurrency to be returned to a Retail Borrower in exchange for repayment of the Retail Borrower's loan would depend on market prices at the time of repayment. Further, in the *Notice and Election Form for Repayment or Refinancing of Retail Borrower Deposit Claims* [Docket No. 4206] that the Debtors sent out before the Effective Date.[12] Accordingly, Retail Borrowers were aware that the refinancing process would take longer to complete than the direct Repayment Election or the Set Off Treatment—and would therefore be subject to the market for a longer time than the direct Repayment Election.

---

[10]   Moreover, as explained previously in the Response, Retail Borrowers who elected to refinance are only receiving less cryptocurrency than Retail Borrowers who repaid their loans directly with respect to their *excess collateral Claim*. Notably, the portion of a Retail Borrower's Claim that remains after application of a loan repayment amount, *i.e.*, the set-off amount, was calculated using January 16, 2024 cryptocurrency prices. Accordingly, Retail Borrowers are being treated exactly the same as all Earn creditors with respect to that portion of their Claim.

[11]   *See* Plan, Art. I.A.214 ("'Retail Advance Obligation Repayment Amount' means an amount of BTC or ETH that is equivalent in value to the amount of the Retail Advance Obligations repaid by the applicable Retail Borrower pursuant to the Retail Advance Obligation Repayment Election, which BTC or ETH shall be valued as of the day that such repayment is made as of 12:00 p.m., prevailing Eastern Time…").

[12]   The Debtors' notice stated that borrowers electing to refinance would receive further instructions about the refinancing process on or after the Effective Date.

5

9. Finally, though it is not entirely clear, the Movants appear to argue that the Post-Effective Date Debtors are benefiting from the market price appreciation of cryptocurrency.[13] As explained previously in the Response, the Confirmation Order approving the Plan set forth that the collateral Retail Borrowers transferred to Celsius belongs to the bankruptcy estate (as is the case for the cryptocurrency transferred to Celsius by Earn account holders). Accordingly, it is not appropriate for Retail Borrowers to think of the cryptocurrency underlying the loans they made as "their" collateral. Nonetheless, for the avoidance of doubt, the Debtors did not "retain" the cryptocurrency that served as collateral for loans (because they did not know how many Retail Borrowers would actually refinance their loans and, in any event, the Plan provided for a market purchase of cryptocurrency in the event of repayment, as discussed above). More to the point, the Debtors are not benefitting (and cannot benefit) from any increase in cryptocurrency prices. The Debtors have no business anymore, other than liquidating their assets and distributing the proceeds to creditors in accordance with the Plan. ***The Debtors do not benefit from increases in cryptocurrency prices; all creditors receive the benefit through the increase in value available for subsequent distributions***.

10. For the reasons set forth above, the Motion should be denied.

---

[13] The Movants appear to imply without any evidence that the Post-Effective Date Debtors have not been honest about what they did with the Estates' cryptocurrency. *See* Motion ¶¶ 6-8 ("…the fact that Debtor did, in fact, retain their cryptocurrency means that Debtor had a rapidly appreciating asset… If what Mr. Koenig represented to the Court is true, and Movants are desirous of discovery to determine the truth, then Debtor was fully aware of exactly how many Retail Borrowers would be refinancing as of the end of the option period and could easily have determined how much cryptocurrency would be needed to use as collateral for the third-party loans. There would have been no need to 'go into the market' to purchase new cryptocurrency… If what Mr. Koenig represented to the Court is true, and Debtors were aware of Creditor's elections, why would they have not withheld sufficient reserves to settle these claims, and wouldn't Debtors and Plan Administrators have had a fiduciary duty to protect the assets and interests of the Creditors?"). But, as emphasized herein, Movants misunderstand the provisions of the Plan, as explained further in the Response.

| | |
|---|---|
| New York, New York<br>Dated: May 6, 2024 | */s/ Joshua A. Sussberg*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C.<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:    (212) 446-4800<br>Facsimile:    (212) 446-4900<br>Email:         joshua.sussberg@kirkland.com<br><br> - and -<br><br>Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)<br>Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)<br>Christopher S. Koenig<br>Dan Latona (admitted *pro hac vice*)<br>333 West Wolf Point Plaza<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:         patrick.nash@kirkland.com<br>               ross.kwasteniet@kirkland.com<br>               chris.koenig@kirkland.com<br>               dan.latona@kirkland.com<br><br>*Counsel to the Post-Effective Date Debtors* |