| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Christopher S. Koenig |
| 601 Lexington Avenue | Dan Latona (admitted *pro hac vice*) |
| New York, New York 10022 | **KIRKLAND & ELLIS LLP** |
| Telephone:    (212) 446-4800 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile:    (212) 446-4900 | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| | Telephone:    (312) 862-2000 |
| | Facsimile:    (312) 862-2200 |

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF JEREMY TILSNER IN SUPPORT OF**
**THE POST-EFFECTIVE DATE DEBTORS' OMNIBUS**
**OBJECTION TO THE FALLER CREDITORS' (I) MOTION**
**SEEKING ENTRY OF AN ORDER APPROVING FURTHER**
**DISTRIBUTION UNDER THE PLAN OF REORGANIZATION**
**FOR THE FALLER CREDITORS AND (II) MOTION FOR DISCOVERY**
**TO SUPPORT CLAIMS MADE BY POST-EFFECTIVE DATE DEBTORS**
**IN REGARDS TO EQUITABLE TREATMENT OF CORPORATE CREDITORS**

I, Jeremy Tilsner, hereby declare under penalty of perjury, as follows:

1. I am a Managing Director with Alvarez & Marsal Disputes and Investigations, LLC (together with its affiliates and independent contractors and also with employees of its professional service provider affiliates, all of which are wholly-owned by its parent company and

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

employees, "A&M"), a restructuring advisory services firm with numerous offices throughout the country. I submit this Declaration in support of the *Debtors' Omnibus Objection to the Faller Creditors' (I) Motion Seeking Entry of an Order Approving Further Distribution Under the Plan of Reorganization for the Faller Creditors and (II) Motion for Discovery to Support Claims Made by Post-Effective Date Debtors in Regards to Equitable Treatment of Corporate Creditors* (the "Objection"),[2] filed contemporaneously herewith.

2.  Unless otherwise indicated, the statements set forth in this Declaration are based upon (a) my personal knowledge of the distribution process in these chapter 11 cases, (b) information learned from my review of relevant documents, (c) information I received from the A&M team working under my supervision or the Plan Administrator and other advisors, or (d) my experience in similar matters. Although A&M is being compensated for its work as financial advisors to the Post-Effective Date Debtors, including its work facilitating the distribution process, I am not being compensated separately for this Declaration or testimony. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

### Qualifications

3.  Since 1983, A&M has been a global provider of turnaround advisory services to companies in crisis or those in need of performance improvement in specific financial and operational areas. A&M's debtor advisory services have encompassed a wide range of activities targeted at stabilizing and improving a company's financial position, including developing and validating forecasts and business plans; monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; designing and negotiating

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection, Distribution Motion, or the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (as may be further modified, amended, or supplemented from time to time) (the "Plan"), as applicable.

2

financial restructuring packages; facilitating the claims reconciliation process; and assisting with the claims distribution process.

4. Since the Debtors engaged A&M in June of 2022, I have worked closely with the Debtors' management and other professionals with respect to the Debtors' restructuring efforts, including assisting the Debtors in preparing budgets (including the Plan Administrator Budget and now the Wind-Down Budget), and other financial information. Further, since the Effective Date, I have worked closely with the Post-Effective Date Debtors, the Plan Administrator, and their advisors regarding the distribution process in these chapter 11 cases. I lead the A&M team advising the Post-Effective Date Debtors in matters concerning the calculation of distributions and other aspects of the distributions process.

5. I have over fifteen years of experience advising distressed companies and companies that are engaged in litigation or other disputes. I have substantial experience applying the latest in data science and forensic technologies to perform analyses in a wide variety of legal and regulatory situations, including investigations, litigation, regulator inquiries, bankruptcies, and government-mandated monitorships. I have advised clients in major bankruptcy cases, including *In re Katerra Inc.*, No. 21-31861 (DRJ); *In re Whiting Petroleum Corp.*, No. 20-32021 (DRJ); *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (JMP). I received my bachelor's degree in electrical engineering from Washington University in St. Louis.

