**WHITE & CASE LLP**
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: sam.hershey@whitecase.com
        jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.com
        laura.baccash@whitecase.com

*Counsel to Blockchain Recovery Investment Consortium, LLC, Litigation Administrator and Complex Asset Recovery Manager, as Representative for the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| CELSIUS NETWORK LLC, *et al.*, | § | Case No. 22-10964 (MG) |
| | § | |
| Post-Effective Date Debtors.[1] | § | (Jointly Administered) |
| | § | |

---

[1]    The Post-Effective Date Debtors in these chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' address in these Chapter 11 Cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

| | | |
|---|---|---|
| CELSIUS NETWORK LLC, *et al.*, | § | |
| | § | |
| Post-Effective Date Debtors, | § | Adv. Proc. No. ___ |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| NASCENT LP, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## **COMPLAINT**

The above-captioned Post-Effective Date Debtors (collectively, the "**Plaintiff**" or the "**Post-Effective Date Debtors**"), acting by and through their representative, the Blockchain Recovery Investment Consortium, LLC, Litigation Administrator and Complex Asset Recovery Manager ("**Litigation Administrator ARM**"), through the undersigned counsel to the Litigation Administrator ARM, hereby submit this complaint (the "**Complaint**") to avoid and recover transfers made by Celsius Network LLC and its Debtor affiliates (collectively, the "**Debtors**" and, together with their non-Debtor affiliates, "**Celsius**" or the "**Company**") to or for the benefit of the above-captioned defendant (the "**Defendant**"), and allege the following facts and claims based upon information and belief, reasonable due diligence regarding the facts and circumstances of the Debtors' bankruptcy cases, Plaintiff's ongoing investigation, and the documents and information currently available to Plaintiff as to all other matters:

## **PRELIMINARY STATEMENT**

1.      In the months leading up to the Debtors' bankruptcy filings, on July 13, 2022 (the "**Petition Date**"), billions of dollars in cash and cryptocurrency were transferred off the Celsius platform, severely depleting the estate that was left to compensate the victims of the Company's fraud.  Hundreds of these improper pre-petition transfers went to participants in the Debtors'

2

institutional lending program (the "**Institutional Lending Program**"), which was managed by Celsius employees in the United States and administered through Celsius Network Limited ("**CNL**"). Through the Institutional Lending Program Celsius lent cryptocurrency to institutional clients such as hedge funds and market-makers on both a secured and unsecured basis. Participants in the Institutional Lending Program were among the primary beneficiaries of Celsius's pre-petition transfers. Indeed, following the pause on withdrawals that Celsius implemented on June 12, 2022, some institutional borrowers were permitted to continue transacting with Celsius despite all other members of the Celsius community being denied access to their accounts and collateral. The pause was a matter of public record, and these preferred clients of Celsius must have known that they were receiving special treatment.

2.      The Bankruptcy Code provides a mechanism to correct this inequity. The Litigation Administrator ARM brings this action on behalf of the Post-Effective Date Debtors to avoid and recover preferential transfers of property from the Debtors to Defendant, who was a participant in the Institutional Lending Program, prior to the Petition Date. Through these targeted efforts, the Plaintiff will level the disproportionate impact of the Debtors' bankruptcy, correct any unfairness or inequity resulting from the Institutional Lending Program, and increase the amount of resources available for distribution to creditors.

3.      To that end, and through this Complaint, Plaintiff seeks to avoid and recover the preferential transfers that Defendant received as an initial transferee.

## NATURE OF THE ACTION

4.      Plaintiff brings this adversary proceeding (the "**Adversary Proceeding**") pursuant to sections 502, 547, and 550 of title 11 of the United States Code (the "**Bankruptcy Code**"), seeking to avoid and recover from Defendant, or from any other person or entity for whose benefit

the transfers were made, transfers of property of the Debtors during the 90-day period (the "**Transfer Period**") before the commencement of the Chapter 11 Cases.

5.      Plaintiff seeks entry of a judgment against Defendant: (i) avoiding, pursuant to section 547(b) of the Bankruptcy Code, preferential transfers to and/or for the benefit of Defendant; (ii) directing, pursuant to section 550(a) of the Bankruptcy Code, Defendant to return the transferred assets or to pay to Plaintiff an amount to be determined at trial that is not less than the value of the Avoidable Transfers (defined below), plus interest and costs; and (iii) pending such payment, disallowing, pursuant to section 502 of the Bankruptcy Code, any claim of Defendant against the Debtors.

