**WHITE & CASE LLP**
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  sam.hershey@whitecase.com
          jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email:  kwofford@whitecase.com

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
Laura Baccash (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  gregory.pesce@whitecase.com
          laura.baccash@whitecase.com

*Counsel to Blockchain Recovery Investment Consortium, LLC, Litigation Administrator and Complex Asset Recovery Manager, as Representative for the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*, | § § | Case No. 22-10964 (MG) |
| Post-Effective Date Debtors.[1] | § § § | (Jointly Administered) |

---

[1]    The Post-Effective Date Debtors in these chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these Chapter 11 Cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

| | | | |
|---|---|---|---|
| CELSIUS NETWORK LLC, *et al.*, | § | | |
| | § | | |
| Post-Effective Date Debtors, | § | Adv. Proc. No. ___ | |
| | § | | |
| Plaintiff, | § | | |
| | § | | |
| v. | § | | |
| | § | | |
| TOWER BC LIMITED, | § | | |
| | § | | |
| Defendant. | § | | |

## COMPLAINT

The above-captioned Post-Effective Date Debtors (collectively, the "**Plaintiff**" or the "**Post-Effective Date Debtors**"), acting by and through their representative, the Blockchain Recovery Investment Consortium, LLC, Litigation Administrator and Complex Asset Recovery Manager (the "**Litigation Administrator ARM**"), through the undersigned counsel to the Litigation Administrator ARM, hereby submit this complaint (the "**Complaint**") to avoid and recover transfers made by Celsius Network LLC and its Debtor affiliates (collectively, the "**Debtors**," and, together with their non-Debtor affiliates, "**Celsius**" or the "**Company**") to or for the benefit of the above-captioned defendant (the "**Defendant**" or "**Tower**"), and allege the following facts and claims based upon information and belief, reasonable due diligence regarding the facts and circumstances of the Debtors' bankruptcy cases, Plaintiff's ongoing investigation, and the documents and information currently available to Plaintiff as to all other matters:

## PRELIMINARY STATEMENT

1.      In the months leading up to the Debtors' bankruptcy filings on July 13, 2022 (the "**Petition Date**"), billions of dollars in cash and cryptocurrency were transferred off the Celsius platform, severely depleting the estate that was left to compensate the victims of the Company's fraud.    Hundreds of these improper pre-petition transfers went to participants in the Debtors'

2

institutional lending program (the "**Institutional Lending Program**"), which was managed by Celsius employees in the United States and administered through Celsius Network Limited ("**CNL**"). Through the Institutional Lending Program Celsius lent cryptocurrency to institutional clients such as hedge funds and market-makers on both a secured and unsecured basis. Participants in the Institutional Lending Program were among the primary beneficiaries of Celsius's pre-petition transfers. Indeed, following the pause on withdrawals that Celsius implemented on June 12, 2022, some institutional borrowers were permitted to continue transacting with Celsius despite all other members of the Celsius community being denied access to their accounts and collateral. The pause was a matter of public record, and these preferred clients of Celsius must have known that they were receiving special treatment.

2.      The Bankruptcy Code provides a mechanism to correct this inequity. The Litigation Administrator ARM brings this action on behalf of the Post-Effective Date Debtors to avoid and recover fraudulent transfers of property from the Debtors to Defendant, who was a participant in the Institutional Lending Program, prior to the Petition Date. Through these targeted efforts, the Plaintiff will level the disproportionate impact of the Debtors' bankruptcy, correct any unfairness or inequity resulting from the Institutional Lending Program, and increase the amount of resources available for distribution to creditors.

3.      To that end, and through this Complaint, Plaintiff seeks to avoid and recover the fraudulent transfers that Defendant received as an initial transferee.

## NATURE OF THE ACTION

4.      Plaintiff brings this adversary proceeding (the "**Adversary Proceeding**") pursuant to sections 502, 548, and 550 of title 11 of the United States Code (the "**Bankruptcy Code**"), seeking to avoid and recover from Defendant, or from any other person or entity for whose benefit

the transfers were made, transfers of property of the Debtors during the two-year period (the "**Transfer Period**") before the commencement of the Chapter 11 Cases.

