| | |
|---|---|
| Joshua A. Sussberg, P.C. | Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | Christopher S. Koenig |
| 601 Lexington Avenue | Dan Latona (admitted *pro hac vice*) |
| New York, New York 10022 | **KIRKLAND & ELLIS LLP** |
| Telephone:  (212) 446-4800 | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Facsimile:  (212) 446-4900 | 333 West Wolf Point Plaza |
| | Chicago, Illinois 60654 |
| | Telephone:  (312) 862-2000 |
| | Facsimile:  (312) 862-2200 |

*Counsel to the Post-Effective Date Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Post-Effective Date Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF
ROBERT CAMPAGNA IN
SUPPORT OF THE POST-EFFECTIVE DATE
DEBTORS' SUPPLEMENTAL OBJECTION TO
THE FALLER CREDITORS' MOTION SEEKING
ENTRY OF AN ORDER (I) APPROVING FURTHER
DISTRIBUTION UNDER THE PLAN OF REORGANIZATION FOR
THE FALLER CREDITORS AND (II) GRANTING RELATED RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Robert Campagna, hereby declare under penalty of perjury, as follows:

1. I am a Managing Director with Alvarez & Marsal North America, LLC (together with its affiliates and independent contractors and also with employees of its professional service

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Post-Effective Date Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

provider affiliates, all of which are wholly-owned by its parent company and employees, "A&M"), a restructuring advisory services firm with numerous offices throughout the country. I submit this Declaration in support of the Post-Effective Date Debtors' objection (the "Original Objection") and supplemental objection (the "Supplemental Objection") to the *Motion Seeking Entry of an Order (I) Approving Further Distribution Under Plan of Reorganization for the Faller Creditors and (II) Granting Related Relief* [Docket No. 4911] (the "Distribution Motion").[2]

2. Unless otherwise indicated, the statements set forth in this Declaration are based upon (a) my personal knowledge of the distribution process in these chapter 11 cases, (b) information learned from my review of relevant documents, (c) information I received from the A&M team working under my supervision or the Plan Administrator and other advisors, or (d) my experience in similar matters. Although A&M is being compensated for its work as financial advisors to the Post-Effective Date Debtors, including its work facilitating the distribution process, I am not being compensated separately for this Declaration or testimony. If I were called upon to testify, I could and would competently testify to the facts set forth herein.

## Qualifications

3. Since 1983, A&M has been a global provider of turnaround advisory services to companies in crisis or those in need of performance improvement in specific financial and operational areas. A&M's debtor advisory services have encompassed a wide range of activities targeted at stabilizing and improving a company's financial position, including developing and validating forecasts and business plans; monitoring and managing cash, cash flow, and supplier relationships; assessing and recommending cost reduction strategies; designing and negotiating

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Distribution Motion, the Objection, the Plan, or the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates* [Docket No. 3332] (the "Disclosure Statement"), as applicable.

2

financial restructuring packages; facilitating the claims reconciliation process; and assisting with the claims distribution process.

4. Since the Debtors engaged A&M in June of 2022, I have worked closely with the Debtors' management team and other professionals with respect to the Debtors' restructuring efforts, including assisting the Debtors in preparing budgets (including the Plan Administrator Budget and the Wind-Down Budget) and other financial information. Further, since the Effective Date, I have worked closely with the Post-Effective Date Debtors, the Plan Administrator, and their advisors regarding the distribution process in these chapter 11 cases, including assisting the Post-Effective Date Debtors with communications with the Distribution Agents and troubleshooting distribution-related issues, such as the revisiting of convenience class elections. I lead the A&M team advising the Post-Effective Date Debtors.

5. I have over twenty-five years of distressed company advisory experience. Through both roles in senior management and as a restructuring advisor, I have substantial experience helping financially distressed companies stabilize their financial condition, analyze their operations, and develop business plans to accomplish the necessary restructuring of their operations and finances. I have advised clients in major bankruptcy cases, including *In re Murray Energy Holdings Co.*, No. 19-56885 (JEH); *In re Stearns Holdings, LLC*, No. 19-12226 (SCC); *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ); *In re Payless Holdings LLC*, No. 17-42257 (KSS); *In re Alpha Natural Res., Inc.*, No. 15-33896 (KRH); *In re GT Advanced Techs. Inc.*, No. 14-11916 (HJB); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS); *In re Velo Holdings Inc.*, No. 12-11384 (MG); *In re Education Holdings 1, Inc.*, No. 13-10101 (BLS); *In re Orchard Brands Corp.*, No. 11-10160 (KG); *In re Cooper-Standard Holdings Inc.*, No. 09-12743 (PJW); and *In re Interstate Bakeries Corp.*, No. 04-45814 (JWV).

3

I received my bachelor's degree in business administration from Bucknell University. I am a Certified Public Accountant (inactive) and a Certified Insolvency and Restructuring Advisor.

### Preparation for Distributions

6. I am familiar with the Debtors' Plan and distribution process, particularly the steps the Debtors took in advance of the Plan Effective Date in preparation to implement the Plan. Once the Debtors identified their distribution partners, my team worked with the Debtors and the third-party Distribution Agents—Stretto, PayPal, and Coinbase—to prepare for first-round distributions in advance of the Effective Date. While important in any case, preparations were particularly critical in these chapter 11 cases, both due to their complexity and the volatility of cryptocurrency prices, which fluctuated significantly, even in advance of the Effective Date.