**Preparation for Distributions**

6. I am familiar with the Debtors' Plan and distribution process, particularly the steps the Debtors took in advance of the Plan Effective date in preparation to implement the Plan. It is my understanding that though the Debtors negotiated with numerous potential Distribution Agents regarding facilitating Liquid Cryptocurrency distributions to the Debtors'

3

corporate creditors, only Coinbase both (i) met the regulatory, security, or financial standards requirements to make distributions under the Plan and (ii) agreed to service corporate creditors. Further, Coinbase agreed to act as Distribution Agent for only 100 corporate creditors.

7. Prior to the Effective Date, the Debtors converted Cryptocurrency to Cash based on January 16, 2024 cryptocurrency prices to ensure they would have sufficient Liquid Cryptocurrency and Cash to facilitate distributions to creditors in light of the volatility of cryptocurrency prices and as provided for under the Plan. The Debtors determined how much Cash and Liquid Cryptocurrency to reserve for distributions based on the Distribution Valuation Table and which creditors were scheduled to receive Cash versus Liquid Cryptocurrency. The Debtors completed all conversions prior to the Effective Date.

**The Distribution Motion**

8. It is my understanding that the Faller Creditors, who elected to receive Cash on account of their Claims, filed the Distribution Motion seeking an additional distribution of $350,595.02 due to an alleged delay in their receiving their initial distribution under the Plan.

9. On or around February 22, 2024, BFaller RD LLC received an initial distribution of $414,733.89. BFaller RD LLC was among the first 28 creditors to receive a fiat distribution. It is my understanding that SFaller RD LLC, SFaller TRD RD LLC, and BFaller Roth RD LLC initially submitted wire information that was not sufficient for the Post-Effective Date Debtors to successful send a wire. When the issue was discovered, SFaller RD LLC, SFaller TRD RD LLC, and BFaller Roth RD LLC were contacted to resubmit their wire transfer information. On April 22, twelve days after the remaining Faller Creditors submitted revised wire information, SFaller RD LLC, SFaller TRD RD LLC, and BFaller Roth RD LLC, received their initial

4

distributions of $68,097.59, $83,463.83, and $68,042.64, respectively. The Faller Creditors are not currently eligible for any additional distributions.

10. During the distribution process, the Post-Effective Date Debtors have experienced major disruptions that they could not have predicted, including that the financial condition of their banking partner, an essential component of facilitating Cash distributions under the Plan, became precarious shortly after the Effective Date. It is my understanding that the process of transitioning to a new banking partner delayed the Cash distribution process by several weeks. Despite these hurdles, the Post-Effective Date Debtors have distributed close to 90% of the value currently eligible for distribution under the Plan. Based on the foregoing as well as the novelty of the distributions being made under the Plan and the complexity of the distribution process, I believe that the time it has taken to make distributions to creditors, including the Faller Creditors, is reasonable under the circumstances.

11. Based on my review of the Distribution Motion, I understand that the Faller Creditors calculated the amount of the requested additional distribution by reference to the price of bitcoin and ether on the date they received their initial distributions. Based on my understanding of how the Faller Creditors calculated the amount of their requested additional distribution, I believe all corporate creditors initially scheduled to receive Cash on account of their Claims would be entitled to approximately $52 million in the aggregate in additional distributions if the relief requested in the Distribution Motion is granted.[3] Further, utilizing the

---

[3] For creditors to whom the Post-Effective Date Debtors have already attempted distribution, additional amounts were calculated based on the difference between Liquid Cryptocurrency prices on January 16, 2024 and Liquid Cryptocurrency prices on the date on which a distribution was initially attempted. For creditors to whom the Post-Effective Date Debtors have not yet attempted distributions, additional amounts are calculated based on the difference between Liquid Cryptocurrency prices on January 16, 2024 and Liquid Cryptocurrency prices on June 18, 2024. Because of volatility in cryptocurrency prices, the aggregate amount of additional distributions to creditors whose distributions have not yet been attempted is subject to variation based on when such creditors' initial distributions ultimately take place and could increase substantially if cryptocurrency prices continue to rise.

5

same approach, all creditors receiving Cash distributions under the Plan would be entitled to an additional $29 million in the aggregate, on top of the additional $52 million corporate creditors may be entitled to, if the relief requested in the Distribution Motion is granted.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  June 20, 2024

/s/ *Jeremy Tilsner*
Jeremy Tilsner
Managing Director
Alvarez and Marsal, LLC