6.      Through its ongoing investigation, Plaintiff has determined, based on currently available information, that the transfers set forth on **Exhibit A** (the "**Avoidable Transfers**") with a value totaling no less than approximately $19,751,947.92[2] were made by the Debtors to or for the benefit of Defendant and are avoidable under section 547 of the Bankruptcy Code. Accordingly, the Avoidable Transfers are each recoverable under section 550 of the Bankruptcy Code.

7.      During the course of this Adversary Proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Transfer Period or following the Petition Date that are avoidable and recoverable under sections 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code. Plaintiff intends to avoid and recover all such transfers made to or for the benefit of Defendant or any other transferee during the Transfer Period. Plaintiff reserves the right to amend this Complaint to include, without limitation: (i) further information

---

[2]    To provide a sense of the dollar value for the actions, the Litigation Administrator ARM has provided the market value of the various assets as of June 14, 2024, in USD.  In doing so, Plaintiff does not waive, and expressly reserves, any and all arguments with respect to the proper valuation date of the Avoidable Transfers and/or the form of recovery on any judgments.

regarding the Avoidable Transfers; (ii) additional transfers made during the Transfer Period; (iii) additional unauthorized postpetition transfers or setoffs; (iv) additional plaintiffs; (v) modifications of and/or revisions to Defendant's name and other information; (vi) additional defendants; and (vii) additional causes of action, if applicable (collectively, the "**Amendments**"), that may become known at any time during this Adversary Proceeding, through formal discovery or otherwise, and intends for any such Amendments to relate back to this Complaint. The Amendments may include, but are not limited to, certain causes of action related to breach of contract by the Defendants which the Litigation Administrator ARM is investigating and reserves the right to bring on behalf of the Post-Effective Date Debtors here or in any other appropriate forum or proceeding.[3]

8.      To the extent that any Defendant has filed a proof of claim in the Chapter 11 Cases, is listed on the Debtors' schedules, or has otherwise requested payment from the Debtors' Estates (collectively, the "**Claims**"), this Complaint is not intended to be, nor should it be construed as, a waiver of Plaintiff's right to object to such Claims for any reason including, but not limited to, section 502 of the Bankruptcy Code, and such rights are expressly reserved.

## THE PARTIES

9.      The Plaintiff brings this action pursuant to the *Findings of Fact, Conclusions of Law, and Order Signed on November 9, 2023 Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor Affiliates* (the "**Confirmation Order**") [Docket No. 3972],[4] the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor*

---

[3]     Plaintiff intends to bring any causes of action related to breach of contract by the Defendant prior to the applicable statute of limitations.

[4]     "Docket No." refers to the docket of *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. July 13, 2022). Documents filed on this docket can be accessed free of charge at https://cases.stretto.com/celsius/.

*Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"), the *Litigation Administrator and Complex Asset Recovery Manager Agreement* attached as <u>Exhibit C</u> to the *Eleventh Notice of Filing of Plan Supplement* [Docket No. 4297] (the "**Litigation Administrator ARM Agreement**"), and section 1123 of the Bankruptcy Code. Pursuant to the Plan, Confirmation Order, and the Litigation Administrator ARM Agreement, the Litigation Administrator ARM has the capacity to administer the ARM Claims,[5] including these causes of action, on behalf of the Post-Effective Date Debtors for the benefit of the Debtors' estates (the "**Estates**"). The Post-Effective Date Debtors are: Celsius Network LLC; Celsius KeyFi LLC; Celsius Lending LLC; Celsius Mining LLC; Celsius Network, Inc.; Celsius Network Limited; Celsius Networks Lending LLC; Celsius US Holding LLC; GK8 Ltd; GK8 UK Limited; and GK8 USA LLC.

10.    Defendant is incorporated in, and is a citizen of, Quebec, Canada.

## <u>JURISDICTION AND VENUE</u>

11.    The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference, No. M-431, of the United States District Court for the Southern District of New York, dated January 31, 2012.