5.    Plaintiff seeks entry of a judgment against Defendant: (i) avoiding, pursuant to section 548(a) of the Bankruptcy Code, fraudulent transfers to and/or for the benefit of Defendant; (ii) directing, pursuant to section 550(a) of the Bankruptcy Code, Defendant to return the transferred assets or to pay to Plaintiff an amount to be determined at trial that is not less than the value of the Avoidable Transfers (defined below), plus interest and costs; and (iii) pending such payment, disallowing, pursuant to section 502 of the Bankruptcy Code, any claim of Defendant against the Debtors.

6.    Through its ongoing investigation, Plaintiff has determined, based on currently available information, that the transfers set forth on **Exhibit A** (the "**Avoidable Transfers**") with a value totaling no less than approximately $7,283,637.81[2] were made by the Debtors to or for the benefit of Defendant and are avoidable under section 548 of the Bankruptcy Code.  Accordingly, the Avoidable Transfers are each recoverable under section 550 of the Bankruptcy Code.

7.    During the course of this Adversary Proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Transfer Period or following the Petition Date that are avoidable and recoverable under sections 544, 547, 548, 549, 550, and 553 of the Bankruptcy Code.  Plaintiff intends to avoid and recover all such transfers made to or for the benefit of Defendant or any other transferee during the Transfer Period.  Plaintiff reserves the right to amend this Complaint to include, without limitation: (i) further information regarding the Avoidable Transfers; (ii) additional transfers made during the Transfer Period;

---

[2]    To provide a sense of the dollar value for the actions, the Litigation Administrator ARM has provided the market value of the various assets as of June 14, 2024, in USD.  In doing so, Plaintiff does not waive, and expressly reserves, any and all arguments with respect to the proper valuation date of the Avoidable Transfers and/or the form of recovery on any judgments.

(iii) additional plaintiffs; (iv) modifications of and/or revisions to Defendant's name and other information; (v) additional defendants; and (vi) additional causes of action, if applicable (collectively, the "**Amendments**"), that may become known at any time during this Adversary Proceeding, through formal discovery or otherwise, and intends for any such Amendments to relate back to this Complaint. The Amendments may include, but are not limited to, certain causes of action related to breach of contract by the Defendants which the Litigation Administrator ARM is investigating and reserves the right to bring on behalf of the Post-Effective Date Debtors here or in any other appropriate forum or proceeding.[3]

8.      To the extent that any Defendant has filed a proof of claim in the Chapter 11 Cases, is listed on the Debtors' schedules, or has otherwise requested payment from the Debtors' Estates (collectively, the "**Claims**"), this Complaint is not intended to be, nor should it be construed as, a waiver of Plaintiff's right to object to such Claims for any reason including, but not limited to, section 502 of the Bankruptcy Code, and such rights are expressly reserved.

## THE PARTIES

9.      The Plaintiff brings this action pursuant to the *Findings of Fact, Conclusions of Law, and Order Signed on November 9, 2023 Confirming the Modified Joint Chapter 11 Plan of Celsius Network LLC and Its Debtor Affiliates* (the "**Confirmation Order**") [Docket No. 3972],[4] the *Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Docket No. 4289] (the "**Plan**"), the *Litigation Administrator and Complex Asset Recovery Manager Agreement* attached as <u>Exhibit C</u> to the

---

[3]     Plaintiff intends to bring any causes of action related to breach of contract by the Defendant prior to the applicable statute of limitations.

[4]     "Docket No." refers to the docket of *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. July 13, 2022). Documents filed on this docket can be accessed free of charge at https://cases.stretto.com/celsius/.

*Eleventh Notice of Filing of Plan Supplement* [Docket No. 4297] (the "**Litigation Administrator ARM Agreement**"), and section 1123 of the Bankruptcy Code.  Pursuant to the Plan, Confirmation Order, and the Litigation Administrator ARM Agreement, the Litigation Administrator ARM has the capacity administer the ARM Claims,[5] including these causes of action, on behalf of the Post-Effective Date Debtors for the benefit of the Debtors' estates (the "**Estates**").  The Post-Effective Date Debtors are: Celsius Network LLC; Celsius KeyFi LLC; Celsius Lending LLC; Celsius Mining LLC; Celsius Network, Inc.; Celsius Network Limited; Celsius Networks Lending LLC; Celsius US Holding LLC; GK8 Ltd; GK8 UK Limited; and GK8 USA LLC.