7. In accordance with the Plan, the amount of each eligible creditor's initial distribution was calculated as of January 16, 2024 (the "Initial Distribution Record Date"). In addition, the Debtors and their advisors determined the form of distribution each creditor would be able to receive under the Plan (*i.e.*, Liquid Cryptocurrency or Cash)—based upon creditor class / type, distribution partner limitations and, where applicable, creditor elections. These steps were critical because they "froze" the daily volatility of cryptocurrency prices—calculating initial distributions as of this date and setting aside the applicable amount of Liquid Cryptocurrency or Cash as applicable for distribution purposes, prevented creditors' entitlements from being a continually moving target. The Debtors calculated creditor entitlements based upon the Initial Distribution Record Date and the cryptocurrency prices set forth in the Distribution Cryptocurrency Conversion Table filed pursuant to the Plan (with pricing as of January 16, 2024). The Debtors then set aside Liquid Cryptocurrency and Cash to facilitate

distributions to creditors and finalized and transmitted distribution instruction files to the Distribution Agents. To the extent necessary to ensure they had sufficient Cash for distributions, the Debtors converted Liquid Cryptocurrency to Cash, and the Debtors completed these conversions prior to the Effective Date.

8. The Debtors needed to ensure that these conversions were completed as close as possible to the Initial Distribution Record Date, otherwise subsequent fluctuations in cryptocurrency prices could have led to the Debtors being "short" assets and unable to fulfill their obligations under the Plan. Utilizing the Initial Distribution Record Date and rebalancing the Debtors' holdings of Liquid Cryptocurrency and Cash as close to the Initial Distribution Record Date as possible, as provided for in the Plan, allowed the Debtors to ensure that all creditors received the appropriate proportionate value of the Debtors' estates, regardless of the form of distribution. In other words, creditors who received first-round Cash or Liquid Cryptocurrency would receive the same value (as of the Initial Distribution Record Date) under the Plan.

## The Distribution Motion

9. It is my understanding that the Faller Creditors filed the Distribution Motion seeking an additional distribution of $350,595.02 due to an alleged delay in their receiving their initial distribution under the Plan. I further understand that the Faller Creditors had the opportunity to elect to receive a Liquid Cryptocurrency distribution and affirmatively elected to receive Cash.

10. On or around February 22, 2024, BFaller RD LLC received an initial distribution of $414,733.89. BFaller RD LLC was among the first twenty-eight creditors to receive a fiat distribution. It is my understanding that the remaining Faller Creditors (SFaller RD LLC,

SFaller TRD RD LLC, and BFaller Roth RD LLC) initially submitted wire information that was not sufficient for the Post-Effective Date Debtors to successfully send a wire.  When the issue was discovered, the Debtors contacted SFaller RD LLC, SFaller TRD RD LLC, and BFaller Roth RD LLC to resubmit their wire transfer information.  On April 22, twelve days after the remaining Faller Creditors submitted revised wire information, SFaller RD LLC, SFaller TRD RD LLC, and BFaller Roth RD LLC received their initial distributions of $68,097.59, $83,463.83, and $68,042.64, respectively.  The Faller Creditors are not currently eligible for any additional amounts on account of their initial distributions.

11. Based on my review of the Distribution Motion, I understand that the Faller Creditors calculated the amount of the requested additional distribution by reference to the price of bitcoin and ether on the date they received their initial distributions or otherwise had access to the funds associated with their distribution.  Specifically, they calculated the requested additional distribution for BFaller Roth RD LLC, SFaller RD LLC, and SFaller TRD RD LLC by referencing the prices of bitcoin and ether on April 22, 2024, and with respect to the distribution for BFaller RD LLC that was made on February 22, 2024, BFaller RD LLC utilized a price reference date of March 8, 2024.

12. During the distribution process, the Post-Effective Date Debtors have experienced major disruptions that they could not have predicted, including that the financial condition of their banking partner, an essential component of facilitating Cash distributions under the Plan, became precarious shortly after the Effective Date.  It is my understanding that the process of transitioning to a new banking partner delayed the Cash distribution process by several weeks.  Despite these hurdles, the Post-Effective Date Debtors have distributed close to 89.6% of the value currently eligible for distribution under the Plan.  Based on the foregoing as well as the

6

novelty of the distributions being made under the Plan and the complexity of the distribution process, I believe that the time it has taken to make distributions to creditors, including the Faller Creditors, is reasonable under the circumstances.

13. Based on my understanding of how the Faller Creditors calculated the amount of their requested additional distribution, I believe all corporate creditors initially scheduled to receive Cash on account of their Claims would be entitled to approximately $52 million in the aggregate in additional distributions if the relief requested in the Distribution Motion is granted.[3] Further, utilizing the same approach, all creditors receiving Cash distributions under the Plan would be entitled to an additional $29 million in the aggregate, on top of the additional $52 million corporate creditors may be entitled to, if the relief requested in the Distribution Motion is granted.

[*Remainder of page intentionally left blank*]

---

[3] For creditors to whom the Post-Effective Date Debtors have already attempted distribution, additional amounts were calculated based on the difference between Liquid Cryptocurrency prices on January 16, 2024 and Liquid Cryptocurrency prices on the date on which a distribution was initially attempted. For creditors to whom the Post-Effective Date Debtors have not yet attempted distributions, additional amounts are calculated based on the difference between Liquid Cryptocurrency prices on January 16, 2024 and Liquid Cryptocurrency prices on June 18, 2024. Because of volatility in Cryptocurrency prices, the aggregate amount of additional distributions to creditors whose distributions have not yet been attempted is subject to variation based on when such creditors' initial distributions ultimately take place and would increase to the extent Cryptocurrency prices rise.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  July 23, 2024  
New York, New York

/s/ *Robert Campagna*  
Robert Campagna  
Managing Director  
Alvarez and Marsal, LLC