12.    The Adversary Proceeding is commenced pursuant to sections 502, 547, and 550 of the Bankruptcy Code, and rules 3007, 6009 and 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

13.    The Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157. This Court has jurisdiction to hear and to determine this proceeding and to enter a final order and

---

[5]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and/or Litigation Administrator ARM Agreement, as applicable.

judgment.  In the event that this Court or any other court finds any part of the Adversary Proceeding to be "non-core," this Court has non-core concurrent jurisdiction over this proceeding under 28 U.S.C. § 1334 because the relief sought herein relates to the Chapter 11 Cases and will have a material impact on the administration of the Estates.

14.    Plaintiff consents to entry of final orders and judgments by this Court in this Adversary Proceeding pursuant to Bankruptcy Rule 7008.  Plaintiff also consents to entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

15.    This Court has jurisdiction over Defendant in as much as Defendant has maintained minimum contacts with the United States in connection with the claims asserted in this Complaint. This Court also has jurisdiction over Defendant pursuant to Bankruptcy Rules 7004(d) and (f) and New York Civil Practice Law & Rules § 302 (McKinney 2008) because Defendant purposefully availed itself of the laws of the United States by, among other things, doing or transacting business in the United States which gives rise and/or relates to the claims at issue in this Adversary Proceeding.  Defendant's actions were directed at, and had the intended effect of, causing injury to persons located in the United States.  To the extent Defendant has also filed a proof of claim in these Chapter 11 Cases and is therefore subject to the Court's jurisdiction, Defendant's claim, if any, is hereby incorporated by reference.

16.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this Adversary Proceeding arises under and is related to the Debtors' Chapter 11 Cases pending in this Court.

## FACTUAL BACKGROUND

### A.    The Celsius Business Model and Reliance on Institutional Loans to Operate

17.    Through CNL, Celsius lent assets to institutional clients such as hedge funds and market-makers as part of the Institutional Lending Program.  Unlike retail lending, institutional

loans were mainly in the form of U.S. Dollars or stablecoins, and sometimes in cryptocurrency. The terms and conditions of institutional loans were based on master loan agreements and term sheets that set forth the detailed terms of any specific transaction. The Company provided institutional borrowers with either secured or unsecured loans. On occasion, Celsius would also enter into agreements with institutional clients to borrow fiat currency or stablecoins on a secured or unsecured basis. The Institutional Lending Program was managed by Celsius employees based in the United States, and much of the day-to-day business with the Defendant was carried out on group chats in which the Head of Institutional Lending and other U.S.-based employees were participants. The settlement of institutional loan transactions often occurred through the Company's U.S.-based "middle office."

18.     As of July 13, 2022, CNL had approximately twenty institutional borrowers with approximately $126 million of aggregate outstanding performing loans, and the Company held digital assets with a market value of approximately $77 million to support such loans. As of May 26, 2023, the Debtors had approximately 15 institutional borrowers with approximately $133 million of aggregate outstanding obligations supported by approximately $23 million in digital assets.

## B.     Celsius Faces Heavy Losses and Public Regulatory Scrutiny, Leading to the Pause

19.     Beginning in 2021 through the Petition Date, Celsius faced increasing regulatory pressure from the United Kingdom and United States' governments. Among other things, on September 17, 2021, the New Jersey Bureau of Securities ordered Celsius to cease and desist from offering Earn Accounts to certain investors in the United States (the "**New Jersey Order**").[6]

---

[6]     State of New Jersey Bureau of Securities, *Summary Cease and Desist Order in the Matter of Celsius Network, LLC* (Sept. 17, 2021), https://www.nj.gov/oag/newsreleases21/Celsius-Order-9.17.21.pdf.

Around the same time, several other state regulatory agencies, including those in Vermont, California, and New York, took action against Celsius.

20.    On June 23, 2021, in response to adverse regulatory action in the U.K., Celsius announced, that it was migrating its main business activity and headquarters from the United Kingdom to the United States and where applicable, to several other jurisdictions.

21.    On April 15, 2022, the New Jersey Order became effective, forcing Celsius to publicly admit to the regulatory issues that had been plaguing it for over a year.  Following this announcement, the Company began to experience significant outflows of assets from its platform. The amount of digital assets transferred off the Celsius platform increased by 67%,[7] and the corresponding transaction volume increased by 137%, from the period of April 15, 2022 to May 15, 2022, as compared to the period of March 15, 2022 to April 15, 2022.