10.    Defendant is a company established under the laws of England & Wales (Company No. 06994909), whose registered office is at 44 Upper Mulgrave Road Cheam Sutton Surrey SM2 7AJ England.

## JURISDICTION AND VENUE

11.    The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over the Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference, No. M-431, of the United States District Court for the Southern District of New York, dated January 31, 2012.

12.    The Adversary Proceeding is commenced pursuant to sections 502, 548, and 550 of the Bankruptcy Code, and rules 3007, 6009 and 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

13.    The Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157. This Court has jurisdiction to hear and to determine this proceeding and to enter a final order and

---

[5]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and/or Litigation Administrator ARM Agreement, as applicable.

judgment.  In the event that this Court or any other court finds any part of the Adversary Proceeding to be "non-core," this Court has non-core concurrent jurisdiction over this proceeding under 28 U.S.C. § 1334 because the relief sought herein relates to the Chapter 11 Cases and will have a material impact on the administration of the Estates.

14.    Plaintiff consents to entry of final orders and judgments by this Court in this Adversary Proceeding pursuant to Bankruptcy Rule 7008.  Plaintiff also consents to entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

15.    This Court has jurisdiction over Defendant in as much as Defendant has maintained minimum contacts with the United States in connection with the claims asserted in this Complaint. This Court also has jurisdiction over Defendant pursuant to Bankruptcy Rules 7004(d) and (f) and New York Civil Practice Law & Rules § 302 (McKinney 2008) because Defendant purposefully availed itself of the laws of the United States by, among other things, doing or transacting business in the United States which gives rise and/or relates to the claims at issue in this Adversary Proceeding.  Defendant's actions were directed at, and had the intended effect of, causing injury to persons located in the United States.  To the extent Defendant has also filed a proof of claim in these Chapter 11 Cases and is therefore subject to the Court's jurisdiction, Defendant's claim, if any, is hereby incorporated by reference.

16.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this Adversary Proceeding arises under and is related to the Debtors' Chapter 11 Cases pending in this Court.

## FACTUAL BACKGROUND

### A.    The Celsius Business Model and Reliance on Institutional Loans to Operate

17.    Through CNL, Celsius lent assets to institutional clients such as hedge funds and market-makers as part of the Institutional Lending Program.  Unlike retail lending, institutional

loans were mainly in the form of U.S. Dollars or stablecoins, and sometimes in cryptocurrency. The terms and conditions of institutional loans were based on master loan agreements and term sheets that set forth the detailed terms of any specific transaction. The Company provided institutional borrowers with either secured or unsecured loans. On occasion, Celsius would also enter into agreements with institutional clients to borrow fiat currency or stablecoins on a secured or unsecured basis.

18.    As of July 13, 2022, CNL had approximately twenty institutional borrowers with approximately $126 million of aggregate outstanding performing loans, and the Company held digital assets with a market value of approximately $77 million to support such loans. As of May 26, 2023, the Debtors had approximately 15 institutional borrowers with approximately $133 million of aggregate outstanding obligations supported by approximately $23 million in digital assets.

**B.    Celsius Faces Heavy Losses and Public Regulatory Scrutiny, Leading to the Pause**

19.    Beginning in 2021 through the Petition Date, Celsius faced increasing regulatory pressure from the United Kingdom and United States' governments. Among other things, on September 17, 2021, the New Jersey Bureau of Securities ordered Celsius to cease and desist from offering Earn Accounts to certain investors in the United States (the "**New Jersey Order**").[6] Around the same time, several other state regulatory agencies, including those in Vermont, California, and New York, took action against Celsius.

---

[6]    State of New Jersey Bureau of Securities, *Summary Cease and Desist Order in the Matter of Celsius Network, LLC* (Sept. 17, 2021), https://www.nj.gov/oag/newsreleases21/Celsius-Order-9.17.21.pdf.