22.    While Celsius was already insolvent at least as of March 2022, the situation at the Company was about to become even more untenable.  On May 7, 2022, what started as a spike in migration of assets off Celsius's platform turned into an explosion.  The cryptocurrency token, TerraUSD ("**UST**"), suffered a significant loss of value that sent shockwaves through the entire cryptocurrency market.  The UST token was a stablecoin whose value was pegged to USD through an algorithm and use of another cryptocurrency called "Luna."  The UST coin value "de-pegged" and plummeted (the **"Terra Luna Collapse"**).[8]

---

[7]    The amount of digital assets transferred off the Celsius platform during these periods was calculated using the approximate value of the transferred assets in USD as of the date of the transfer and not as of June 14, 2024.

[8]    The Terra Luna Collapse and other events discussed herein are described in further detail in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (the "**Disclosure Statement**").  *See, e.g.*, Disclosure Statement at 587.

23.     In the face of the Terra Luna Collapse, rumors swirled around Celsius and its stability.  Customers withdrew billions of dollars' worth of cryptocurrency assets from the Celsius platform the week after the Terra Luna Collapse.

24.     Internally, Celsius faced a liquidity crisis.  It had billions of dollars invested in illiquid investments but insufficient assets to address customer withdrawal requests.  Celsius also had more than one billion dollars in loans that were collateralized by cryptocurrency that was dramatically decreasing in value and required additional collateral to survive margin calls.  By May 16, 2022, Celsius's liquidity had dropped by 40% due to customer withdrawals and steep price declines in BTC and ETH.

25.     Many customers began rapidly withdrawing all or some of their assets, demanding crypto assets that Celsius lacked liquidity to provide.  Many other players in the crypto markets were also collapsing under the same pressures, with crypto hedge fund Three Arrows Capital, Ltd. and crypto brokerage company Voyager Digital Holdings, Inc. filing for chapter 11 bankruptcy shortly before the Debtors, on July 1, 2022, and July 5, 2022, respectively.[9]

26.     On June 12, 2022, in response to customer withdrawal demands and increasing volatility in the cryptocurrency markets, Celsius paused all withdrawals from its platform to prevent further erosion of value (the "**Pause**").  Hundreds of thousands of customers who still had assets on Celsius's platform were left without recourse, unable to withdraw or sell their coins.  The Pause also extended to institutional borrowers, leading some to take action detrimental to the estate, while others were permitted to continue transacting with Celsius and close out their loan books as Celsius hurtled toward bankruptcy.

---

[9]     *See In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y, filed July 1, 2022); *In re Voyager Digital Holdings, Inc., et al.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y, filed July 5, 2022).

C.    **The Chapter 11 Cases**

27.    On the Petition Date, the Debtors, other than GK8 Ltd, GK8 UK Limited, and GK8 USA LLC (collectively, the "**GK8 Debtors**"), filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code.  On December 7, 2022, the GK8 Debtors filed voluntary petitions in this Court under chapter 11 of the Bankruptcy Code.  All of these Chapter 11 Cases were consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).[10]

28.    On July 27, 2022, the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.[11]  On September 29, 2022, the Court entered an order directing the appointment of an examiner.[12]  Following the examiner's issuance of a final report of her examination, on April 4, 2023, the Court entered an order discharging the examiner.[13]

29.    On November 9, 2023, the Court entered the Confirmation Order, pursuant to which the Court approved and confirmed the Plan (as amended, supplemented, or modified from time to time) for all of the Debtors.

30.    On January 31, 2024, the Plan became effective.[14]  As part of the Plan, the Litigation Administrator ARM was appointed to prosecute, settle, or otherwise resolve any claims belonging to the Estates**,** to serve as the Estates' representative in certain litigation, and to monetize

---

[10]    *See Order Directing (I) Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 53]; *Order Directing (I) Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 1648].

[11]    *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 241].

[12]    *See Order Approving the Appointment of Chapter 11 Examiner* [Docket No. 923].

[13]    *See Order Discharging Examiner* [Docket No. 2364].

[14]    *See Notice of Occurrence of Effective Date of Debtors' Modified Chapter 11 Plan of Reorganization and Commencement of Distributions* [Docket No. 4298].

the Debtors' illiquid assets.[15]    The Litigation Administrator ARM is charged to maximize
distributions to the stakeholders, including victims of Celsius's collapse.