20.     On June 23, 2021, in response to adverse regulatory action in the U.K., Celsius announced, that it was migrating its main business activity and headquarters from the United Kingdom to the United States and where applicable, to several other jurisdictions.

21.     On April 15, 2022, the New Jersey Order became effective, forcing Celsius to publicly admit to the regulatory issues that had been plaguing it for over a year.  Following this announcement, the Company began to experience significant outflows of assets from its platform. The amount of digital assets transferred off the Celsius platform increased by 67%,[7] and the corresponding transaction volume increased by 137%, from the period of April 15, 2022 to May 15, 2022, as compared to the period of March 15, 2022 to April 15, 2022.

22.     While Celsius was already insolvent at least as of March 2022, the situation at the Company was about to become even more untenable.  On May 7, 2022, what started as a spike in migration of assets off Celsius's platform turned into an explosion.  The cryptocurrency token, TerraUSD ("**UST**"), suffered a significant loss of value that sent shockwaves through the entire cryptocurrency market.  The UST token was a stablecoin whose value was pegged to USD through an algorithm and use of another cryptocurrency called "Luna."  The UST coin value "de-pegged" and plummeted (the **"Terra Luna Collapse"**).[8]

23.     In the face of the Terra Luna Collapse, rumors swirled around Celsius and its stability.  Customers withdrew billions of dollars' worth of cryptocurrency assets from the Celsius platform the week after the Terra Luna Collapse.

---

[7]     The amount of digital assets transferred off the Celsius platform during these periods was calculated using the approximate value of the transferred assets in USD as of the date of the transfer and not as of June 14, 2024.

[8]     The Terra Luna Collapse and other events discussed herein are described in further detail in the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (the "**Disclosure Statement**").  *See, e.g.*, Disclosure Statement at 587.

9

24.     Internally, Celsius faced a liquidity crisis.  It had billions of dollars invested in illiquid investments but insufficient assets to address customer withdrawal requests.  Celsius also had more than one billion dollars in loans that were collateralized by cryptocurrency that was dramatically decreasing in value and required additional collateral to survive margin calls.  By May 16, 2022, Celsius's liquidity had dropped by 40% due to customer withdrawals and steep price declines in BTC and ETH.

25.     Many customers began rapidly withdrawing all or some of their assets, demanding crypto assets that Celsius lacked liquidity to provide.  Many other players in the crypto markets were also collapsing under the same pressures, with crypto hedge fund Three Arrows Capital, Ltd. and crypto brokerage company Voyager Digital Holdings, Inc. filing for chapter 11 bankruptcy shortly before the Debtors, on July 1, 2022, and July 5, 2022, respectively.[9]

26.     On June 12, 2022, in response to customer withdrawal demands and increasing volatility in the cryptocurrency markets, Celsius paused all withdrawals from its platform to prevent further erosion of value (the "**Pause**").  Hundreds of thousands of customers who still had assets on Celsius's platform were left without recourse, unable to withdraw or sell their coins.  The Pause also extended to certain institutional borrowers, leading some to take action detrimental to the estate, while others were permitted to continue transacting with Celsius and close out their loan books as Celsius hurtled toward bankruptcy.

### C.    The Chapter 11 Cases

27.     On the Petition Date, the Debtors, other than GK8 Ltd, GK8 UK Limited, and GK8 USA LLC (collectively, the "**GK8 Debtors**"), filed voluntary petitions for relief in this Court under chapter 11 of the Bankruptcy Code.  On December 7, 2022, the GK8 Debtors filed voluntary

---

[9]     *See In re Three Arrows Capital, Ltd.*, Case No. 22-10920 (MG) (Bankr. S.D.N.Y, filed July 1, 2022); *In re Voyager Digital Holdings, Inc., et al.*, Case No. 22-10943 (MEW) (Bankr. S.D.N.Y, filed July 5, 2022).

petitions in this Court under chapter 11 of the Bankruptcy Code.  All of these Chapter 11 Cases were consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).[10]

28.    On July 27, 2022, the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.[11]  On September 29, 2022, the Court entered an order directing the appointment of an examiner.[12]  Following the examiner's issuance of a final report of her examination, on April 4, 2023, the Court entered an order discharging the examiner.[13]

29.    On November 9, 2023, the Court entered the Confirmation Order, pursuant to which the Court approved and confirmed the Plan (as amended, supplemented, or modified from time to time) for all of the Debtors.