> ### D.    The Master Loan Agreement and the Loan Term Sheets

31.    Celsius Network Limited, as Lender, and Defendant Nascent LP, as Borrower,
entered into a Master Loan Agreement ("**MLA**"), dated as of August 26, 2021, attached hereto as
**Exhibit B**, pursuant to which Celsius would lend certain digital assets or fiat currency to Defendant
from time to time as set forth in the term sheets attached hereto as **Exhibit C** (the "**Loan Term
Sheets**"), each subject to the terms and conditions of the MLA.[16]    The MLA permitted the
Defendant to obtain loans from Celsius on an "Open Deal" basis (*i.e.*, a loan with no designated
maturity date payable by the Borrower or callable by the Lender at any time) or on a "Term Deal"
basis (*i.e.*, a loan required to be repaid on a fixed maturity date).    To compensate Celsius for
providing Defendant with access to digital assets or fiat currency, Defendant was required to pay
to Celsius Borrow Fees in the same type of digital asset or fiat currency that comprised the Loan
Amount.

32.    As a condition of each loan, Defendant was required to transfer an agreed upon
amount and type of digital assets or fiat currency to Celsius as set forth in the applicable Loan
Term Sheet (the "**Credit Support Assets**").    Celsius had the right to use or dispose of the Credit
Support Assets in its sole discretion.    The parties agreed that the proportional value in U.S. dollars
of the loan amount to the Credit Support Assets would be maintained within certain parameters
during the term of the loan.    If the proportional U.S. dollar value of the Credit Support Assets to
the loan amount rose above or fell below the agreed parameters, either Celsius or Defendant, as

---

[15]    *See* Plan, Art. IV.L.

[16]    All capitalized terms not otherwise defined herein, shall have the meanings ascribed to them in the MLA.

applicable, would make a balancing transfer to bring the proportional value back to the initial level at the time of the Loan (a "**Balancing Transfer**").   When a borrower had multiple loans outstanding under a master loan agreement, Celsius would evaluate any obligation it had to make Balancing Transfers on a portfolio-wide basis, considering all the loans then outstanding under the applicable master loan agreement.   Upon the Borrower's redelivery of any Loan Amount, together with any accrued and outstanding Borrow Fees, the MLA obligated Celsius to transfer to the Borrower digital assets or fiat currency in the kind and amount of the outstanding Credit Support Assets, after taking into account any Balancing Transfers (a "**Closing Transfer**").

33.     From time to time, pursuant to the MLA, Celsius and Defendant entered into loans, including, without limitation, the loans designated in the Loan Term Sheets as Loan Nos. C2313, C2387, C2500, C2570, C2545, C2619, C2315-A.

### E.     The Avoidable Transfers

34.     During the Transfer Period, CNL and/or one or more of the Debtors transferred to Defendant Avoidable Transfer(s) in an aggregate gross amount valued at no less than approximately $19,751,947.92.  Details of each such Avoidable Transfer are set forth on **Exhibit A**.  These details include:

- a description of the transfer, including the suspected corresponding loan number where identifiable;[17]

- the type of asset (*e.g.*, BTC, ETH, USDC);

- the transaction date; and

- the transaction amount, which is the approximate value of the transferred asset in USD as of June 14, 2024.

---

[17] Celsius sought to match Avoidable Transfer to corresponding loan numbers where possible, however, such loan numbers are provided to assist in identifying the transfers only.  Celsius does not warrant that each of the loan numbers correspond to the Avoidable Transfers and will endeavor to confirm such information during the course of this Adversary Proceeding.

35.     Celsius is presumed to be insolvent under the Bankruptcy Code at the time of each of the Avoidable Transfers.

36.     Further, in April, May, and June of 2022, the value of Celsius liabilities far exceeded the value of its assets, rendering it insolvent under the Bankruptcy Code.

37.     In addition to being balance sheet insolvent, Celsius also was unable to pay its debts when they came due and did not have adequate capital to operate its business.  The liquid assets that Celsius held in April, May, and June of 2022 were only a fraction of the liquid assets necessary to operate the business, rendering it insolvent under the Bankruptcy Code on a cash flow and adequacy of capital basis.

**F.     The Litigation Administrator ARM's Due Diligence**

38.     After the creation of the Litigation Administrator ARM, Plaintiff undertook a detailed investigation of the Debtors' books and records to understand what possible Avoidable Transfers may have occurred.