30.    On January 31, 2024, the Plan became effective.[14]  As part of the Plan, the Litigation Administrator ARM was appointed to prosecute, settle, or otherwise resolve any claims belonging to the Estates**,** to serve as the Estates' representative in certain litigation, and to monetize the Debtors' illiquid assets.[15]  The Litigation Administrator ARM is charged to maximize distributions to the stakeholders, including victims of Celsius's collapse.

---

[10]    *See Order Directing (I) Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 53]; *Order Directing (I) Joint Administration of the Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 1648].

[11]    *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 241].

[12]    *See Order Approving the Appointment of Chapter 11 Examiner* [Docket No. 923].

[13]    *See Order Discharging Examiner* [Docket No. 2364].

[14]    *See Notice of Occurrence of Effective Date of Debtors' Modified Chapter 11 Plan of Reorganization and Commencement of Distributions* [Docket No. 4298].

[15]    *See* Plan, Art. IV.L.

### D.    The Master Loan Agreement and the Loan Term Sheets

31.    Celsius Network Limited, as Lender, and Defendant Tower BC Limited, as Borrower, entered into a Master Loan Agreement ("**MLA**), dated as of December 15, 2021, attached hereto as **Exhibit B**, pursuant to which Celsius would lend certain digital assets or fiat currency to Defendant from time to time as set forth in certain term sheets (the "**Loan Term Sheets**"), each subject to the terms and conditions of the MLA.[16]  The MLA permitted the Defendant to obtain loans from Celsius on an "Open Deal" basis (*i.e.*, a loan with no designated maturity date payable by the Borrower or callable by the Lender at any time) or on a "Term Deal" basis (*i.e.*, a loan required to be repaid on a fixed maturity date and not callable by the Lender). To compensate Celsius for providing Defendant with access to digital assets or fiat currency, Defendant was required to pay to Celsius borrow fees in the same type of digital asset or fiat currency that comprised the Loan Amount.

32.    As a condition of each loan, Tower was required to transfer an agreed upon amount and type of digital assets or fiat currency to Celsius as set forth in the applicable Loan Term Sheet (the "**Credit Support Assets**").  Celsius had the right to use or dispose of the Credit Support Assets in its sole discretion.  The parties agreed that the proportional value in U.S. dollars of the Loan Amount to the Credit Support Assets would be maintained within certain parameters during the term of the loan.  If the proportional U.S. dollar value of the Credit Support Assets to the Loan Amount rose above or fell below the agreed parameters, either Celsius or Defendant, as applicable, would make a balancing transfer to bring the proportional value back to the initial level at the time of the loan (a "**Balancing Transfer**").  When a borrower had multiple loans outstanding under a master loan agreement, Celsius would evaluate any obligation it had to make Balancing Transfers

---

[16]    All capitalized terms not otherwise defined herein, shall have the meanings ascribed to them in the MLA.

on a portfolio-wide basis, considering all the loans then outstanding under the applicable master loan agreement.  Upon the Borrower's redelivery of any Loan Amount, together with any accrued and outstanding Borrow Fees, the MLA obligated Celsius to transfer to the Borrower digital assets or fiat currency in the kind and amount of the outstanding Credit Support Assets, after taking into account any Balancing Transfers.

33.    Upon information and belief, Tower's business strategy involved running a levered portfolio, and it sought a lending relationship with Celsius to advance that strategy.  Following the execution of the MLA, Celsius and Tower entered into negotiations for the first loan.  The parties' negotiations over terms occurred over a period of weeks and included the participation of Defendant's U.S.-based Head of Institutional Trading and Chief Credit Officer.

34.    On March 7, 2022, Celsius and Tower entered into Loan #2470, pursuant to which Tower obtained a loan of 105.04 Bitcoin on a six-month term deal basis and provided Credit Support Assets at a 30% U.S. dollar valuation ratio (the "**Tower Loan**").  The Loan Term Sheet for Loan #2470 is attached hereto as **Exhibit C**.