39.     Plaintiff reviewed the Debtors' books and records and identified that Defendant potentially has new value in transfers or other transactions that would qualify as new value under section 547(c)(4) of the Bankruptcy Code.  However, the subsequent new value defense is an affirmative defense, for which Defendant bears the burden of proof under section 547(g) of the Bankruptcy Code.  Factors such as the appropriate valuation date of such new value may affect the ultimate net of new value amount, if any.  Accordingly, Defendant bears the burden of proof to establish it is entitled to this new value.  Further, the Plaintiff's diligence indicates that, even if Defendant were to carry its burden with respect to all potential new value defenses, there would remain net preference exposure to be recovered for the benefit of creditors.

40.     Plaintiff also reviewed the ordinary course of business defense, and asserts it is not applicable to the Avoidable Transfers.  The vast majority of the demands made by Defendant

during the Transfer Period were a response to the acute market volatility occurring after the Terra Luna Collapse and after Celsius's regulatory problems became notorious.  To the extent that Defendant asserts that any Avoidable Transfers were demands that were ordinary as compared to prior demands of Defendant, Plaintiff puts Defendant to its burden of proof to establish it is entitled to this defense.

41.    In accordance with section 547(b) of the Bankruptcy Code, Plaintiff has analyzed available information and asserts that the Avoidable Transfers are avoidable and recoverable pursuant to sections 547 and 550(a) of the Bankruptcy Code as set forth in **Exhibit A**.  Plaintiff reasonably believes all of the Avoidable Transfers are avoidable, subject to Defendant's known or reasonably knowable affirmative defenses under section 547(c) of the Bankruptcy Code, and Defendant's successful establishment of these defense(s) pursuant to section 547(g) of the Bankruptcy Code.

42.    Plaintiff seeks to avoid all of the transfers of an interest of the Debtors in any property made by the Debtors to Defendant during the Transfer Period.

### CAUSES OF ACTION

### COUNT ONE

### (Avoidance of Avoidable Transfers — 11 U.S.C § 547(b) — Defendant)

43.    Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

44.    During the 90 days prior to the Petition Date, the Debtors made the Avoidable Transfers to, and/or for the benefit of, Defendant in the asset type, approximate value, and transfer types set forth on **Exhibit A**, which is incorporated by reference herein.

45.    Defendant was a creditor of the Debtors within the meaning of section 101(1) of the Bankruptcy Code at the time of each Avoidable Transfer.

46.     According to the books and records of the Debtors, the Avoidable Transfers were made to, and/or for the benefit of, Defendant because each Avoidable Transfer either reduced or fully satisfied a debt or debts then owed by the Debtors to Defendant.

47.     The Avoidable Transfers were made for, or on account of, antecedent debts owed by the Debtors to Defendant with respect to which each such Avoidable Transfer relates.

48.     The Avoidable Transfers were made while the Debtors were insolvent.  As discussed, *supra*, upon information and belief each Avoidable Transfer during the Transfer Period was made while Debtors were insolvent within the meaning of sections 101(32) and 547(b)(3) of the Bankruptcy Code.  Notwithstanding the foregoing, Plaintiff is also entitled to the presumption of insolvency for each Avoidable Transfer made during the Transfer Period pursuant to section 547(f) of the Bankruptcy Code.

49.     Each of the Avoidable Transfers was made on account of a demand by Defendant, and as described above, was made outside the ordinary course of business.

50.     The Avoidable Transfers enabled Defendant to receive more than it would have received if (a) the Debtors' Chapter 11 Cases were a case under chapter 7 of the Bankruptcy Code, (b) the Avoidable Transfers had not been made, and (c) Defendant received payment of such debt(s) to the extent provided by the provisions of the Bankruptcy Code.

51.     By reason of the foregoing, each Avoidable Transfer should be avoided and set aside as a preferential transfer pursuant to section 547(b) of the Bankruptcy Code.

## COUNT TWO

### (Recovery of Avoidable Transfers — 11 U.S.C § 550 — Defendant)

52.     Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

53.     Plaintiff is entitled to avoid the Avoidable Transfers pursuant to section 547(b) of the Bankruptcy Code.

54.     Defendant was the initial transferee of the Avoidable Transfers, the immediate or mediate transferees of such initial transferee, or the person(s) for whose benefit the Avoidable Transfers were made.

55.     As of the date hereof, the Defendant has not repaid all or a part of the value of the Avoidable Transfers or returned the Avoidable Transfers.