35.    The Tower Loan matured on September 7, 2022 (the "**Maturity Date**").  Tower breached the MLA by failing to return the Loan Amount on the Maturity Date or thereafter.  On July 8, 2024, the Plaintiff gave notice of the default and made a demand for repayment of the Loan Amount that has not been honored as of the date of this Complaint.

### E.    The Avoidable Transfers

36.    Upon information and belief, Tower was insolvent at the time it entered the Tower Loan.  Based on the incurrence of the Loan and its levered trading strategy, Tower was engaged in a business or a transaction, or was about to engage in a business or transaction, for which its remaining property was an unreasonably small capital.  Accordingly, its promise under the MLA to redeliver the Loan Amount on the Maturity Date was worthless.  Tower's unaudited abridged

financial statements for the year ending December 31, 2022 – only filed on May 15, 2024 – confirm this conclusion. These statements attest that, as of that date, Tower had no cash and negative net current assets of £(347,222).[17]

37.    Accordingly, at the time of the Tower Loan, Celsius did not receive reasonably equivalent value for the transfer to Tower of the 105.04 BTC Loan Amount. The sole consideration Celsius received at the time of the Tower Loan was USDT Credit Support Assets valued at only 30% of the Loan Amount.

38.    The Debtors' financial position was further harmed by Tower's demand for a Balancing Transfer in respect of this worthless loan. Celsius's records show that Defendant secured the return of Credit Support Assets through a Balancing Transfer of USDT 350,007.92 on May 12, 2022 (the "**May Balancing Transfer**" and, together with the Tower Loan, the "**Avoidable Transfers**"). Under the terms of the MLA, Tower transferred the Credit Support Assets to Celsius on a full-title transfer basis, and Celsius became the legal and beneficial owner of those assets upon receipt. Accordingly, the May Balancing Transfer was a transfer of the Debtors' property.

39.    During the Transfer Period, CNL and/or one or more of the Debtors transferred to Defendant Avoidable Transfer(s) in an aggregate gross amount valued at no less than approximately $7,283,637.81.

40.    Celsius is presumed to be insolvent under the Bankruptcy Code at the time of each of the Avoidable Transfers. Further, in April, May, and June of 2022, the value of Celsius liabilities far exceeded the value of its assets, rendering it insolvent under the Bankruptcy Code.

---

[17]    These statements are available on the Companies House website at: https://find-and-update.company-information.service.gov.uk/company/06994909/filing-history. Tower was briefly stricken from the Companies House register, apparently for failure to file its 2022 abridged financial statements on a timely basis.

41.     In addition to being balance sheet insolvent, Celsius also was unable to pay its debts when they came due and did not have adequate capital to operate its business.  The liquid assets that Celsius held in April, May, and June of 2022 were only a fraction of the liquid assets necessary to operate the business, rendering it insolvent under the Bankruptcy Code on a cash flow and adequacy of capital basis.

## CAUSES OF ACTION

### COUNT ONE

**(Avoidance of Avoidable Transfers — 11 U.S.C § 548(a) — Defendant)**

42.     Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

43.     The Debtors made each of the Avoidable Transfers to, and/or for the benefit of, Defendant in the asset type, approximate value, and transfer types set forth on **Exhibit A**, which is incorporated by reference herein, on or within the two years prior to the Petition Date.

44.     Plaintiff received less than reasonably equivalent value from Defendant in exchange for the Avoidable Transfers.

45.     Celsius was insolvent on the dates of each of the Avoidable Transfers or became insolvent as a result of the Avoidable Transfers.

46.     By reason of the foregoing, each Avoidable Transfer should be avoided and set aside as a fraudulent transfer pursuant to section 548(a) of the Bankruptcy Code.

### COUNT TWO

**(Recovery of Avoidable Transfers — 11 U.S.C § 550 — Defendant)**

47.     Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

48.    Plaintiff is entitled to avoid the Avoidable Transfers pursuant to section 548(a) of the Bankruptcy Code.

49.    Defendant was the initial transferee of the Avoidable Transfers, the immediate or mediate transferees of such initial transferee, or the person(s) for whose benefit the Avoidable Transfers were made.