56.     Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant, for the benefit of the Estates, the property transferred in the Avoidable Transfers or the value of such transferred property, plus interest thereon to the date of payment and the costs of this action.

## COUNT THREE

### (Disallowance of Defendant's Claims — 11 U.S.C. § 502(d) — Defendant)

57.     Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

58.     As alleged above, Defendant is the initial, immediate and/or mediate transferees of transfers avoidable under section 547 of the Bankruptcy Code and the persons from whom property is recoverable under section 550 of the Bankruptcy Code.

59.     As of the date hereof, the Defendant has not repaid all or a part of the value of the Avoidable Transfers or returned the Avoidable Transfers.

60.     By reason of the foregoing facts and pursuant to section 502(d) of the Bankruptcy Code, any Claims of Defendant that have been or may in the future be asserted in the Chapter 11 Cases should be disallowed unless and until Defendant relinquishes to Plaintiff the property

transferred or pays to Plaintiff the value of such transferred property, for which and to the extent

that the Court has determined Defendant is liable pursuant to section 550 of the Bankruptcy Code.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against the

Defendant as follows:

(a)    Pursuant to section 547(b) of the Bankruptcy Code, avoiding each of the Avoidable Transfers;

(b)    Pursuant to section 550(a) of the Bankruptcy Code, directing Defendant to relinquish to Plaintiff the property transferred in the Avoidable Transfers or pay to Plaintiff an amount to be determined at trial that is not less than the full amount of the Avoidable Transfers;

(c)    Disallowing any Claim of Defendant pursuant to section 502(d) of the Bankruptcy Code;

(d)    Awarding pre-judgment interest at the maximum legal rate running from the date of Plaintiff's first demand to Defendant to return all Avoidable Transfers to the date of judgment with respect to this Complaint (the "**Judgment**") herein;

(e)    Awarding post-judgment interest at the maximum legal rate running from the date of the Judgment until the date the Judgment is paid in full;

(f)    Awarding Plaintiff costs of suit incurred herein, including, without limitation, attorneys' fees, costs, and other expenses incurred in this action, to the fullest extent allowed by applicable law;

(g)    Requiring Defendant to pay forthwith the amount of the Judgment; and

(h)    Ordering such other and further relief as the Court may deem just and proper.

*[Remainder of page intentionally left blank.]*

Dated:  July 12, 2024
        New York, New York

/s/ Samuel P. Hershey
**WHITE & CASE LLP**
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  sam.hershey@whitecase.com
        jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  gregory.pesce@whitecase.com
        laura.baccash@whitecase.com

*Counsel to Blockchain Recovery Investment Consortium,*
*LLC, Litigation Administrator and Complex Asset*
*Recovery Manager, as Representative for the Post-*
*Effective Date Debtors*

**<u>Exhibit A</u>**

**Avoidable Transfers**

Defendant:         **NASCENT LP**
Bankruptcy Case:   **Celsius Network LLC, et al.**
Preference Period: **Apr 14, 2022 - Jul 13, 2022**

## Transfers During Preference Period

| Debtor Entity | Transaction Description | Outgoing Transfer | Coin | Transaction Date | Dollar Value (June 14, 2024) |
|---|---|---|---|---|---|
| Celsius Network Ltd | Closing Transfer (Loan #C2313) | 136.08 | WBTC | 4/27/2022 | $8,991,751.36 |
| Celsius Network Ltd | Closing Transfer (Multiple Loans) | 96.97 | WBTC | 5/2/2022 | $6,407,481.84 |
| Celsius Network Ltd | Closing Transfer (Loan #C2570) | 15.51 | WBTC | 5/11/2022 | $1,024,853.49 |
| Celsius Network Ltd | Closing Transfer (Loan #C2545) | 198.85 | ETH | 5/24/2022 | $692,051.69 |
| Celsius Network Ltd | Closing Transfer (Loan #C2619) | 27.42 | WBTC | 6/10/2022 | $1,811,829.97 |
| Celsius Network Ltd | Closing Transfer (Loan #C2315-A) | 12.47 | WBTC | 6/10/2022 | $823,979.57 |
| | | | | Total: | **$19,751,947.92** |

**<u>Exhibit B</u>**

**Master Loan Agreement**

**FILED UNDER SEAL**

## Exhibit C

**Loan Term Sheet**

**FILED UNDER SEAL**