50.    As of the date hereof, the Defendant has not repaid all or a part of the value of the Avoidable Transfers.

51.    Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant, for the benefit of the Estates, the property transferred in the Avoidable Transfers, or the value of such transferred property, plus interest thereon to the date of payment and the costs of this action.

## COUNT THREE

### (Disallowance of Defendant's Claims — 11 U.S.C. § 502(d) — Defendant)

52.    Plaintiff repeats, reiterates and realleges each of the foregoing allegations of this Complaint as if fully set forth herein.

53.    As alleged above, Defendant is the initial, immediate and/or mediate transferees of transfers avoidable under sections 548 of the Bankruptcy Code and the persons from whom property is recoverable under section 550 of the Bankruptcy Code.

54.    As of the date hereof, the Defendant has not repaid all or a part of the value of the Avoidable Transfers or returned the Avoidable Transfers.

55.    By reason of the foregoing facts and pursuant to section 502(d) of the Bankruptcy Code, any Claims of Defendant that have been or may in the future be asserted in the Chapter 11 Cases should be disallowed unless and until Defendant relinquishes to Plaintiff the property

transferred or pays to Plaintiff the value of such transferred property, for which and to the extent

that the Court has determined Defendant is liable pursuant to section 550 of the Bankruptcy Code.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against the

Defendant as follows:

(a)     Pursuant to section 548(a) of the Bankruptcy Code, avoiding each of the Avoidable Transfers;

(b)     Pursuant to section 550(a) of the Bankruptcy Code, directing Defendant to relinquish to Plaintiff the property transferred in the Avoidable Transfers, or pay to Plaintiff an amount to be determined at trial that is not less than the full amount of the Avoidable Transfers;

(c)     Disallowing any Claim of Defendant pursuant to section 502(d) of the Bankruptcy Code;

(d)     Awarding pre-judgment interest at the maximum legal rate running from the date of Plaintiff's first demand to Defendant to return all Avoidable Transfers to the date of judgment with respect to this Complaint (the "**Judgment**") herein;

(e)     Awarding post-judgment interest at the maximum legal rate running from the date of the Judgment until the date the Judgment is paid in full;

(f)     Awarding Plaintiff costs of suit incurred herein, including, without limitation, attorneys' fees, costs, and other expenses incurred in this action, to the fullest extent allowed by applicable law;

(g)     Requiring Defendant to pay forthwith the amount of the Judgment; and

(h)     Ordering such other and further relief as the Court may deem just and proper.

*[Remainder of page intentionally left blank.]*

17

Dated:       July 13, 2024
          New York, New York

*/s/ Samuel P. Hershey*

**WHITE & CASE LLP**
Samuel P. Hershey
Joshua D. Weedman
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email:  sam.hershey@whitecase.com
          jweedman@whitecase.com

– and –

**WHITE & CASE LLP**
Keith H. Wofford
Southeast Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: kwofford@whitecase.com

– and –

**WHITE & CASE LLP**
Gregory F. Pesce (admitted pro hac vice)
Laura Baccash (admitted pro hac vice)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email:  gregory.pesce@whitecase.com
          laura.baccash@whitecase.com

*Counsel to Blockchain Recovery Investment
Consortium, LLC, Litigation Administrator and
Complex Asset Recovery Manager, as Representative
for the Post-Effective Date Debtors*

## Exhibit A

**Avoidable Balancing Transfers**

| Defendant: | **TOWER BC LIMITED** |
| Bankruptcy Case: | **Celsius Network LLC, et al.** |
| Transfer Period: | **Apr 14, 2022 - Jul 13, 2022** |

## Transfers During Transfer Period

| Debtor Entity | Transaction Description | Outgoing Transfer | Coin | Transaction Date | Dollar Value (June 14, 2024) |
|---|---|---|---|---|---|
| Celsius Network Ltd | Loan #2470 | 105.04 | BTC | 3/7/2022 | $6,933,804.89 |
| Celsius Network Ltd | Balancing Transfer | 350,007.92 | USDT | 5/12/2022 | $349,832.92 |
| | | | | **Total** | **$7,283,637.81** |

### Exhibit B

**Master Loan Agreement**

**FILED UNDER SEAL**

## Exhibit C

**Loan Term Sheet**

**FILED UNDER SEAL**